**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In the Matter of the Arbitration Between

ACORDA THERAPEUTICS, INC.,

                              Petitioner,

        v.

ALKERMES PLC,

                              Respondent.

Case No. 1:23-cv-223 _____

---

## PETITION TO CONFIRM ARBITRAL AWARD IN PART AND MODIFY IN PART

Petitioner Acorda Therapeutics, Inc. ("Acorda"), by and through its undersigned counsel, hereby petitions this Court ("Petition") for an order confirming in part and modifying in part the final arbitral award ("Award") rendered on October 13, 2022, as amended on November 7, 2022 to correct a clerical error by the arbitral tribunal ("Tribunal"), in an arbitration between Acorda and Alkermes PLC ("Alkermes") pursuant to the Commercial Arbitration Rules of the American Arbitration Association ("AAA Rules").  Through this Petition, Acorda seeks an order granting the following relief:

(i)      Modifying the Award, in part, pursuant to 9 U.S.C. §§ 10-12, as a result of the Tribunal having manifestly disregarded applicable law by supplanting federal law (which the Tribunal recited, relied on, and applied) with a state law doctrine that resulted in an award that was reduced by $65,629,716.  Under Supreme Court precedent and federal patent law principles, the Tribunal found the underlying royalty agreements to be unlawful *per se* and unenforceable as a matter of law.  Inexplicably, however, the Tribunal used a New York judge made law (the New

York Voluntary Pay Doctrine) to circumvent the full application of the federal law and allow Alkermes to keep a large portion of the unlawful patent royalties that it demanded and collected after patent expiry and during the period in which the Tribunal found the agreements to be unenforceable as a matter of law;

(ii)     Confirming and recognizing the Award, pursuant to 9 U.S.C. § 207, as modified pursuant to this Petition;

(iii)     Entering judgment in Acorda's favor and against Alkermes in the amount of the Award, as modified pursuant to this Petition to include the $65,629,716 in damages (as summarized in Annex A to this Petition) the Tribunal excluded by manifestly disregarding applicable law, with pre- and post-award interest and costs as provided therein and as authorized by law, plus the costs of this proceeding; and

(iv)     Awarding Acorda such other and further relief as this Court deems just and proper.

True and correct copies of the Award[1] and the parties' agreement to arbitrate are attached as Exhibits A through C, respectively, to the Declaration of Joshua S. Wan, dated January 10, 2023 ("Wan Declaration").

## Parties

1.     Acorda brings this summary proceeding under the United Nations Convention for the Recognition and Enforcement of Foreign Arbitral Awards (June 10, 1958), 21 U.S.T. 2517, 330 U.N.T.S. 38 (the "New York Convention") and Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-208, to obtain recognition of the Award, a duly-rendered arbitration award issued in Acorda's favor and against Alkermes, as modified pursuant to this Petition.

---

[1]     For ease of reference, this Petition cites only to the corrected version of the Award, dated November 7, 2022 (Wan Declaration, Ex. A), which is identical to the original version of the Award, dated October 13, 2022, with the exception of a correction made by the Tribunal to the damages amount to fix a clerical error raised by the parties after the Award was initially issued.

2.    Acorda further brings this proceeding under Chapter 1 of the FAA, 9 U.S.C. §§ 10-12, to modify the Award in part to the extent the Tribunal declined to award damages incurred as a result of Acorda's payment of royalties for periods occurring after July 30, 2018, the date as of which the Tribunal found the parties' agreements were unlawful *per se*, as the Tribunal's refusal to award such damages constituted manifest disregard of applicable law.

3.    Acorda is a Delaware corporation that has its headquarters and principal place of business in Pearl River, New York.

4.    Alkermes is a corporation that is incorporated, and has its principal place of business, in Ireland.  Alkermes's U.S. headquarters is located in Waltham, Massachusetts.

## Jurisdiction and Venue

5.    This Court has original subject matter jurisdiction over this action pursuant to 9 U.S.C. § 203, in that this is a civil action seeking confirmation of an award (as modified pursuant to this Petition) rendered in an arbitration falling under the New York Convention.

