## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

In the Matter of the Arbitration Between

ACORDA THERAPEUTICS, INC.,

$\qquad$ Petitioner,

v.

ALKERMES PLC,

$\qquad$ Respondent.

Case No. _____

1:23-cv-223

### MEMORANDUM OF LAW IN SUPPORT OF PETITION TO CONFIRM
### ARBITRAL AWARD IN PART AND MODIFY IN PART

Michael A. Sitzman (*pro hac vice* pending)
DLA Piper LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA 94105
T: (415) 615-6175
michael.sitzman@us.dlapiper.com

John S. Gibson (*pro hac vice* pending)
DLA Piper LLP (US)
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, CA 90067
T: (310) 595-3039
john.gibson@us.dlapiper.com

James E. Berger
Joshua S. Wan
Tracy Block (*pro hac vice* pending)
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020
T: (212) 335-4715
james.berger@us.dlapiper.com
joshua.wan@us.dlapiper.com
tracy.block@us.dlapiper.com

*Attorneys for Petitioner Acorda
Therapeutics, Inc.*

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ............................................................................................ 1

II.    BACKGROUND AND PROCEDURAL FACTS............................................. 4

    A.     The Dispute ........................................................................................ 4

    B.     The Arbitration................................................................................... 5

        1.     The Summary Judgment Opinion and Order ............................. 6

        2.     The Award ................................................................................. 8

III.   LEGAL ARGUMENT.................................................................................... 9

    A.     This Court Should Modify the Award Based on the Tribunal's Manifest
        Disregard of the Law ......................................................................... 9

        1.     Federal Law is Clear—Acorda Is Entitled to Recover All Unlawful
            Royalty Payments Extracted After Expiration of the '938 Patent ........... 12

        2.     The Tribunal Misapplied the Law by Invoking a New York State
            Law Doctrine—and Ignoring Preemptive Federal Law—to Allow
            Alkermes to Retain Unlawful Royalty Payments ..................................... 15

        3.     The Tribunal Had Knowledge of *Brulotte* and Its Progeny, As Well
            As the New York Voluntary Pay Doctrine .............................................. 23

    B.     This Court Must Confirm the Award, As Modified, Under the New York
        Convention.......................................................................................... 24

IV.    CONCLUSION ............................................................................................ 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arbordale Hedge Invs., Inc. v. Clinton Grp. Inc.*,
   No. 99 CIV. 4452 MBM, 1999 WL 1000939 (S.D.N.Y. Nov. 4, 1999) ...............................10

*Barbier v. Shearson Lehman Hutton Inc.*,
   948 F.2d 117 (2d Cir. 1991).........................................................................................9

*Berkowitz v. Gould Paper Corp.*,
   No. 21-CV-6582 (VEC), 2022 WL 118232 (S.D.N.Y. Jan. 12, 2022)....................................10

*Bonilla v. Rotter*,
   36 A.D.3d 534 (1st Dep't 2007) .........................................................................20

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
   489 U.S. 141 (1989)...................................................................................... *passim*

*Botany Indus., Inc. v. New York Joint Bd., Amalgamated Clothing Workers of Am.*,
   375 F. Supp. 485 (S.D.N.Y. 1974), *vacated on other grounds sub nom. Robb v.
   New York Joint Bd., Amalgamated Clothing Workers of Am.*, 506 F.2d 1246 (2d
   Cir. 1974) ...............................................................................................22

*Brulotte v. Thys Co.*,
   379 U.S. 29 (1964)....................................................................................... *passim*

*Capri Sun GmbH v. Am. Beverage Corp.*,
   595 F. Supp. 3d 83 (S.D.N.Y. 2022)...................................................................18

*Compco Corp. v. Day-Brite Lighting, Inc.*,
   376 U.S. 234 (1964)...................................................................................18

*Matter of Crosstown Operating Corp.*,
   595 N.Y.S.2d 445 (1st Dep't 1993) ...................................................................21

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*,
   333 F.3d 383 (2d Cir. 2003)............................................................................ *passim*

*Durst v. Abrash*,
   253 N.Y.S.2d 351 (1st Dep't 1964), *aff'd*, 17 N.Y.2d 445 (1965) .........................................21

*Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*,
   No. 20-CV-5120 (LJL), 2022 WL 3536128 (S.D.N.Y. Aug. 17, 2022).............................4, 20

*Halligan v. Piper Jaffray, Inc.*,
   148 F.3d 197 (2d Cir. 1998)........................................................................10, 12

*Hardy v. Walsh Manning Securities, L.L.C.*,
    341 F.3d 126 (2d Cir. 2003) ........................................................................... 12

*Jackson Purchase Rural Elec. Co-op. Ass'n v. Loc. Union 816, Int'l Bhd. of Elec. Workers*,
    646 F.2d 264 (6th Cir. 1981) ................................................................... 21, 22

*Kaiser Steel Corp. v. Mullins*,
    455 U.S. 72 (1982) ....................................................................................... 4, 19

*Kimble v. Marvel Entm't, LLC*,
    576 U.S. 446 (2015) ................................................................................ *passim*

*Leed Architectural Prods., Inc. v. United Steelworkers of Am., Local 6674*,
    916 F.2d 63 (2d Cir. 1990) ............................................................................. 10

*Leesona Corp. v. Varta Batteries, Inc.*,
    522 F. Supp. 1304 (S.D.N.Y. 1981) .............................................................. 13

*Mazzei v. Money Stove*,
    308 F.R.D. 92 (S.D.N.Y. 2015), *aff'd* 829 F.3d 260 (2d Cir. 2016) ............ 3, 14

*McMullen v. Hoffman*,
    174 U.S. 639 (1899) ....................................................................................... 19

*Medisim Ltd. v. BestMed LLC*,
    959 F. Supp. 2d 396 (S.D.N.Y. 2013), *aff'd in part, and vacated in part and remanded on other grounds*, 758 F.3d 1352 (Fed. Cir. 2014) ................... 18

*New York Tel. Co. v. Commc'ns Workers Local 1100*,
    256 F.3d 89 (2d Cir. 2001) ....................................................................... 10, 11

*Saint Mary Home, Inc. v. Serv. Emps. Int'l Union, Dist. 1199*,
    116 F.3d 41 (2d Cir. 1997) ............................................................................ 10

*Sanford Redmond, Inc. v. Mid-Am. Dairymen, Inc.*,
    1992 WL 57090 (S.D.N.Y. Mar. 4, 1992), *aff'd* 993 F.2d 1534 (2d Cir. 1993) .............. 13, 14

*Scherk v. Alberto-Culver Co.*,
    417 U.S. 506 (1974) ....................................................................................... 24

*Schlessinger v. Valspar Corp.*,
    686 F.3d 81 (2d Cir. 2012) ............................................................................ 20

*Sears, Roebuck & Co. v. Stiffel Co.*,
    376 U.S. 225 (1964) ....................................................................................... 17

*Spivak v. Sachs*,
    16 N.Y.2d 163 (1965) ......................................................................................20

*Sprinzen v. Nomberg*,
    46 N.Y.2d 623 (1979) ......................................................................................21

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) ................................................................................10, 11

*Surgical Design Corp. v. Correa*,
    736 N.Y.S.2d 392 (2d Dep't 2002) ..................................................................20

*Szerdahelyi v. Harris*,
    67 N.Y.2d 42 (1986) ........................................................................................20