6.    This Court also has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2), as there is complete diversity amongst the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.    The Court may exercise personal jurisdiction over Alkermes because it agreed to resolve disputes with Acorda by arbitration in New York, and in fact, Alkermes fully participated in an arbitration against Acorda in New York, which resulted in an arbitral award that was made in this District.  *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Lecopulos*, 553 F.2d 842, 844 (2d Cir. 1977) ("Merrill Lynch argues that the agreement to resolve disputes by arbitration in New York constituted consent to personal jurisdiction in New York.  Merrill Lynch is correct."); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Shaddock*, 822 F. Supp. 125, 128 (S.D.N.Y. 1993)

("[A]greements to arbitrate in a particular forum have been held to constitute consent to personal jurisdiction in the courts of that forum.").

8.      Venue is proper in this District pursuant to 9 U.S.C. § 204, because the parties' arbitration agreement and the enforcement of the arbitration award fall under the terms of the New York Convention, and the place of the arbitration was New York, New York.  As the Tribunal noted in the Award, "for the purposes of Article I of the New York Convention of 1958, on the Recognition and Enforcement of Foreign Arbitral Awards, this Final Award was made in New York, New York, United States of America."  Wan Decl., Ex. A ("Award") at 23.

## Summary of Dispute

9.      This dispute pertains to the manufacture and sale of the multiple sclerosis ("MS") drug Ampyra® ("Ampyra") under the Amended and Restated License Agreement between Elan Corporation, PLC[2] and Acorda Therapeutics, Inc., dated September 26, 2003 (the "License Agreement") and the Supply Agreement between Elan Corporation, PLC and Acorda Therapeutics, Inc., dated September 26, 2003 (the "Supply Agreement") (collectively, the "Agreements").  Ampyra, which was developed by Acorda, received FDA approval in 2010, and enjoyed great commercial success upon its launch.  *Id.* at 7.  Pursuant to the Agreements, Alkermes agreed to license its patents and manufacture Ampyra exclusively for Acorda.  *Id.* at 2.  In return, Acorda would pay Alkermes a specified royalty rate and purchase a minimum percentage of Ampyra from Alkermes.  *Id.*

10.     Before the Agreements were executed, Alkermes owned certain patents.  *Id.*  One of these patents was U.S. Patent No. 5,540,938 (the "'938 Patent"), which covered the sustained

---

[2]   Elan Corporation PLC ("Elan") is the predecessor in interest to Alkermes.  *See, e.g.*, Opinion and Order (Order No. 23) Regarding Motions for Summary Judgment, dated April 11, 2022 ("SJ Opinion") at 4 n.4 (Wan Decl., Ex. E).  For ease of reference, "Alkermes" will be used in-place of "Elan," except in reference to a specific agreement.

release of dalfampridine, the active pharmaceutical ingredient in Ampyra.  *Id*. at 6.  In order for Acorda to develop and market the pharmaceutical that eventually became known as Ampyra, Acorda needed to obtain a license from Alkermes under the '938 Patent.  *Id*.  Under the terms of the Agreements, Acorda received a license to the '938 Patent and Alkermes was compensated at 18% net sales price.  *Id*. at 7.  Although the 18% net sales price payment was split between the License Agreement (10%) and the Supply Agreement (8%), the Agreements made clear that the 18% payment was a patent royalty on Ampyra.  *Id*. at 7-9.

11.     After the '938 Patent expired in July 2018, Acorda communicated to Alkermes that Acorda believed the expiration of the '938 Patent, at the very least, altered the Agreements' royalty provisions.  *Id*. at 2.  Acorda therefore sought a reduction in the price it was paying to Alkermes for future orders of Ampyra.  *Id*.  The parties disputed the impact the expiration of the '938 Patent had on the Agreements and the parties' contractual obligations.  *Id*.

**The Relevant Agreements**

12.     The License Agreement contains an arbitration clause at Article 12.14, which provides that:

> Any dispute under this Agreement which is not settled by the Committee or the CEOs pursuant to Article 10 or otherwise by mutual consent shall be finally settled by binding arbitration, conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association by three (3) arbitrators appointed in accordance with said rules.  The arbitration shall be held in New York, New York and at least one of the arbitrators shall be an independent expert in pharmaceutical product development and marketing (including clinical development and regulatory affairs).  The arbitrators shall determine what discovery will be permitted, consistent with the goal of limiting the cost and time which the Parties must expend for discovery; provided the arbitrators shall permit such discovery as they deem necessary to permit an equitable resolution of the dispute.  Any written evidence originally in a language other than English shall be submitted in English translation accompanied by the original or a true copy thereof.  The costs of the arbitration, including administrative and arbitrators' fees, shall be shared equally by the Parties and each Party shall bear its own costs and attorneys' and witness' fees incurred in connection with the arbitration.  A