*Telenor Mobile Commc'ns AS v. Storm LLC*,
    584 F.3d 396 (2d Cir. 2009) ......................................................................24, 25

*Tempo Shain Corp. v. Bertek, Inc.*,
    120 F.3d 16 (2d Cir. 1997) .................................................................................9

*Veltman v. Norton Simon, Inc.*,
    425 F. Supp. 774 (S.D.N.Y. 1977) ...................................................................14

*Westerbeke Corp. v. Daihatsu Motor Co.*,
    304 F.3d 200 (2d Cir. 2002) .............................................................................10

**Statutes**

9 U.S.C. §§ 10-12 ...........................................................................................1, 9, 10

9 U.S.C. §§ 201-208 ...........................................................................................1, 25

Acorda Therapeutics, Inc. ("Acorda") respectfully submits this memorandum of law in support of its petition ("Petition") for an order (i) pursuant to 9 U.S.C. §§ 10-12, modifying the final arbitral award ("Award")[1] in an arbitration between Acorda and Alkermes PLC ("Alkermes") to the extent the tribunal ("Tribunal") manifestly disregarded applicable and preemptive federal law by declining to award damages incurred by Acorda as a result of its payment of royalties after July 2018, the date on which the Tribunal found that the parties' agreements (including the royalty obligations pursuant to which Acorda made tens of millions of dollars in payments to Alkermes) were unenforceable as a matter of law; (ii) pursuant to 9 U.S.C. § 207, confirming the Award, as modified pursuant to the Petition; (iii) entering judgment in Acorda's favor in the amount of the Award, as modified pursuant to the Petition, with pre- and post-award interest and costs as provided therein and as authorized by law, plus the costs of this proceeding; and (iv) awarding Acorda such other and further relief as this Court deems just and proper.

## I.    INTRODUCTION

This dispute is about a four year-long campaign by Alkermes, a global pharmaceutical company, to unlawfully extend its patent monopoly and to illegally extract tens of millions of dollars in improper and unlawful patent royalty payments from Acorda, a small biotech innovator that invented the groundbreaking multiple sclerosis ("MS") treatment, Ampyra® ("Ampyra").

Under the U.S. patent laws, monopoly power ends once a patent expires.  That is a bright-line rule: in *Brulotte v. Thys Co.*, 379 U.S. 29, 32-33 (1964), the Supreme Court held that

> a patentee's use of a royalty agreement that projects beyond the expiration
> date of the patent is unlawful *per se*. If that device were available to
> patentees, the free market visualized for the post-expiration period would

---

[1]    True and correct copies of the Award and the parties' agreement to arbitrate are attached as Exhibits A through C, respectively, to the Declaration of Joshua S. Wan, January 10, 2023 ("Wan Declaration").  For ease of reference, this Petition cites only to the corrected version of the Award, dated November 7, 2022, which is identical to the original version of the Award, dated October 13, 2022, with the exception of a correction by the Tribunal to the damages amount to fix a clerical error raised by the parties after the Award was initially issued.

1

be subject to monopoly influences that have no proper place there.

The record demonstrates unmistakably that when its patent expired in July 2018, Alkermes continued to demand the same royalties under the parties' existing agreements. Unsurprisingly, Alkermes's unlawful use of its expired patent caused the very harms that *Brulotte* proscribed: instead of a free market for the post-expiration period, Alkermes wrongly used "monopoly influences" to demand higher prices, restrict output and limit choices for sick MS patients.

Acorda thus commenced arbitration seeking a ruling that Alkermes's ongoing royalty demands violated *Brulotte* and, that as a result, Acorda was entitled to a refund of **all** royalties paid after the expiration of Alkermes's patent.

The Tribunal found in favor of Acorda, correctly ruling that "Alkermes was leveraging its patent to illegally obtain royalties beyond the life of the '938 Patent," and that "this is precisely the conduct that was outlawed under *Brulotte*." Award at 10. The Tribunal held that because "Alkermes continued to charge the same exact royalty after the '938 Patent expired," under binding Supreme Court precedent, "these post-patent royalties charged by Alkermes are 'unlawful *per se*' and are not enforceable." *Id*. (quoting *Kimble v. Marvel Entm't, LLC*, 576 U.S. 446, 452 (2015)). These core rulings were indisputably correct, and the Court should confirm the Award insofar as it upheld these fundamental tenets of federal patent law.

Importantly, the Tribunal found that "**[a]ll of the payments Acorda made after the '938 Patent expired were improper** as Alkermes was no longer to entitled to any royalty payments." *Id*. at 18 (emphasis added). Having found the agreements unlawful *per se*, the Tribunal determined that under New York law, "both the License and Supply Agreements are **UNENFORCEABLE**." *Id*. at 17 (capitalization and emphasis in original). Those core rulings were also correct.

Notwithstanding these clear and proper rulings, the Tribunal made a fundamental error in its damages analysis that this Court must correct. Despite recognizing that "restitution damages

may be awarded where a party 'renders performance under an agreement that is illegal or otherwise unenforceable for reasons of public policy,'" *Mazzei v. Money Stove*, 308 F.R.D. 92, 106 (S.D.N.Y. 2015), *aff'd* 829 F.3d 260 (2d Cir. 2016), the Tribunal invoked the New York "Voluntary Pay Doctrine"—a judicially-created state law doctrine—to allow Alkermes to retain millions of dollars in illegal royalties before Acorda "protested" that such royalties were illegal.

Acorda paid Alkermes over **$80 million** in royalty payments after Alkermes's patent expired in July 2018.  Even though the Tribunal found that **all of those payments** were improper and in violation of clear federal law, the Tribunal only allowed Acorda to recover approximately $16 million.  This ruling resulted in a **$65 million windfall**[2] for Alkermes by allowing it to keep illegal royalties that the Tribunal found were demanded and collected in violation of the law.

The Tribunal's application of state law doctrine to limit Acorda's damages was in manifest disregard of federal law set forth in *Brulotte* for at least the following reasons:

*First*, the Tribunal manifestly disregarded the law by invoking state law in clear derogation of clearly applicable federal patent law.  The Supreme Court has repeatedly and emphatically held that state laws may not interfere with the federal patent laws by offering "patent-like protection to the subject matter of the expired patent."  *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 152, 165 (1989).  By allowing Alkermes to retain illegal royalty payments that it demanded after expiration of its patent, the Award rewards Alkermes's gross misuse of monopoly power, unlawfully extends the term of Alkermes's patent beyond the statutory period, and upends the entire framework governing the Patent Act as set forth in *Brulotte* and its progeny.

*Second*, by allowing Alkermes to keep the tens of millions of dollars in royalty payments

---

[2]    The damages incurred by Acorda in connection with Alkermes's improper collection of royalty payments after expiry of Alkermes's patent in violation of *Brulotte* are summarized in Annex A to the Petition.

it demanded and collected after the expiration of its patent, the Award also gives effect to licensing agreements that the Tribunal (and Supreme Court) determined were illegal.  The Tribunal's ruling therefore violates the fundamental rule that "no court will lend its assistance in any way towards carrying out the terms of an illegal contract."  *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77 (1982) (quoting *McMullen v. Hoffman*, 174 U.S. 639, 654 (1899)); *Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*, No. 20-CV-5120 (LJL), 2022 WL 3536128, at *6 (S.D.N.Y. Aug. 17, 2022) ("The courts will not, of course, lend their hand in enforcing an illegal contract.").