disputed performance or suspended performances pending the resolution of the arbitration must be completed within thirty (30) days following the final decision of the arbitrators or such other reasonable period as the arbitrators determine in a written opinion.  The parties shall use all reasonable efforts to ensure that any arbitration subject to this Article 12.14 shall be completed within one (1) year from the filing of notice of a request for such arbitration.  The arbitration proceedings and the decision shall not be made public without the joint consent of the Parties and each Party shall maintain the confidentiality of such proceedings and decision, subject to any contrary provision of this Agreement or unless otherwise permitted by the other Party.  The Parties agree that the decision shall be the sole, exclusive and binding remedy between them regarding any and all disputes, controversies, claims and counterclaims presented to the arbitrators.  Application may be made to any court having jurisdiction over the Party (or its assets) against whom the decision is rendered for a judicial recognition of the decision and an order of enforcement.

Wan Decl., Ex. B, art. 12.14.

13.    The same arbitration clause is incorporated in its entirety into the Supply Agreement pursuant to Article 14.11.2 of the Supply Agreement.  Wan Decl., Ex. C, art. 14.11.2.

14.    In addition, pursuant to Article 12.11 of the License Agreement and Article 14.11.1 of the Supply Agreement, the parties agreed that the Agreements would be governed by New York law, excluding New York conflict of law rules.  Wan Decl., Ex. B, art. 12.11; Wan Decl., Ex. C, art. 14.11.1.  The parties subsequently agreed at the outset of the arbitration that "New York substantive law, supplemented by Federal Patent law, [would] govern this Arbitration."  Award at 3 (alteration in original).  Article 12.11 of the License Agreement further provides that "[f]or the purpose of this Agreement the Parties submit to the jurisdiction of the United States District Court for the State of New York."  Wan Decl., Ex. B, art. 12.11.

15.    The combined 18% royalty amount at issue in this proceeding is set forth in Article 5.6.1 of the License Agreement ("[I]n further consideration of the rights and license granted to Acorda to the Elan Patent Rights while there is a Valid Claim thereunder, and in consideration of the rights and license granted to Acorda of the Elan Know-How thereafter, Acorda shall

additionally pay to Elan a royalty of ten per cent (10%) of the NSP of the Product"), and in Article 9.3.1 in the Supply Agreement ("[T]he price of the Product manufactured by Elan to be charged to Acorda under this Agreement shall be equivalent to eight per cent (8%) of the NSP").  Wan Decl., Ex. B, art. 5.6.1; Wan Decl., Ex. C, art. 9.3.1.

### The Arbitration

16.     On July 28, 2020, Acorda filed its Demand for Arbitration under Article 12.14 of the License Agreement and Article 14.11.2 of the Supply Agreement.  *Id*. at 2.  Acorda asserted claims for: (1) declaratory judgment as to whether Alkermes was entitled to patent-licensing royalties after the '938 Patent expired on July 30, 2018; (2) declaratory judgment as to whether Alkermes was entitled to supply royalties above a fair market rate after July 30, 2018; (3) declaratory relief as to a return of overpayment; (4) unjust enrichment by retaining overpayment; (5) breach of the License Agreement; (6) monopolization in violation of Section 2 of the Sherman Act and the Donnelly Act; (7) attempted monopolization in violation of Section 2 of the Sherman Act and the Donnelly Act; and (8) breach of the implied covenant of good faith and fair dealing. *Id*. at 2-3.  In particular, Acorda sought a ruling from the Tribunal that Alkermes's ongoing royalty charges violated the rule established by the Supreme Court in *Brulotte v. Thys Co.*, 379 U.S. 29 (1964), that post-expiry patent leveraging is inappropriate and against public policy, and that as a result, Acorda is entitled to a refund of all royalties paid after the expiration of the '938 Patent.

17.     On August 17, 2020, Alkermes served its Answering Statement to the Demand for Arbitration, denying any alleged wrongdoing and requesting that the Tribunal deny Acorda's claims.  *Id*. at 3.  Alkermes subsequently filed an Amended Answering Statement, which asserted counterclaims for: (1) correction of inventorship pursuant to 35 U.S.C. § 256; and (2) a declaratory judgment that the unexpired patents must be assigned to Alkermes.  *Id*.