At bottom, Acorda continued to pay royalties in good faith after Alkermes's patent expired and before challenging the legality of those royalties in arbitration.  Despite ruling unambiguously that Alkermes broke the law when it continued to collect royalties after its patent expired, the Tribunal rendered an award on damages that rewards Alkermes for its unlawful misconduct while disregarding and violating established Supreme Court precedent and federal patent law.  Rather than putting its imprimatur on an award that sanctions the very conduct the Supreme Court has held is illegal, this Court should modify the Award to allow Acorda to recover that **$65 million in unlawful royalties** demanded and collected after Alkermes's patent expired.

## II.     BACKGROUND AND PROCEDURAL FACTS

The facts pertaining to the parties' dispute and the arbitration are discussed more fully at Paragraphs 9 through 42 of the Petition, which Acorda incorporates herein by reference.

### A.     The Dispute

This dispute pertains to the manufacture and sale of the MS drug, Ampyra, which was developed by Acorda, under the Amended and Restated License Agreement between Elan

Corporation, PLC[3] and Acorda, dated September 26, 2003 (the "License Agreement") and the Supply Agreement between Elan Corporation, PLC and Acorda, dated September 26, 2003 (the "Supply Agreement") (collectively, the "Agreements").   The relevant provisions of the Agreements are reproduced and discussed at Paragraphs 12 to 15 of the Petition.

At the time the Agreements were executed, Alkermes owned U.S. Patent No. 5,540,938 (the "'938 Patent"), which covered the sustained release of dalfampridine, the active ingredient in Ampyra.  Wan Declaration, Ex. A ("Award") at 2, 6.  To develop and market Ampyra, Acorda needed to obtain a license from Alkermes under the '938 Patent.  *Id*.  Under the terms of the Agreements, Alkermes licensed the '938 Patent to Acorda and agreed to manufacture Ampyra.  In return, Acorda paid Alkermes a royalty rate of 18% net sales price ("NSP") and agreed to purchase a minimum percentage of Ampyra from Alkermes.  *Id*. at 6-7.  Although the 18% NSP payment was split between the License Agreement (10%) and the Supply Agreement (8%), the Agreements made clear that the combined 18% payment was a patent royalty on Ampyra.  *Id*. at 8-9.

After the '938 Patent expired in July 2018, Acorda informed Alkermes that it believed the expiration of the '938 Patent, at the very least, altered the royalty provisions in the Agreements. *Id*. at 2.  Acorda therefore sought a reduction in the price it was paying to Alkermes for future orders of Ampyra.  *Id*.  Alkermes disagreed, maintaining that the Agreements and the parties' contractual obligations were unaffected by the expiration of the '938 Patent.  *Id*.

### B.    The Arbitration

On July 28, 2020, Acorda filed its Demand for Arbitration, asserting claims for, *inter alia*, declaratory judgment, breach of contract, and unjust enrichment.  *Id*. at 2-3.  In particular, Acorda

---

[3]    Elan PLC is Alkermes's predecessor in interest.  *See* Opinion and Order (Order No. 23), April 11, 2022 ("SJ Opinion") at 4 n.4.  (Wan Decl., Ex. E).  For ease of reference, "Alkermes" will be used in-place of "Elan," whenever possible except in reference to a specific agreement.

sought a ruling that Alkermes's ongoing royalty charges violated the rule established in *Brulotte*, that post-expiry patent leveraging is illegal and against public policy, and that as a result, Acorda is entitled to a refund of all royalties paid after the expiration of the '938 Patent. *Id*.

As provided in the Agreements, the arbitration was seated in New York, and proceeded in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA Rules"). *Id*. at 1, 23. Also in accordance with the Agreements, the Tribunal applied New York law, supplemented by federal patent law. *Id*. at 3.

### 1.    The Summary Judgment Opinion and Order

Following discovery, the parties submitted six competing summary judgment motions, which were consolidated and fully briefed on November 23, 2021. *Id*. at 4. On April 11, 2022, the Tribunal issued its decision on the parties' summary judgment motions. Wan Decl., Ex. E, Opinion and Order (Order No. 23), April 11, 2022 ("SJ Opinion") at 20. Despite dismissing Acorda's contract claims, the Tribunal nevertheless held that Acorda had stated a "viable claim if certain facts are established at the Evidentiary Hearing" that "Alkermes was unjustly enriched because it charged Acorda a royalty rate that could not be charged under *Brulotte*." *Id*. at 11. The Tribunal further agreed with Acorda that "restitution damages may be awarded where a party 'renders performance under an agreement that is illegal or otherwise unenforceable for reasons of public policy.'" *Id*. at 12 (quoting *Mazzei*, 308 F.R.D. at 106, *aff'd* 829 F.3d 260 (2d Cir. 2016)).

However, the Tribunal ruled that any damages claim was limited to royalty payments made after July 2020—two years **after** the '938 Patent expired—when Acorda formally conveyed its *Brulotte* objection to Alkermes. *Id*. In limiting Acorda's damages, the Tribunal pointed to a "no-refund" clause in the Agreements, stating that "[w]hile the no-refund clause may waive liability for a refund, that is true only where no protest is made." *Id*. The Tribunal made clear that the limitation on Acorda's damages was based on the Agreements, and not the New York Voluntary

Pay Doctrine, which was a separate affirmative defense that was brought by Alkermes.  In fact, the Tribunal expressly denied that this doctrine applied, stating, unequivocally, that "the [New York Voluntary Pay Doctrine] does not have any implication for this Arbitration."  *Id*. at 12-13.

Following issuance of the SJ Opinion, Acorda maintained in its pre-hearing brief that if the Tribunal were to find a *Brulotte* violation, then the Agreements would be rendered unenforceable and Acorda would be entitled to recover **all** improper royalty payments after the '938 Patent expired in July 2018.  Acorda argued that it "will present evidence and argument at the Evidentiary Hearing as to why it is entitled to seek the return of any and all royalties paid after the date on which the Agreement became unlawful"—*i.e.*, expiration of the '938 Patent.  Wan Decl., Ex. F, Acorda's Pre-Hearing Arbitration Brief, May 24, 2022, at 2 n.1.

Alkermes responded immediately by writing to the Tribunal and arguing that "[a]llowing Acorda to present evidence or argument in support of a claim for damages prior to July 2020 would thwart the Panel's [summary judgment] ruling."  Wan Decl., Ex. G, Alkermes's Letter to the Tribunal, May 25, 2022, at 2.  Acorda responded by arguing that the Tribunal's summary judgment ruling did not foreclose all damages prior to July 2020.  As Acorda pointed out, the Tribunal could not have intended to limit Acorda's damages in the event it found a *Brulotte* violation because to do so would give effect to an unlawful contract up to and including July 2020.  Wan Decl., Ex. H, Acorda's Letter to the Tribunal, May 25, 2022, at 2-3.

On May 27, 2022, without addressing any of the parties' arguments, the Tribunal ruled that "Acorda's potential recovery is strictly limited to those payments made under protest as of July 2020," and that "the Tribunal will not entertain evidence regarding payments made prior to July 2020 as said payments are no longer pertinent to this Arbitration."  Wan Decl., Ex. I.  The Tribunal held an evidentiary hearing from June 1-7, 2022.  Award at 5.