18.     As provided in the Agreements, the arbitration was seated in New York, and proceeded in accordance with the AAA Rules.  Award at 1, 23.  Also in accordance with the Agreements, the Tribunal applied New York law, supplemented by federal patent law.  *Id.* at 3. The Tribunal consisted of the Honorable Robert S. Smith (appointed by Alkermes), the Honorable Arthur J. Gajarsa (appointed by Acorda), and the Honorable Jose L. Linares (appointed pursuant to a rank-order procedure agreed upon by the parties).

19.     Following briefing on motions to dismiss, on July 2, 2021, the Tribunal granted Acorda's motion to dismiss Alkermes's counterclaims.  *Id.* at 4.  The parties then engaged in discovery, which was completed on July 23, 2021.  *Id.*

### A.     The Summary Judgment Opinion and Order

20.     Following discovery, the parties submitted six competing summary judgment motions, which were consolidated and fully briefed on November 23, 2021.  *Id.*  Acorda submitted one combined motion for summary judgment seeking: (1) a judgment that Alkermes is liable for unlawful monopolization; and (2) a ruling that contract and/or quasi-contract damages remain available to Acorda.  *Id.*  Alkermes filed two separate summary judgment motions, seeking dismissal of Acorda's antitrust, breach of contract, implied covenant of good faith and fair dealing, and unjust enrichment claims.  Alkermes also sought a judgment that Acorda is not entitled to a refund of payments made pursuant to the License Agreement.  *Id.*

21.     On April 11, 2022, the Tribunal issued its Opinion and Order on the parties' summary judgment motions.  Wan Decl., Ex. E, Opinion and Order (Order No. 23) Regarding Motions for Summary Judgment, dated April 11, 2022 ("SJ Opinion").  The Tribunal (1) dismissed Acorda's claims for breach of contract and breach of the implied covenant of good faith and fair dealing; (2) denied Alkermes's motion as to Acorda's unjust enrichment/restitution claims; (3) denied Acorda's affirmative motion as to its claims for monopolization and attempted

monopolization; and (4) granted Alkermes's motion as to Acorda's claims for monopolization and attempted monopolization.  SJ Op. at 20.

22.     Despite dismissing Acorda's breach of contract claims, the Tribunal nevertheless held that Acorda had stated a "viable claim if certain facts are established at the Evidentiary Hearing" that "Alkermes was unjustly enriched because it charged Acorda a royalty rate that could not be charged under *Brulotte*." *Id*. at 11.  The Tribunal further agreed with Acorda that "restitution damages may be awarded where a party 'renders performance under an agreement that is illegal or otherwise unenforceable for reasons of public policy.'" *Id*. at 12 (quoting *Mazzei v. Money Stove*, 308 F.R.D. 92, 106 (S.D.N.Y. 2015), *aff'd* 829 F.3d 260 (2d Cir. 2016)).

23.     However, the Tribunal went on to impose a temporal limitation on Acorda's damages, ruling that any potential damages claim by Acorda—if Acorda established that Alkermes collected royalty payments in violation of *Brulotte*—was limited to the recovery of royalty payments made by Acorda after July 2020, when Acorda formally conveyed its *Brulotte* objection to Alkermes.  *Id*.  The Tribunal stated that "if Acorda is successful on its *Brulotte* claim it could also be entitled to recover unjust enrichment/restitution damages for the time following that date [*i.e.*, July 2020] because its performance under the License and Supply Agreements would have been pursuant to an unenforceable provision."  *Id*.  The Tribunal therefore imposed (incorrectly) this limitation on Alkermes's liability despite the fact that the '938 Patent expired in July 2018. *Id*.

24.     In limiting Acorda's damages, the Tribunal pointed to the existence of a "no-refund" clause in the Agreements, stating that "[w]hile the no-refund clause may waive liability for a refund, that is true only where no protest is made."  *Id*.  The Tribunal made clear that its rationale for imposing the limitation on damages was based on the parties' contracts.  Although

the parties briefed the New York Voluntary Pay Doctrine, which Alkermes raised as an affirmative defense, the Tribunal expressly denied that this doctrine applied, stating that "the [New York Voluntary Pay Doctrine] does not have any implication for this Arbitration." *Id*. at 12-13.