2.      **The Award**

The Tribunal issued its Award on October 13, 2022.  The Tribunal found in favor of Acorda, ruling that "Alkermes was leveraging its patent to illegally obtain royalties beyond the life of the '938 Patent," and holding that "this is precisely the conduct that was outlawed under *Brulotte*." *Id*. at 10.  The Tribunal concluded that because "Alkermes continued to charge the same exact royalty after the '938 Patent expired," under binding Supreme Court precedent, "these post-patent royalties charged by Alkermes are 'unlawful *per se*' and are not enforceable." *Id*. (quoting *Kimble*, 576 U.S. at 452).  The Tribunal went on to analyze the exceptions to *Brulotte* and *Kimble* and concluded that none applied.  *Id*. at 10-14.  As the Tribunal made clear, "[h]aving concluded that Alkermes committed a *Brulotte* violation … it is obvious that the Tribunal must declare the running royalties in the License Agreement unenforceable." *Id*. at 16.  From there, the Tribunal stated, unequivocally, that "it is the ruling of this Tribunal that both the License and Supply Agreements are **UNENFORCEABLE**." *Id*. at 17 (emphasis in original).

But despite ruling unambiguously that the Agreements, including the royalties under those agreements, were unenforceable, the Tribunal maintained that Acorda was not entitled to recover any royalty payments under the License Agreement made before July 2020, stating that the period between July 2018 through July 2020 "has been carved out of this case." *Id*. at 9.  The Tribunal further ruled that "Acorda is not entitled to recover any payments under the Supply Agreement" for any period of time. *Id*. at 20.

As discussed above, the Tribunal had previously ruled in its summary judgment opinion that "the [New York Voluntary Pay Doctrine] does not have any implication for this Arbitration." SJ Opinion at 12-13.  Yet, in the Award the Tribunal stated that "the [New York Voluntary Pay Doctrine] has precluded any recovery by Acorda up until it made its formal protest in July 2020." Award at 18.  Thus, contrary to its prior ruling, and in a strained effort to limit Acorda's damages,

the Tribunal applied the doctrine for the first time in the Award to limit Alkermes's liability and allow Alkermes to retain royalties collected after its patent expired.

Moreover, despite finding that the License and Supply Agreements were "for all intents and purposes, one agreement," the Tribunal treated the royalty payments made by Acorda under the License Agreement and Supply Agreement differently for purposes of the New York Voluntary Pay Doctrine. *Id*. at 16. With respect to royalty payments made under the License Agreement, the Tribunal ruled that Acorda was entitled only to "payments it remitted after the July 2020 protest." *Id*. at 18. With respect to royalty payments made under the Supply Agreement, the Tribunal ruled that Acorda was not entitled to anything at all because Acorda's July 2020 protest letter only referred to the License Agreement and not the Supply Agreement. *Id*. at 18-20. Notably, the Tribunal found that Acorda never protested payments under the Supply Agreement even though on July 28, 2020, Acorda filed its demand for arbitration, challenging the payment of all post-expiration royalties and seeking a refund of royalty payments under both Agreements.

The damages incurred by Acorda in connection with Alkermes's improper collection of royalties after expiry of the '938 Patent in violation of *Brulotte* are summarized in Annex A to the Petition. As a result of the Tribunal's manifest disregard of applicable law, the Tribunal refused to award Acorda $65,629,716 in actual damages (exclusive of interest) for royalty payments collected by Alkermes after the '938 Patent expired in July 2018. Petition, Annex A.

## III.    LEGAL ARGUMENT

### A.    This Court Should Modify the Award Based on the Tribunal's Manifest Disregard of the Law

Judicial review of arbitration awards is "narrowly limited," *Barbier v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 120 (2d Cir. 1991), and "arbitration panel determinations are generally accorded great deference under the FAA," *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 19 (2d

Cir. 1997).  However, "great deference … is not the equivalent of a grant of limitless power." *Leed Architectural Prods., Inc. v. United Steelworkers of Am., Local 6674*, 916 F.2d 63, 65 (2d Cir. 1990), and "the arbitrator is not free merely to 'dispense his own brand of industrial justice.'" *Saint Mary Home, Inc. v. Serv. Emps. Int'l Union, Dist. 1199*, 116 F.3d 41, 44 (2d Cir. 1997).

Chapter 1 of the Federal Arbitration Act ("FAA") provides discrete grounds for modification of arbitral awards.  9 U.S.C. § 11.  Courts may also modify awards rendered in "manifest disregard of the law."  *Berkowitz v. Gould Paper Corp.*, No. 21-CV-6582 (VEC), 2022 WL 118232, at *6 (S.D.N.Y. Jan. 12, 2022) (analyzing manifest disregard doctrine where party sought to modify portion of award refusing to award fees); *Arbordale Hedge Invs., Inc. v. Clinton Grp. Inc.*, No. 99 CIV. 4452 MBM, 1999 WL 1000939, at *2 (S.D.N.Y. Nov. 4, 1999) (same).

Courts have applied the manifest disregard doctrine where an arbitrator's decision "strains credulity" or "does not rise to the standard of 'barely colorable,'" and where an arbitrator "willfully flouted the governing law by refusing to apply it."  *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 217-18 (2d Cir. 2002); *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 n.3, 676-77 (2010) (applying manifest disregard doctrine where tribunal imposed its own policy); *New York Tel. Co. v. Commc'ns Workers Local 1100*, 256 F.3d 89, 93 (2d Cir. 2001) (applying manifest disregard doctrine where tribunal ignored controlling precedent).

Under the law of this Circuit, "to modify or vacate an award on this ground, a court must find both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case."  *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 202 (2d Cir. 1998). In *Duferco*, the court added a third factor, holding that "once the first two inquiries are satisfied, we look to a subjective element, that is, the knowledge actually possessed by the arbitrators."

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389-90 (2d Cir. 2003). Courts have applied the manifest disregard doctrine in the following circumstances:

The Supreme Court has applied the manifest disregard doctrine where the arbitrators formulated their own public policy rule that contravened established law.   In *Stolt-Nielsen*, the parties submitted to a tribunal the issue of whether an arbitration clause permitted class arbitration. 559 U.S. at 668-69.   The FAA permits class arbitration only where an arbitration clause evinces a specific intent for class arbitration.   *Id*. at 684.   Even though it was undisputed that the arbitration clause at issue was silent on class arbitration, the tribunal nevertheless found that class arbitration was permitted under the relevant circumstances.   *Id*. at 676.   The Supreme Court resoundingly disagreed, holding that arbitrators are "not to make public policy[.]"   *Id*. at 672.   The Court found the tribunal did not apply the applicable rule for deciding whether arbitration clauses allowed class arbitration, proceeding instead "as if it had the authority of a common-law court to develop what it viewed as the best rule to be applied in such a situation."   *Id*. at 673-74.   The Court therefore held that the tribunal manifestly disregard the law by crafting its own rule.   *Id*. at 672 n.3.