25.     In Acorda's pre-hearing brief, it maintained that if the Tribunal were to find a *Brulotte* violation, then the Agreements would be rendered unenforceable and Acorda would be entitled to recover all improper royalty payments made after the '938 Patent expired in July 2018. Acorda argued that it "will present evidence and argument at the Evidentiary Hearing as to why it is entitled to seek the return of any and all royalties paid after the date on which the Agreement became unlawful (*i.e.*, on the expiration of the last to expire Elan Patent, as well as supply overpayments since that date)."  Wan Decl., Ex. F, Acorda's Pre-Hearing Arbitration Brief, dated May 24, 2022, at 2 n.1.

26.     Responding to Acorda's pre-hearing brief, on May 25, 2022, Alkermes filed a letter request to exclude all damages prior to July 2020, arguing that "[a]llowing Acorda to present evidence or argument in support of a claim for damages prior to July 2020 would thwart the Panel's [summary judgment] ruling."  Wan Decl., Ex. G, Alkermes's Letter to the Tribunal, dated May 25, 2022, at 2.

27.     Acorda responded the same day, arguing that the Tribunal's summary judgment ruling did not foreclose all damages prior to July 2020.  As Acorda pointed out, the Tribunal could not have intended to limit Acorda's damages in the event it found a *Brulotte* violation because to do so would give effect to an unlawful contract up to and including July 2020.  Specifically, Acorda stated:

> As Alkermes concedes, the Panel has not yet concluded whether a *Brulotte* violation has occurred.  If/When the Panel reaches that conclusion; namely, that the contract provision at issue is unlawful *per se*, the Panel will need to make a further decision of whether or not it can allow the unlawful

payments made after patent expiry to stand in violation of public policy. **According to Alkermes, the Panel has already decided that if there is a** *Brulotte* **violation, it will nonetheless give full force and effect to an unlawful provision up to and including July [2020]. Acorda does not believe that this is what the Panel intended** when it stated, "The Tribunal rules that these remedies remain to be proved by factual evidence. Nothing in this Opinion and Order should be construed as a ruling that said remedies are being, or will be awarded. That determination is deferred to the end of the Evidentiary Hearing after the facts in support and opposition to said remedies have been more thoroughly presented."

Wan Decl., Ex. H, Acorda's Letter to the Tribunal, dated May 25, 2022, at 2-3 (quoting SJ Opinion at 12) (emphasis added).

28.     On May 27, 2022, the Tribunal ruled on Alkermes's request in a single paragraph in an e-mail to the parties.  Without addressing any of the specific arguments the parties raised in their respective letters to the Tribunal, the Tribunal maintained that "Acorda's potential recovery is strictly limited to those payments made under protest as of July 2020," and stated that "the Tribunal will not entertain evidence regarding payments made prior to July 2020 as said payments are no longer pertinent to this Arbitration."  Wan Decl., Ex. I, E-mail from Tribunal to the parties, dated May 27, 2022.  The Tribunal did not explain how it could continue to impose the contract-based damages limitation if the Agreements were rendered unenforceable, nor did it make any reference to the New York Voluntary Pay Doctrine, which it had previously dismissed.  *Id*.

29.     The Tribunal held an evidentiary hearing from June 1-7, 2022.  Award at 5.

**B.     The Award**

30.     The Tribunal issued the Award on October 13, 2022.  The Tribunal found in favor of Acorda, ruling that "Alkermes was leveraging its patent to illegally obtain royalties beyond the life of the '938 Patent," and noting that "this is precisely the conduct that was outlawed under *Brulotte*."  Award at 10.  Citing the Supreme Court's decision in *Kimble v. Marvel Entertainment*, which affirmed the rule prohibiting post-expiry patent leveraging in *Brulotte*, the Tribunal rejected

Alkermes's argument that it was entitled to collect royalties after its patent expired.  *Id*.  The Tribunal concluded that because "Alkermes continued to charge the same exact royalty after the '938 Patent expired," under binding Supreme Court precedent, "these post-patent royalties charged by Alkermes are 'unlawful *per se*' and are not enforceable."  *Id*. (quoting *Kimble v. Marvel Entm't, LLC*, 576 U.S. 446, 452 (2015)).