In *New York Telephone*, the Second Circuit applied the manifest disregard doctrine in an arbitration involving a federal statute that made certain payments to labor organizations illegal. *New York Telephone*, 256 F.3d at 90-91.   After the telephone company stopped making payments to the union, arguing that they were illegal under the statute, the parties submitted the dispute to arbitration.   *Id*. at 91.   The arbitrator found that the payments were legal because they fell within an exception to the statute and ordered the telephone company to resume payments.   *Id*.   However, in doing so, the arbitrator disregarded Second Circuit precedent that made the payments illegal and relied instead on more recent decisions from outside the Circuit.   *Id*.   The Second Circuit affirmed the district court's vacatur of the award, holding that because the arbitrator's "opinions are not the

11

law of this Circuit; it was therefore 'manifest disregard of the law' for the arbitrator to reject [binding Second Circuit precedent] and apply another rule." *Id.* at 93.

In *Halligan*, the Second Circuit applied the manifest disregard doctrine in affirming the vacatur of an award that rejected a claim of age discrimination. 148 F.3d at 204. Because the court found "strong evidence that Halligan was fired because of his age," and the parties agreed that "the arbitrators were correctly advised of the applicable legal principles," the court was "inclined to hold that they ignored the law or the evidence or both." *Id.* The court also drew a negative inference from the lack of a reasoned award by the arbitrators, noting that "where a reviewing court is inclined to find that arbitrators manifestly disregarded the law or the evidence and that an explanation, if given, would have strained credulity, the absence of explanation may reinforce the reviewing court's confidence that the arbitrators engaged in manifest disregard." *Id.*

Finally, in *Hardy v. Walsh Manning Securities, L.L.C.*, 341 F.3d 126 (2d Cir. 2003), an arbitral panel found the manager of a brokerage firm liable for fraudulent securities transactions undertaken by an employee of the firm "based upon the principles of respondeat superior." *Id.* at 128. The Second Circuit, however, noted that by definition, "respondeat superior is a form of secondary liability that cannot be imposed upon the fellow employee of a wrongdoer." *Id.* at 130. Because the manager was an employee, not an officer, of the firm, the panel clearly misapplied the law by imposing respondeat superior liability on a fellow employee of a wrongdoer. As a result, the court found that the award was rendered in manifest disregard of the law. *Id.* at 133-34.

Like each of the foregoing cases, the *Duferco* factors are easily satisfied in the case at bar and accordingly, this Court should similarly find that the Tribunal manifestly disregarded the law.

1. **Federal Law is Clear—Acorda Is Entitled to Recover All Unlawful Royalty Payments Extracted After Expiration of the '938 Patent**

The applicable rule here could not be clearer. The Supreme Court has held on at least two

occasions that any patent license that "exact[s] the same terms and conditions for the period after the patents have expired as [it does] for the monopoly period" violates the public policy of the federal patent law system, and "is unlawful *per se*." *Brulotte*, 379 U.S. at 32. Fifty years later, the Supreme Court reaffirmed the rule set forth in *Brulotte* and rejected arguments (and amici pleas) to overrule *Brulotte*. *Kimble*, 576 U.S. at 457, 460-65 (noting that "Congress has rebuffed bills that would have replaced *Brulotte*'s *per se* rule with the same antitrust-style analysis Kimble now urges"). The Court concluded that "nothing about *Brulotte* has proved unworkable . . . [t]he decision is simplicity itself to apply. A court need only ask whether a licensing agreement provides royalties for post-expiration use of a patent. If not, no problem; if so, no dice." *Id*. at 459.

Courts in New York have strictly applied this rule. As one court in this District explained:

> A patent holder cannot use the grant of a license as means of extending the lawful term of the patent monopoly. A "patentee's use of a royalty agreement that projects beyond the expiration date of the patent is unlawful *per se*." The use of such an arrangement constitutes patent misuse even in the absence of evidence demonstrating that the patent holder used the leverage of the patent coercively….

*Leesona Corp. v. Varta Batteries, Inc.*, 522 F. Supp. 1304, 1342 (S.D.N.Y. 1981) (quoting *Brulotte*, 379 U.S. at 32).

In *Sanford Redmond*, a patentee refused to license its patent and instead offered to lease machines incorporating the patented process in perpetuity "on non-negotiable terms and conditions that would not likely have been obtainable without the patent excluding competition." *Sanford Redmond, Inc. v. Mid-Am. Dairymen, Inc.*, 1992 WL 57090, *6-7 (S.D.N.Y. Mar. 4, 1992) (citations omitted), *aff'd* 993 F.2d 1534 (2d Cir. 1993). Because the lease payments continued beyond the patent term, the court held that the use of the patent "to obtain an agreement for payment of compensation beyond the expiration of the patent renders the agreement unlawful *per se*," and therefore "the entire contract … is unenforceable." *Id*. In fact, courts in New York have

uniformly determined that a *Brulotte* violation renders the entire contract unenforceable.  *See, e.g.*, *id*. at *7; *Veltman v. Norton Simon, Inc.*, 425 F. Supp. 774, 776 (S.D.N.Y. 1977).

The Tribunal here correctly recognized that these principles controlled.  Finding in favor of Acorda, the Tribunal ruled that "Alkermes was leveraging its patent to illegally obtain royalties beyond the life of the '938 Patent," and noted that "this is precisely the conduct that was outlawed under *Brulotte*."  Award at 10.  The Tribunal rejected Alkermes's argument that it was entitled to collect royalties after its patent expired, concluding that no exceptions to *Brulotte* and *Kimble* applied, and further ruling that because "Alkermes continued to charge the same exact royalty after the '938 Patent expired," "these post-patent royalties charged by Alkermes are 'unlawful *per se*' and are not enforceable."  *Id*. at 10-14 (quoting *Kimble*, 576 U.S. at 452).

In light of its findings "that Alkermes committed a *Brulotte* violation, and that no *Kimble* exception is applicable," the Tribunal held that "it is obvious that the Tribunal must declare the running royalties in the License Agreement unenforceable."  *Id*. at 16.  As a result, the Tribunal found that "**[a]ll of the payments Acorda made after the '938 Patent expired were improper** as Alkermes was no longer to entitled to any royalty payments."  *Id*. at 18 (emphasis added).  As a consequence thereof, the Tribunal held that both Agreements were unenforceable in their entirety, declaring, unequivocally, that "it is the ruling of this Tribunal that both the License and Supply Agreements are **UNENFORCEABLE**."  *Id*. at 17 (emphasis in original).

Plainly, the Tribunal's finding of a *Brulotte* violation, paired with its recognition of the case law in this Circuit that provides that restitution damages are available where a party renders performance under an illegal or unenforceable agreement,[4] leads to only one possible outcome,

---

[4]   "[R]estitution damages may be awarded where a party 'renders performance under an agreement that is illegal or otherwise unenforceable for reasons of public policy.'"  *Mazzei*, 308 F.R.D. at 106 (S.D.N.Y. 2015), *aff'd* 829 F.3d 260 (2d Cir. 2016); *see also* Wan Decl., Ex. D, Acorda's Memorandum in Opposition to Alkermes's Motion

which the Tribunal unequivocally reached—"[a]ll of the payments Acorda made after the '938

Patent expired were improper as Alkermes was no longer to entitled to any royalty payments."

Award at 18.  This should have been the end of the Tribunal's analysis.  But rather than apply the

law and its unequivocal finding, the Tribunal applied a New York state law doctrine to allow

Alkermes to retain illegal royalties it collected after the '938 Patent expired.  The Tribunal's

application of a state law doctrine to override clearly governing federal law violates, and

manifestly disregards, all of the federal patent principles set forth above.