31.     The Tribunal went on to analyze the exceptions to *Brulotte* and *Kimble* and concluded that none applied.  The Tribunal rejected each of Alkermes's purported justifications for its collection of royalties after the '938 Patent expired.  The Tribunal held that neither the "step-down" nor the "collaborative business relationship" exceptions to the *Brulotte* doctrine established by the Supreme Court in *Kimble* applied.  *Id*. at 10-14.  Likewise, the Tribunal rejected Alkermes's assertion that it was entitled to collect an ongoing royalty because it provided Acorda with significant proprietary Know-How, finding that "there is little meaningful Know-How that is proprietary to Alkermes warranting any further royalty."  *Id*. at 14-16.  As the Tribunal made clear, "[h]aving concluded that Alkermes committed a *Brulotte* violation, and that no *Kimble* exception is applicable, it is obvious that the Tribunal must declare the running royalties in the License Agreement unenforceable."  *Id*. at 16.  From there, the Tribunal stated, unequivocally, that "it is the ruling of this Tribunal that both the License and Supply Agreements are **UNENFORCEABLE**."  *Id*. at 17 (emphasis in original).

32.     But despite ruling unambiguously that both the License and Supply Agreements, including the royalties under those agreements, were unenforceable, the Tribunal maintained that Acorda was not entitled to recover any royalty payments under the License Agreement made before July 2020, stating that the period between July 2018 through July 2020 "has been carved

out of this case." *Id*. at 9.  The Tribunal further ruled that "Acorda is not entitled to recover any payments under the Supply Agreement" for any period of time. *Id*. at 20.

33.    As discussed above, the Tribunal had expressly stated in its summary judgment opinion that "the [New York Voluntary Pay Doctrine] does not have any implication for this Arbitration." SJ Op. at 12-13.  Yet, the Tribunal stated, for the first time in the Award, that with respect to royalty payments under the License Agreement, "the [New York Voluntary Pay Doctrine] has precluded any recovery by Acorda up until it made its formal protest in July 2020." Award at 18.  Therefore, despite previously ruling that the New York Voluntary Pay Doctrine had no impact on the arbitration, the Tribunal applied the doctrine for the first time to limit Alkermes's liability and to allow Alkermes to retain royalties collected after the '938 Patent expired.

34.    Moreover, the Tribunal treated the royalty payments made by Acorda under the License Agreement and Supply Agreement differently, despite finding that the 18% net sales price payment (comprised of a 10% payment under the License Agreement and an 8% payment under the Supply Agreement), when viewed under the combined terms of the linked Agreements, was a patent royalty payment.  Award at 7-9.  In fact, the Tribunal made a specific finding that the License and Supply Agreements were "one agreement."  *Id*. at 16 ("But the Tribunal must first decide whether the License and Supply Agreements are, for all intents and purposes, one agreement. The Tribunal answers this question in the affirmative.").

35.    In the Award, however, the Tribunal ruled that with respect to royalty payments under the License Agreement, Acorda was entitled only to "payments it remitted after the July 2020 protest." *Id*. at 18.  The Tribunal awarded pre-judgment interest at 9% on this amount. *Id*. at 21.

36.     With respect to royalty payments under the Supply Agreement, the Tribunal determined that Acorda was entitled to nothing at all.  The Tribunal stated that because Acorda's July 2020 letter protesting the post-expiration royalties referred only to the License Agreement and not the Supply Agreement, "Acorda is not entitled to recover any payments under the Supply Agreement as such recovery is barred by the [New York Voluntary Pay Doctrine]."  *Id*. at 18-20. The Tribunal therefore apparently determined that Acorda was barred from recovering royalty payments under the Supply Agreement under the New York Voluntary Pay Doctrine because Acorda did not send Alkermes a separate letter formally protesting its payment of royalties under the Supply Agreement.  Notably, the Tribunal determined that Acorda never protested payments under the Supply Agreement even though on July 28, 2020, Acorda filed a formal demand for arbitration challenging the payment of post-expiration royalties, and seeking a refund of royalty payments, under both Agreements.