### 2.  The Tribunal Misapplied the Law by Invoking a New York State Law Doctrine—and Ignoring Preemptive Federal Law—to Allow Alkermes to Retain Unlawful Royalty Payments

The Tribunal's application of New York law to limit Acorda's recovery was a clear, and

seemingly intentional, misapplication of the law.  Despite ruling unambiguously that both the

Agreements, and the royalties under those Agreements, were improper and unenforceable, the

Tribunal maintained that Acorda was not entitled to recover any royalty payments made under the

License Agreement before July 2020, and that Acorda was not entitled to recover any royalty

payments made under the Supply Agreement during any time period.  *Id*. at 9.  The Tribunal clearly

misapplied the law by invoking the New York Voluntary Pay Doctrine, a judicially-created state

law doctrine, to allow Alkermes to retain royalty payments under the Agreements that the Tribunal,

in reliance on black-letter Supreme Court precedent, had determined were unlawful.  In doing so,

the Tribunal (i) allowed state law to preempt federal law and public policy; and (ii) gave effect to

agreements that it determined were unenforceable as a matter of law.  By using a state law to

interfere with the federal patent laws, the Tribunal did what the Supreme Court specifically warned

---

for Summary Judgment at 19 (citing *Norman v. Salomon Smith Barney, Inc.*, 350 F. Supp. 2d 382, 389-90 (S.D.N.Y. 2004) (allowing restitution damages "where contract is void for illegality of performance"); Restatement (Third) of Restitution and Unjust Enrichment § 32 (2011) ("Restitution will be allowed, whether or not necessary to prevent unjust enrichment, if restitution is required by the policy of the underlying prohibition.")).

against in *Bonita Boats*, creating "patent-like protection to the subject matter of the expired patent." 489 U.S. at 152. The Tribunal's limitation on Acorda's damages therefore manifestly disregarded clearly applicable federal law, resulting in an erroneous outcome that allowed Alkermes to retain over $65 million that it should never have demanded nor received.

### a. The Tribunal Previously Ruled that the New York Voluntary Pay Doctrine Did Not Apply to the Arbitration

As discussed in Paragraphs 32 to 37 of the Petition, the record suggests that the Tribunal had predetermined prior to the hearing that it would not award Acorda's full damages regardless of whether or not it found that the royalty payments were illegal. The Tribunal agreed with Acorda that "restitution damages may be awarded where a party 'renders performance under an agreement that is illegal or otherwise unenforceable for reasons of public policy.'" SJ Opinion at 12 (quoting *Mazzei*, 308 F.R.D. at 106). The Tribunal, however, in its summary judgment opinion, limited Acorda's restitution damages to "payments made under protest" based on its finding that the parties had included a "no-refund" clause in the Agreements. *Id*. Importantly, the Tribunal squarely rejected Alkermes's affirmative defense based on the New York Voluntary Pay Doctrine, holding that "the [doctrine] does not have any implication for this Arbitration." *Id*. at 13.

And yet, once the Tribunal heard the evidence and applied the law rendering the Agreements unenforceable as a matter of law (including the "no-refund" clause), the Tribunal had to make a choice: either apply the law and return to Acorda all of the illegal royalty payments Alkermes collected after the '938 Patent expired in July 2018; or come up with a new rationale for limiting Acorda's damages. But critically, this is not a case of discretion. The arbitrators were not faced with a choice between alternative damage models or creating their own. Rather, the Tribunal had to either apply the federal law or find a reason not to. It chose the latter, and in doing so, resurrected a state law doctrine that it had previously determined was inapplicable in this case

and manifestly disregarded the law of *Brulotte* and the Supremacy Clause.

> **b.    The Tribunal's Ruling Allows State Law to Preempt Federal Law and Public Policy**

By applying the New York Voluntary Pay Doctrine, the Tribunal manifestly disregarded the Supremacy Clause and the law of *Brulotte* and its progeny by allowing a state law doctrine to preempt federal patent law.  The Supreme Court, in both *Kimble* and *Brulotte*, highlighted the importance of the federal patent system and the delicate balance struck by Congress between fostering innovation and ensuring public access to discoveries.  *Kimble*, 576 U.S. at 451; *Brulotte*, 379 U.S. at 30.  As the Supreme Court in *Kimble* stated, "[w]hile the patent lasts, the patentee possesses exclusive rights to the patented article—rights he may sell or license for royalty payments . . . [a]nd when the patent expires, the patentee's prerogatives expire too, and the right to make or use the article, free from all restriction, passes to the public."  *Kimble*, 576 U.S. at 451.  The Supreme Court has "carefully guarded that cut-off date" and construed the federal patent laws to preclude measures that restrict free access to formerly patented inventions.  *Id*. at 451-452.

Indeed, in reaffirming *Brulotte*, the *Kimble* court noted how deeply entrenched *Brulotte*'s rule against post-expiration royalties has been in the U.S. patent law system.  The Court observed that "*Brulotte* has governed licensing agreements for more than half a century," and despite "Congress's continual reworking of the patent laws" over decades, "*Brulotte* survived every such change."  *Id*. at 456-57.  The fact that "*Brulotte*'s statutory and doctrinal underpinnings have not eroded over time," *id*. at 458, further illustrates that *Brulotte*'s rule, and the public policy it promotes, go to the very purpose of the U.S. patent laws.

When state laws conflict with the federal patent laws, the Supreme Court has consistently struck down those state laws.  *See Bonito Boats*, 489 U.S. at 152 (holding that Florida law was preempted because it interfered with federal patent law); *Sears, Roebuck & Co. v. Stiffel Co.*, 376

U.S. 225, 230 (1964) (holding that Illinois unfair competition law could not be applied to effectively give a party a patent monopoly); *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234, 237-238 (1964) (same).  In a similar manner to the case at bar, the lower court in *Bonito Boats* invoked Florida's trade secret law to give intellectual property effect to a manufacturing process that was not protected by a patent.  *Bonito Boats*, 489 U.S. at 159.  In reversing the underlying decision, the Supreme Court held that the state law was preempted by federal patent law, explaining that "state regulation of intellectual property must yield to the extent that it clashes with the balance struck by Congress in our patent laws."  *Id*. at 152.  As the Court noted, "[w]e have long held that after the expiration of a federal patent, the subject matter of the patent passes to the free use of the public as a matter of federal law."  *Id*.  "Where the public has paid the congressionally mandated price for disclosure, the States may not render the exchange fruitless by offering patent-like protection to the subject matter of the expired patent."  *Id*.

Courts in this District have strictly followed the rule set forth in the foregoing cases.  *See, e.g.*, *Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 186 (S.D.N.Y. 2022) ("[A]s the Supreme Court has instructed, 'state regulation of intellectual property must yield to the extent that it clashes with the balance struck by Congress in our patent laws.'" (quoting *Bonito Boats*, 489 U.S. at 152)); *Medisim Ltd. v. BestMed LLC*, 959 F. Supp. 2d 396, 425-26 (S.D.N.Y. 2013), *aff'd in part, and vacated in part and remanded on other grounds*, 758 F.3d 1352 (Fed. Cir. 2014) (overturning jury verdict awarding damages under state law of unjust enrichment where court invalidated patent because "[a] quasi-contract granting [plaintiff] patent-like protection over its invalidated patent would usurp the federal patent law").