37.     Furthermore, the Tribunal inexplicably stated in the Award that it had "acknowledged" the impact of the New York Voluntary Pay Doctrine on Acorda's entitlement to recover illegal royalties in its summary judgment opinion, stating that it "has already concluded that the [New York Voluntary Pay Doctrine] has precluded any recovery by Acorda up until it made its formal protest in July 2020."  Award at 18.  But this is wrong.  The Tribunal had previously concluded that "the [New York Voluntary Pay Doctrine] does not have any implication for this Arbitration."  SJ Opinion at 12-13.  And for that reason, there is no analysis in the Tribunal's summary judgment opinion regarding the application of the doctrine and notably, the Tribunal cited to no specific portion of that document in its Award.  Therefore, in the Tribunal's strained effort to limit Acorda's damages, it invoked a New York state law doctrine that it had previously dismissed as inapplicable to the arbitration.  By applying the New York Voluntary Pay

Doctrine, the Tribunal gave effect to two agreements, and the royalties under those agreements, that it had unequivocally ruled in the same Award were unenforceable as a matter of law.

38.     On October 21, 2022, pursuant to Rule R-52 of the AAA Rules, Acorda submitted a request to the Tribunal to correct the amount of the Award to include a refund of the final license royalty payment, which was discussed and agreed to by the parties during the final hearing, but which was inadvertently excluded from the original version of the Award.  Alkermes agreed that the Award should be corrected to add the additional $1,595,439 in royalties to be returned to Acorda as the parties agreed during closing arguments, but disagreed with Acorda's calculation of pre-judgment interest on that amount.

39.     On November 7, 2022, the Tribunal issued an amended award to correct the clerical error raised by the parties.  Accounting for the correction, the Tribunal awarded Acorda $16,554,267 in damages associated only with the License Agreement after the July 2020 protest, along with $1,689,528.49 in pre-judgment interest, plus interest on the full amount of the Award, including the pre-judgment interest, up to the date of payment, plus $13,219.67 in administrative fees for the arbitration.  Award at 22.

40.     Alkermes has paid the sums awarded in the Award.  Wan Decl., ¶ 15.

41.     The amounts of damages incurred by Acorda in connection with Alkermes's improper collection of royalty payments after expiry of the '938 Patent in violation of *Brulotte* is summarized in Annex A to this Petition.  The table in Annex A breaks down the damages under the License and Supply Agreements that were awarded by the Tribunal and the damages that were improperly excluded by the Tribunal.

42.     As shown in Annex A, as a result of the Tribunal's manifest disregard of applicable law, the Tribunal declined to award Acorda $65,629,716 in damages for royalty payments

demanded and collected by Alkermes after the '938 Patent expired in July 2018 (exclusive of interest).

## **Request for Relief**

43.     Under the FAA, courts may modify an arbitration award if it was rendered in manifest disregard of the law.  The Second Circuit has held that a court may "modify or vacate an award on this ground [*i.e.*, the manifest disregard doctrine]" where it finds that "(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case."  *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 202 (2d Cir. 1998); *Berkowitz v. Gould Paper Corp.*, No. 21-CV-6582 (VEC), 2022 WL 118232, at *6 (S.D.N.Y. Jan. 12, 2022) (analyzing manifest disregard doctrine where party sought to modify portion of award in which arbitrator refused to award fees).

44.     As set forth in greater detail in the accompanying Memorandum of Law, the Tribunal manifestly disregarded the law by denying Acorda damages resulting from Alkermes's illegal leveraging of its expired patent to obtain royalties beyond the life of the '938 Patent, despite expressly finding that Alkermes had committed a *Brulotte* violation.  Award at 10.  As a result, the Tribunal gave effect to unlawful agreements that it found were in violation of public policy and unenforceable as a matter of law under long-standing and binding Supreme Court precedent.

45.     For the foregoing reasons, and as set forth more fully in the accompanying Memorandum of Law, Acorda requests that this Court modify the Award to award damages to Acorda for the payments made under the License Agreement during the period July 2018 through July 2020, and all payments made under the Supply Agreement after July 2018 as a result of Alkermes's *Brulotte* violation.

46.     The Agreements set forth herein at Paragraphs 12-13 constitute "an agreement in writing" within the meaning of Article II(2) of the New York Convention.

16

47.    The Agreements and the Award arose out of a legal relationship that is commercial within the meaning of 9 U.S.C. § 202.