When the Tribunal invoked the New York Voluntary Pay Doctrine to validate Alkermes's collection of royalties after the patent expired, the Tribunal did exactly what the Supreme Court

said it **could not do** under federal law—it provided "patent-like protection to the subject matter of the expired patent." *Bonito Boats*, 489 U.S. at 152.  The New York Voluntary Pay Doctrine extended the life of the '938 Patent beyond its federally-prescribed term—a result the Supreme Court prohibited in *Bonito Boats*, and specifically proscribed in *Brulotte* and *Kimble*.  As stated by the Supreme Court in *Brulotte*, "patents are in the federal domain; and '**whatever the legal device employed**'"—state law or private contract—"a projection of the patent monopoly after the patent expires is not enforceable." *Brulotte*, 379 U.S. at 32 (emphasis added).

The Tribunal clearly violated this principle.  The Tribunal itself acknowledged that *Brulotte* and *Kimble* rendered the License and Supply Agreements, private contracts, unenforceable, and the royalties under those Agreements unlawful *per se*.  Award at 17.  But it allowed the New York Voluntary Pay Doctrine to breathe new life into an expired patent that federal law rendered unenforceable. *Id.* at 18.  This is manifest disregard of the Supremacy Clause and the Supreme Court's well-establish preemption jurisprudence. *Bonito Boats*, 489 U.S. at 152; *Kimble*, 576 U.S. at 451-452; *Brulotte*, 379 U.S. at 33 ("The exaction of royalties for use of a machine after the patent has expired is an assertion of monopoly power in the post-expiration period when, as we have seen, the patent has entered the public domain.").

### c.   The Tribunal's Ruling Gives Effect to Contracts that are Unenforceable as a Matter of Law

The Tribunal's misapplication of the New York Voluntary Pay Doctrine to allow Alkermes to retain tens of millions of dollars of royalty payments after the expiration of the '938 Patent also indisputably gave effect to contracts that the Tribunal determined were illegal and unenforceable.

It is axiomatic that courts should not enforce illegal contracts.  This bedrock principle has been enshrined in countless Supreme Court decisions. *Kaiser*, 455 U.S. at 77 (holding that "our cases leave no doubt that illegal promises will not be enforced"); *McMullen*, 174 U.S. at 654 ("[N]o

court will lend its assistance in any way towards carrying out the terms of an illegal contract….").

Federal and state courts in New York have followed this rule without exception. In *Schlessinger v. Valspar Corp.*, 686 F.3d 81, 85 (2d Cir. 2012), the Second Circuit, applying New York law, held that "[i]t is the settled law of this State . . . that a party to an illegal contract cannot ask a court of law to help him carry out his illegal object, nor can such a person plead or prove in any court a case in which he, as a basis for his claim, must show forth his illegal purpose."[5] *Id.* (quoting *Stone v. Freeman*, 298 N.Y. 268, 271 (1948)); *see also Fleetwood*, 2022 WL 3536128, at *6 ("The courts will not, of course, lend their hand in enforcing an illegal contract."). Likewise, the New York Court of Appeals has long referred to "the familiar rule that illegal contracts, or those contrary to public policy, are unenforceable and that the courts will not recognize rights arising from them." *Szerdahelyi v. Harris*, 67 N.Y.2d 42, 48, 50-51 (1986) (finding that lender who charged usurious interest could not recover principal); *see also Bonilla v. Rotter*, 36 A.D.3d 534, 535 (1st Dep't 2007) (finding that "agreement [to split fees between lawyer and non-lawyer] is illegal and plaintiff is foreclosed from seeking the assistance of the courts in enforcing it"); *Surgical Design Corp. v. Correa*, 736 N.Y.S.2d 392, 393 (2d Dep't 2002) (employer could not enforce a notice-of-termination clause in employment contract that called for employee to perform illegal activities); *Spivak v. Sachs*, 16 N.Y.2d 163, 168 (1965) (holding that lawyer not licensed in New York could not collect legal fees for work performed in New York).

Under these clear legal principles, no court in New York would have—or could have—permitted Alkermes to obtain the exact same royalty payments following the expiration of the '938 Patent. Yet that is precisely the relief Alkermes obtained in the arbitration. By allowing Alkermes

---

[5]   The court noted that "[t]he general rule is modified, however, where the illegality concerns the violation of a regulatory statute." *Schlessinger v. Valspar Corp.*, 686 F.3d 81, 85 (2d Cir. 2012). Here, because the royalties were not illegal because they violated a statute, but because they violated federal public policy according to the Supreme Court, the narrow exception that allows certain illegal contracts to be enforced is not applicable.

to keep the illegal royalty payments after July 2018, the Tribunal's decision effectively circumvents the rule prohibiting courts from giving effect to unenforceable agreements.

Importantly, New York courts have extended this doctrine to arbitration, and have ruled that arbitral awards that violate public policy are not enforceable. The New York Court of Appeals has held that "it is the established law in this State that an award which is violative of public policy will not be permitted to stand." *Sprinzen v. Nomberg*, 46 N.Y.2d 623, 630 (1979). Applying this rule, courts have repeatedly denied attempts to enforce illegal agreements through arbitration. For example, in *Matter of Crosstown Operating Corporation*, the Appellate Division affirmed vacatur of an arbitral award and remanded for recalculation of damages, holding that "to the extent the award includes breach of contract damages for revenues derived from … an illegal gambling device, it is violative of public policy and should not be judicially enforced." *Matter of Crosstown Operating Corp.*, 595 N.Y.S.2d 445, 445 (1st Dep't 1993). Similarly, in *Durst v. Abrash*, the court held that a lender who was allegedly exacting a usurious rate of interest could not, as a matter of public policy, protect the transaction from judicial review by including a broad arbitration clause in the "loan" agreement and then demanding that all issues be heard by the arbitrator. *Durst v. Abrash*, 253 N.Y.S.2d 351, 356 (1st Dep't 1964), *aff'd*, 17 N.Y.2d 445 (1965).

Other courts have similarly refused to enforce arbitration awards that give effect to illegal agreements. In *Jackson Purchase*, an employer and a labor union arbitrated a dispute involving the employer's deduction of union dues from employee paychecks without authorization from the employees. *Jackson Purchase Rural Elec. Co-op. Ass'n v. Loc. Union 816, Int'l Bhd. of Elec. Workers*, 646 F.2d 264, 265-66 (6th Cir. 1981). The arbitrator found that although the unauthorized deduction of dues violated federal law, the fact that the practice had continued for sixteen years created an implied agreement to "check off" union dues, which had become part of

the collective bargaining agreement and therefore was not subject to unilateral termination by the employer. *Id.* at 266. The district court set aside the arbitration award, concluding that since the check off violated federal law, it could not be enforced. *Id.* The Sixth Circuit affirmed, holding that "[b]ecause the practice of checking off union dues without written authorization and the implied agreement to check off are illegal . . . the arbitrator exceeded his authority by incorporating the practice . . . into the collective bargaining agreement here." *Id.* at 268.