48.    The Award is a nondomestic arbitral award in that it involved a foreign party and revolved around a dispute concerning a licensing and manufacturing agreement that was performed, in part, in Ireland, where Alkermes's manufacturing facilities are located.

49.    The Award is final and binding within the meaning of the New York Convention and Chapter 2 of the FAA.

50.    Subject to Acorda's request to modify the Award as set forth in this Petition, none of the grounds for refusal or deferral of the Award set forth in the New York Convention apply.

51.    Subject to Acorda's request to modify the Award as set forth in this Petition, the Award is required to be recognized, and judgment entered thereon, pursuant to Article III of the New York Convention and 9 U.S.C. § 207.

52.    WHEREFORE, Acorda respectfully requests that this Court enter an Order:

a.    Modifying the Award, in part, pursuant to 9 U.S.C. §§ 10-12, to rectify that portion of the Award in which the Tribunal manifestly disregarded applicable law by giving effect to the unlawful and unenforceable Agreements by allowing Acorda to recover the royalties paid under the License Agreement during the period July 2018 through July 2020, and the royalties paid under the Supply Agreement after July 2018, in the amounts shown in Annex A;

b.    Confirming and recognizing the Award, as modified pursuant to this Petition, pursuant to 9 U.S.C. § 207;

c.    Entering judgment in Acorda's favor and against Alkermes in the amount of the Award, as modified pursuant to this Petition to include the $65,629,716 in

damages shown in Annex A that the Tribunal improperly excluded from the Award, with pre- and post-award interest and costs as provided therein and as authorized by law, plus the costs of this proceeding; and

d.      Awarding Acorda such other and further relief as this Court deems just and proper.

Dated: January 10, 2023
      New York, New York

Respectfully submitted,

*/s/ James E. Berger*
James E. Berger
Joshua S. Wan
Tracy Block (*pro hac vice* pending)
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020
T: (212) 335-4715
james.berger@us.dlapiper.com
joshua.wan@us.dlapiper.com
tracy.block@us.dlapiper.com

Michael A. Sitzman (*pro hac vice* pending)
DLA Piper LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA 94105
T: (415) 615-6175
michael.sitzman@us.dlapiper.com

John S. Gibson (*pro hac vice* pending)
DLA Piper LLP (US)
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, CA 90067
T: (310) 595-3039
john.gibson@us.dlapiper.com

*Attorneys for Petitioner Acorda
Therapeutics, Inc.*

**Annex A**

| Calendar Quarter (after expiration of '938 Patent) | Royalty Payment (under Licensing Agreement) | Royalty Payment (under Supply Agreement) |
|---|---|---|
| Q3 2018 | $2,549,173[B] | $7,028,098[D] |
| Q4 2018 | $25,339,412[B] | $12,403,271[D] |
| Q1 2019 | $4,049,259[B] | |
| Q2 2019 | $636,107[B] | |
| Q2 2020 (pre-July 8) | $1,593,335[C] | $2,869,877[D] |
| Q2 2020 (post-July 8) | $2,868,520[A] | $57,858[E] |
| Q4 2020 | $2,559,820[A] | $1,679,618[E] |
| Q1 2021 | $3,271,314[A] | $2,195,178[E] |
| Q2 2021 | $2,728,845[A] | $1,804,975[E] |
| Q3 2021 | $2,787,273[A] | $1,853,767[E] |
| Q2 2022 | $743,056[A] | $1,355,177[E] |
| Q3 2022 | $1,595,439[F] | $214,611[G] |
| **Royalty Payments After Expiration of '938 Patent Excluded from Award** | **$34,167,286** | **$31,462,430** |
| **Total Modification of Award Requested in Petition (before interest)** | **$65,629,716** | |

\* Entries highlighted in yellow denote post-expiration royalty payments awarded to Acorda by the Tribunal. *See* Award at 18.

[A] Wan Decl., Ex. J, Joint Submission of the Proposed Findings of Fact, dated July 29, 2022 ("Proposed Findings of Fact"), at U61.

[B] Proposed Findings of Fact, at C228.

[C] Calculated from Proposed Findings of Fact, at U61, C228.

[D] Calculated from Proposed Findings of Fact, at C229.

[E] Proposed Findings of Fact, at C230.

[F] Award at 18, n.11.

[G] Wan Decl., Ex. K, Excerpt of Transcript of Closing Argument, dated September 7, 2022, at 258:5-7.