The rationale underlying these cases is aptly summarized in *Botany Industries*, which involved a petition to vacate an arbitration award obtained by a labor union against an employer enforcing a collective bargaining agreement. *Botany Indus., Inc. v. New York Joint Bd., Amalgamated Clothing Workers of Am.*, 375 F. Supp. 485, 488-89 (S.D.N.Y. 1974), *vacated on other grounds sub nom. Robb v. New York Joint Bd., Amalgamated Clothing Workers of Am.*, 506 F.2d 1246 (2d Cir. 1974) (vacated due to filing of bankruptcy petition). The employer moved to vacate, arguing that part of the agreement the union sought to enforce in the arbitration was illegal under a federal statute. The court determined that it had the authority to review whether the underlying agreement the award sought to enforce violates federal law, stating:

> **The power of the federal courts to enforce the terms of private agreements is at all times exercised subject to the restrictions and limitations of the public policy of the United States** as manifested in the Constitution, treaties, federal statutes, and **applicable legal precedents**. **Where the enforcement of private agreements would be violative of that policy, it is the obligation of courts to refrain from such exertions of judicial power.**

*Id.* at 490-91 (emphasis added) (quoting *Hurd v. Hodge*, 334 U.S. 24, 34-35 (1948)). The *Botany Industries* court went on to explain that:

> To hold otherwise would undermine the judicial, as well as arbitral, process. By failing to ascertain the enforceability of the agreement, **the court would not only be disregarding the Supreme Court's mandate prohibiting the enforcement of agreements violative of public policy, but it would also be placing itself in the untenable position of giving judicial sanction to**

> **an unlawful act** by ordering the parties to engage in an activity proscribed by federal statutory law. This court will not permit, for the court can neither ignore the law nor condone disobedience to the law's commands.

*Id.* at 491, 499 (emphasis added) (further noting that "it is obvious that the award which attempts to enforce the Agreement is likewise unenforceable").

At bottom, Alkermes cannot be permitted to retain a $65 million windfall through an arbitration award that a court would be prohibited from awarding. As discussed above in Section III.A.2.b, by validating the royalties demanded and collected after expiration of the '938 Patent, the Award not only gives effect to agreements that the Tribunal determined were unenforceable, but it also affirms Alkermes's gross misuse of bargaining power, unlawfully extends the term of the '938 Patent beyond its statutory duration, and effectively up-ends the entire framework governing the Patent Act and federal patent law. No court would allow such an outcome to stand.

### 3. The Tribunal Had Knowledge of *Brulotte* and Its Progeny, As Well As the New York Voluntary Pay Doctrine

To establish that the Tribunal had knowledge of the governing law, courts "impute only knowledge of governing law identified by the parties to the arbitration." *Duferco*, 333 F.3d at 390. It is beyond dispute that the Tribunal was aware of the applicable law.

As discussed above in Section II.C, the parties extensively briefed the applicable law on the effect of patent expiration on the enforceability of the Agreements and the legality of royalties. Indeed, the Tribunal's knowledge of the applicable law, including *Brulotte* and its progeny, as well as the law on restitution damages, is confirmed by its citation of many of the very same cases discussed above. Award at 16; SJ Opinion at 12. The parties also briefed the application of the New York Voluntary Pay Doctrine in connection with their motions for summary judgment. *See* Wan Decl., Ex. D. In fact, the Tribunal had specifically ruled that the New York Voluntary Pay Doctrine was inapplicable to the arbitration, a fact that, at the very least, it was aware of the

doctrine and the circumstances in which it applies.  SJ Opinion at 13.

Simply put, the Tribunal's disregard of the law was manifest because the applicable law was known by the Tribunal and brought to the Tribunal's attention on multiple occasions.  The only conclusion to be reached is that the Tribunal simply chose to ignore it.

In sum, the record plainly reflects that the arbitrators were subjectively aware of clearly governing federal law as set forth in *Brulotte* and its progeny, but disregarded it by invoking a state law doctrine to give effect to illegal contracts and to limit Acorda's damages.  Because each of the *Duferco* factors is satisfied here, the Court should modify the Award to grant Acorda a refund of all royalties demanded by and paid to Alkermes after the expiration of the '938 Patent.

## B.    This Court Must Confirm the Award, As Modified, Under the New York Convention

The Supreme Court and the Second Circuit have noted repeatedly that the overriding purpose of the United Nations Convention for the Recognition and Enforcement of Foreign Arbitral Awards (June 10, 1958), 21 U.S.T. 2517, 330 U.N.T.S. 38 ("New York Convention") is to vindicate the very strong public policy favoring the quick and certain enforcement of international arbitration agreements and to ensure that parties who have agreed to submit their disputes to international arbitration will follow through on their agreements to abide by arbitral decisions and forego unnecessary litigation.  *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974) ("The goal of the [New York] Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries."); *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 405 (2d Cir. 2009) ("Given the strong public policy in favor of international arbitration, review of arbitral awards under the New York

Convention is very limited in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." (citations omitted).

The New York Convention implements this fundamental public policy by requiring that where an arbitration award is subject to the Convention's terms, as the Award is here, it **must** be confirmed by the courts of a signatory nation unless the party resisting confirmation can demonstrate that one of a series of specified reasons for non-recognition is present.  Specifically, Article III of the New York Convention provides that "[e]ach Contracting State **shall recognize** arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon[.]"  *See Telenor Mobile,* 584 F.3d at 405 (emphasis added).

The "rules of procedure" applicable to confirmation proceedings in the United States are set forth in Chapter 2 of the FAA, 9 U.S.C. §§ 201-208.  Section 207 of the FAA provides that a court "**shall confirm** [an arbitration] award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the … Convention." 9 U.S.C. § 207 (emphasis added); *see also Telenor Mobile*, 584 F.3d at 405 (emphasizing mandatory nature of court's responsibility to grant a petition to enforce a foreign arbitral award under the Convention unless it finds one of the enumerated grounds for refusal of recognition or enforcement applicable).

Thus, under settled law, the Award—as modified—**must** be confirmed unless Alkermes can demonstrate that one of the narrow grounds for nonrecognition applies.  With the exception of the portion of the Award that should be modified, as discussed above in Section III.A, Acorda submits that the balance of the Award must be confirmed, as the parties and the Tribunal followed the parties' arbitration agreement and the AAA Rules and no grounds for nonrecognition applies.

## IV.    CONCLUSION

For the foregoing reasons, Acorda respectfully requests that the Petition be granted, and that judgment be entered thereon in favor of Acorda.

25

Dated: January 10, 2023
        New York, New York

                                    Respectfully submitted,

                                    */s/ James E. Berger*
                                    James E. Berger
                                    Joshua S. Wan
                                    Tracy Block (*pro hac vice* pending)
                                    DLA Piper LLP (US)
                                    1251 Avenue of the Americas
                                    New York, NY 10020
                                    T: (212) 335-4715
                                    james.berger@us.dlapiper.com
                                    joshua.wan@us.dlapiper.com
                                    tracy.block@us.dlapiper.com

                                    Michael A. Sitzman (*pro hac vice* pending)
                                    DLA Piper LLP (US)
                                    555 Mission Street, Suite 2400
                                    San Francisco, CA 94105
                                    T: (415) 615-6175
                                    michael.sitzman@us.dlapiper.com

                                    John S. Gibson (*pro hac vice* pending)
                                    DLA Piper LLP (US)
                                    2000 Avenue of the Stars
                                    Suite 400 North Tower
                                    Los Angeles, CA 90067
                                    T: (310) 595-3039
                                    john.gibson@us.dlapiper.com

                                    *Attorneys for Petitioner Acorda*
                                    *Therapeutics, Inc.*