**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In the Matter of the Arbitration Between | : **Civil Action No. 1:23-cv-00223** |
| | : |
| ACORDA THERAPEUTICS, INC., | : |
| | : |
| *Petitioner*, | : |
| v. | : |
| | : |
| ALKERMES PLC, | : |
| | : |
| *Respondent*. | : |
| | : |
| | : |
| | : |

**RESPONDENT'S OPPOSITION TO PETITION TO MODIFY AND CONFIRM**
**ARBITRAL AWARD  AND CROSS-MOTION TO CONFIRM ARBITRAL AWARD**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................ 1

FACTUAL BACKGROUND .......................................................................................... 4

I.      The Parties' Agreements And The Development Of Ampyra® ......................... 4

II.     The Arbitration Proceedings ............................................................................. 6

     A.     The Parties' Arguments Regarding Repayment Of Post-Expiration Royalties ...... 7

     B.     The Summary Judgment Decision ......................................................... 8

     C.     The Arbitral Award ............................................................................. 10

ARGUMENT .................................................................................................................. 11

I.      Acorda Cannot Rely On The Manifest Disregard Doctrine To Modify The Award. ....... 12

II.     Acorda Fails To Meet The Exceedingly High Bar For Manifest Disregard.................... 15

     A.     *Brulotte* Does Not Dictate Restitution Damages Or Any Other Backward-Looking Remedy.......................................................................... 17

     B.     Acorda Identifies No Manifest Disregard In The Tribunal's Decision To Apply The NYVPD To Limit Acorda's Recovery. ............................................. 18

           1.     Acorda's New Preemption Argument Does Not Show A Manifest Disregard Of Law. .................................................................. 19

           2.     The Tribunal Did Not Manifestly Disregard State Restitution Law By Applying The NYVPD. ....................................................... 22

           3.     The Tribunal's Application Of The NYVPD Did Not Manifestly Disregard Any State Policy Against Enforcing Illegal Contracts............. 23

CONCLUSION ............................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Arbordale Hedge Investments, Inc. v. Clinton Group Inc.*,
   1999 WL 1000939 (S.D.N.Y. Nov. 4, 1999) ..........................................................................14

*Berkowitz v. Gould Paper Corp.*,
   2022 WL 118232 (S.D.N.Y. Jan. 12, 2022) ......................................................................13, 14

*Bonilla v. Rotter*,
   829 N.Y.S.2d 52 (N.Y. App. Div. 2007) ...............................................................................24

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
   489 U.S. 141 (1989) ..........................................................................................................20, 21, 22

*Botany Indus., Inc. v. N.Y. Joint Bd., Amalgamated Clothing Workers of Am.*,
   375 F. Supp. 485 (S.D.N.Y. 1974), *judgment vacated sub nom. N.Y. Joint Bd.,*
   *Amalgamated Clothing Workers of Am.*, 506 F.2d 1246 (2d Cir. 1974) ...............................24

*Brulotte v. Thys Co.*,
   379 U.S. 29 (1964)..............................................1, 2, 4, 5, 6, 7, 8, 9, 10, 16, 17, 18, 19, 21, 23

*Capri Sun GMBH v. Am. Beverage Corp.*,
   595 F. Supp. 3d 83 (S.D.N.Y. 2022).....................................................................................21

*Compco Corp. v. Day-Brite Lighting, Inc.*,
   376 U.S. 234 (1964)..............................................................................................................21

*In re Crosstown Operating Corp.*,
   595 N.Y.S.2d 445 (N.Y. App. Div. 1993) .............................................................................24

*Diapulse Corp. of Am. v. Carba, Ltd.*,
   626 F.2d 1108 (2d Cir. 1980)...........................................................................................3, 13

*Dillon v. U-A Columbia Cablevision of Westchester, Inc.*,
   740 N.Y.S.2d 396 (N.Y. App. Div. 2002), *aff'd*, 790 N.E.2d 1155 (N.Y. 2003)..........8, 10, 22

*Dinizio & Cook, Inc. v. Duck Creek Marina at Three Mile Harbor, Ltd.*,
   821 N.Y.S.2d 649 (N.Y. App. Div. 2006) .............................................................................22

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*,
   333 F.3d 383 (2d Cir. 2003).........................................................................3, 15, 16, 18, 19, 21

*Durst v. Abrash*,
   253 N.Y.S.2d 351 (N.Y. App. Div. 1964) .............................................................................24

*Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*,
   2022 WL 3536128 (S.D.N.Y. Aug. 17, 2022) .........................................................24

*Gaisi v. Gaisi*,
   968 N.Y.S.2d 902 (N.Y. App. Div. 2013) ...............................................................22

*Goldman v. Architectural Iron Co.*,
   306 F.3d 1214 (2d Cir. 2002).........................................................................16, 23

*Grain v. Trinity Health, Mercy Health Servs. Inc.*,
   551 F.3d 374 (6th Cir. 2008) ...................................................................................15

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*,
   552 U.S. 576 (2008)...................................................................................12, 14

*Halligan v. Piper Jaffray, Inc.*,
   148 F.3d 197 (2d Cir. 1998) ...................................................................................14

*Hardy v. Walsh Manning Sec., L.L.C.*,
   341 F.3d 126 (2d Cir. 2003).....................................................................................25

*Jackson Purchase Rural Elec. Co. Coop. Ass'n v. Loc. Union 816, Int'l
   Brotherhood of Elec. Workers*,
   646 F.2d 264 (6th Cir. 1981) ...................................................................................24

*Josephthal & Co. v. Cruttenden Roth Inc.*,
   177 F. Supp. 2d 232 (S.D.N.Y. 2001)......................................................................14

*Kimble v. Marvel Ent., LLC*,
   576 U.S. 446 (2015)..................................................................................................17

*Leesona Corp. v. Varta Batteries, Inc.*,
   522 F. Supp. 1304 (S.D.N.Y. 1981).........................................................................18

*Levenger Co. v. Feldman*,
   516 F. Supp. 2d 1272 (S.D. Fla. 2007) ...................................................................18

*LLT Int'l Inc. v. MCI Telecomms. Corp.*,
   69 F. Supp. 2d 510 (S.D.N.Y. 1999)..................................................................13, 14

*Mazzei v. Money Stove*,
   308 F.R.D. 92 (S.D.N.Y. 2015), *aff'd*, 829 F.3d 260 (2d Cir. 2016)..................9, 22

*Medisim Ltd. v. BestMed LLC*,
   959 F. Supp. 2d 396 (S.D.N.Y. 2013), *aff'd in part, vacated in part, remanded
   by* 758 F.3d 1352 (Fed. Cir. 2014).........................................................................21

*N.Y. Tel. Co. v. Commc'ns Workers of Am. Local 1100*,
   256 F.3d 89 (2d Cir. 2011)......................................................................................25

*Norman v. Salomon Smith Barney Inc.*,
   350 F. Supp. 2d 382 (S.D.N.Y. 2004).....................................................................22

*Sanford Redmond, Inc. v. Mid-Am. Dairymen, Inc.*,
   1992 WL 57090 (S.D.N.Y. Mar. 4, 1992), *aff'd*, 993 F.2d 1534 (2d Cir. 1993)...................18

*Schlessinger v. Valspar Corp.*,
   686 F.3d 81 (2d Cir. 2012)......................................................................................24

*Sears, Roebuck & Co. v. Stiffel Co.*,
   376 U.S. 225 (1964)................................................................................................21

*Smarter Tools Inc. v. Chongqing SENCI Import & Export Trade Co.*,
   57 F.4th 372 (2d Cir. 2023) ..............................................................................15, 25

*Spivak v. Sachs*,
   211 N.E.2d 329 (N.Y. 1965)..................................................................................24

*STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*,
   648 F.3d 68 (2d Cir. 2011).............................................................................4, 15, 16

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010)................................................................................................25

*Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*,
   548 F.3d 85 (2d Cir. 2008), *rev'd on other grounds*, 559 U.S. 662 (2010)...........................14

*Surgical Design Corp. v. Correa*,
   736 N.Y.S.2d 392 (N.Y. App. Div. 2002) ..............................................................24

*Szerdahelyi v. Harris*,
   490 N.E.2d 517 (N.Y. 1986)..................................................................................24

*T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*,
   592 F.3d 329 (2d Cir. 2010)...................................................................................14

*TD Ameritrade, Inc. v. Kelley*,
   2016 WL 5660399 (S.D.N.Y. Sept. 30, 2016).......................................................13

*Tessera, Inc. v. Toshiba Corp.*,
   2019 WL 5395158 (N.D. Cal. Oct. 22, 2019)......................................................7, 17

*Veltman v. Norton Simon, Inc.*,
   425 F. Supp. 774 (S.D.N.Y. 1977)........................................................................18

*Wallace v. Buttar*,
    378 F.3d 182 (2d Cir. 2004)....................................................................................3, 16, 19, 20

*Westerbeke Corp. v. Daihatsu Motor Co.*,
    304 F.3d 200 (2d Cir. 2002)........................................................................................4, 15, 22

*Zila, Inc. v. Tinnell*,
    No. 2:00-cv-01345 (D. Nev. Apr. 22, 2004), ECF No. 172, *rev'd and*
    *remanded on other grounds*, 502 F.3d 1014 (9th Cir. 2007).................................................7, 17

**Statutes:**

9 U.S.C. § 10.................................................................................................................3, 14

9 U.S.C. § 11.................................................................................................3, 12, 13, 14, 15

**Other Authorities:**

Restatement (Second) of Contracts § 197 (1981) .........................................................................18

**INTRODUCTION**

The arbitration award in this case is the culmination of an arbitration proceeding between Acorda Therapeutics, Inc. ("Acorda") and Alkermes PLC ("Alkermes") that lasted for more than two years and was presided over by a panel of distinguished retired federal and state judges. Acorda's attempt to overturn the Tribunal's thorough and carefully reasoned Award is an abuse of the judicial process.  Acorda relies on a legal standard—manifest disregard of the law—that does not even apply to the modification order it seeks and plainly cannot be satisfied given the exceptionally high degree of deference owed to the Tribunal.  The Court should deny the petition, reject any modification, and confirm the Award.[1]

The underlying dispute arose from two agreements the parties executed in relation to the co-development, marketing, and commercial supply of the pharmaceutical known as Ampyra®. Under the License Agreement, Acorda was contractually obligated to pay Alkermes a 10% royalty in exchange for a license to Alkermes's patent estate, including U.S. Patent No. 5,540,938 ("the '938 Patent"), which Acorda needed to sell Ampyra®.  Under the Supply Agreement, Acorda paid an additional 8% royalty in exchange for Alkermes's manufacture and supply of Ampyra®.  After the '938 Patent expired in 2018, Acorda continued to pay royalties under both agreements without protest until July 2020.  At that point, Acorda asserted for the first time that the ongoing 10% royalty under the License Agreement was unlawful under *Brulotte v. Thys Co.*, 379 U.S. 29 (1964), which prohibits charging royalties for use of a patent after it has expired.  Alkermes disagreed with Acorda's position, and Acorda then initiated the underlying arbitration.  Acorda never objected to paying Alkermes the additional 8% royalty due under the Supply Agreement, either before or after initiating the arbitration.

The two-plus year arbitration proceeding was robust:  it involved extensive discovery,

---

[1] Alkermes respectfully submits that the petition can be denied and the Award confirmed without oral argument.

multiple rounds of motions briefing, a five-day evidentiary hearing, pre- and post-hearing briefing, and closing arguments.  During these proceedings, the parties' arguments and defenses were thoroughly aired before the Tribunal.  In particular, the parties engaged at length not only on whether the continuing royalties violated *Brulotte*, but also whether, if a *Brulotte* violation were found, Acorda was entitled to a refund of royalty payments it never objected to in light of limits New York law (which governs the Agreements) imposed on the recovery of voluntary payments, as well as the License Agreement's "no refund" clause.

The Tribunal issued a 23-page Award concluding that the royalty obligations under the License Agreement and Supply Agreement violated *Brulotte* following expiration of the '938 Patent, and declaring those agreements unenforceable.[2]  The Tribunal also concluded that Acorda was entitled to recover some of the post-expiration royalties it had paid to Alkermes, but only those royalties paid under protest—*i.e.*, the 10% royalties paid under the License Agreement after July 2020.  The Tribunal found as a matter of fact that Acorda never made any of the payments under the Supply Agreement under protest.  Relying on New York's "Voluntary Payment Doctrine" ("NYVPD"), the Tribunal found that Acorda's failure to object to payment of the 8% royalty under the Supply Agreement (ever) and the 10% royalty under the License Agreement (prior to July 2020) foreclosed its ability to recover those royalty payments.  Therefore, the Tribunal awarded $16,554,267, plus $1,689,528 in pre-judgment interest—which Alkermes paid in full.

Despite having prevailed on its *Brulotte* claim and received over $18 million, Acorda has now filed a petition in this Court styled as one to "Confirm Arbitral Award in Part and Modify in Part."  Petition at 1.  That characterization is disingenuous:  Acorda does not need to "confirm"

---

[2] While Alkermes disputed that the 8% payment under the Supply Agreement is a royalty, the Tribunal found that it was, and Alkermes accepts that finding for purposes of this opposition.

anything (it acknowledges that Alkermes has already paid the amount awarded by the Tribunal) and its request to "modify" the Award is actually a direct attack on the substance of the Tribunal's reasoning, as Acorda effectively asks the Court to vacate the portion of the Award limiting Acorda's royalties to those made under protest and then step into the shoes of the Tribunal to award Acorda an additional $65,629,716 that the Tribunal expressly withheld. Acorda's petition is procedurally improper, substantively baseless, rests on mischaracterizations of the record, and should be denied in its entirety.

First, although Acorda purports to seek "modification," it does not rely on any of the exclusive grounds for modification listed in the Federal Arbitration Act ("FAA"), 9 U.S.C. § 11. That provision allows only ministerial corrections of non-substantive errors in an arbitration award to conform it to the arbitrators' original intent; it does not "license the district court to substitute its judgment for that of the arbitrators." *Diapulse Corp. of Am. v. Carba, Ltd.*, 626 F.2d 1108, 1110 (2d Cir. 1980). But that is exactly what Acorda seeks, as it directly challenges the legal judgment of the Tribunal and invokes a standard—manifest disregard of the law—that applies only to requests to *vacate* an award under FAA § 10—relief Acorda conspicuously does not seek.

Second, even if the manifest disregard standard could be invoked here, Acorda has fallen far short of satisfying it. Manifest disregard is a "severely limited" "doctrine of last resort," which requires this Court to "give[] extreme deference to arbitrators" and thus can be satisfied in only "exceedingly rare" cases involving the "the most egregious instances" of lawlessness. *Wallace v. Buttar*, 378 F.3d 182, 189-91 (2d Cir. 2004). Acorda's arguments come nowhere near meeting that standard. As a threshold matter, several of Acorda's arguments—specifically, that the NYVPD is preempted by federal patent law and violates a New York policy against

3

enforcing illegal contracts—were never even raised during the arbitration proceedings.  By definition, these arguments cannot support a claim that the Tribunal manifestly disregarded the law.  *See Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 390 (2d Cir. 2003).  In any event, Acorda identifies no legal error in the Tribunal's ruling, much less a "well-defined, clearly governing decisional rule" that the Tribunal willfully ignored.  *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 216 (2d Cir. 2002).  Indeed, Acorda cites *no case* setting out the rule it claims the Tribunal was required to apply—under which restitution would be transformed from a discretionary remedy to a mandatory one when *Brulotte* applies—while Alkermes cited several cases to the Tribunal holding the opposite.  Instead, Acorda seeks to disparage the Tribunal by accusing three distinguished retired judges of reaching a "predetermined" result, but that charge rests on a blatant distortion of the record—Acorda repeatedly misrepresents the Tribunal's summary judgment decision with selective quotations wrenched from context.

Ultimately, Acorda's petition asks this Court for a do-over to obtain recovery that the Tribunal squarely rejected in a well-reasoned decision issued at the end of a more than two-year process.  Acorda's request that this Court second-guess the Tribunal's judgment—including on the basis of brand new legal arguments—is exactly the kind of misuse of the judicial process that "frustrate[s] the basic purpose of arbitration … to dispose of disputes quickly and avoid the expense and delay of extended court proceedings."  *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 78 (2d Cir. 2011).  The Court should deny the petition, reject any modification, and confirm the Award.

## FACTUAL BACKGROUND

### I.  The Parties' Agreements And The Development Of Ampyra®

Acorda and Alkermes worked together to develop and obtain FDA approval for

Ampyra®, a prescription medicine in an extended-release formulation indicated to improve walking speed in people with multiple sclerosis.  Acorda Ex. J ¶¶ U9, U22, R47, R97, R113.  Both companies developed aspects of the product and contributed portions of the New Drug Application submitted to the FDA.  Following FDA approval in 2010, Acorda has sold Ampyra® in the U.S., which was manufactured by Alkermes.  *Id.* ¶¶ U21-22, R112, R125.

The underlying arbitration arose from a dispute concerning payments owed under two agreements between Acorda and Alkermes related to Ampyra®: (1) the Amended and Restated License Agreement ("License Agreement"), and (2) the Supply Agreement (collectively, "the Agreements").  Acorda Ex. A ("Award") at 7.  Under the License Agreement, Alkermes licensed to Acorda various patents rights and know-how associated with Alkermes's extended-release formulation for Amypra® in return for Acorda paying Alkermes a royalty of 10% of the Net Sales Price of Ampyra®, plus other lump-sum payments.  Acorda Ex. B §§ 5.2, 5.3, 5.6.  The licensed rights included those to Alkermes's '938 Patent, which Acorda needed "to develop and market the pharmaceutical that eventually became known as Ampyra®."  Award at 6.  The License Agreement also contained a "no-refund" provision that restricted Acorda's ability to claw back royalties once they were paid.  Acorda Ex. B § 5.8 (providing that "[a]ll payments received by [Alkermes] shall be non-refundable ….").  Under the Supply Agreement, Alkermes agreed to "manufacture and supply at least 75% of the Ampyra product Acorda needed" in exchange for "an additional 8%" royalty.  Award at 7; *see* Acorda Ex. C §§ 7.2, 9.3.1.

In July 2018, the '938 Patent expired.  Award at 7.  Acorda continued to order Ampyra® tablets from Alkermes and continued making payments under the Agreements for nearly two years following expiry of the '938 Patent without any objection to the lawfulness of the royalties.  *Id*. at 7-8.  It was not until April 2020 that Acorda first suggested to Alkermes that the expiration

of the '938 Patent rendered the License Agreement's royalty obligation unenforceable under *Brulotte*, which holds that a patent owner cannot charge the same patent royalty post-patent expiry as pre-patent expiry, unless an exception applies.  379 U.S. at 32.  Alkermes disagreed with Acorda's position.  Two months later, in July 2020, Acorda submitted a purchase order to Alkermes that, for the first time, formally protested the payment of royalties based on *Brulotte* and stated that Acorda would continue to pay royalties under protest.  Award at 9-10, 18-19.  However, Acorda expressly limited its *Brulotte* objection in both the April letter and July purchase order (and all subsequent purchase orders) to the 10% royalty under the License Agreement.  *Id*. at 19.

Acorda continued ordering and receiving Ampyra® from Alkermes, and paying the full 10% and 8% royalties owed under the Agreements.  Award at 8.

## II.    The Arbitration Proceedings

In July 2020, Acorda instituted the underlying arbitration proceeding against Alkermes.  Award at 2.  The Tribunal was composed of three former judges:  Hon. Jose Linares (D.N.J.), Arthur Gajarsa (Fed. Cir.), and Robert Smith (N.Y. Ct. App.).  In its Demand, Acorda sought a declaration that the royalty payment was unenforceable under *Brulotte*, and that Acorda was entitled to recover all the royalties it paid under the Agreements after expiration of the '938 Patent.  *Id*. at 2-3.  Acorda also brought breach-of-contract and antitrust claims.  *Id.*

The issues raised in Acorda's Demand were thoroughly developed in the extensive arbitration proceedings.  Award at 3-5.  The parties exchanged more than 700,000 pages of documents, took thirteen fact depositions, and presented reports from nine expert witnesses, who also were deposed.  There was also substantial motions practice.  *See id*. at 3-4.  The Tribunal presided over a five-day evidentiary hearing, received voluminous proposed findings of fact, as well as pre- and post-hearing briefs, and held closing arguments that ran for more than three

hours before issuing its 23-page Award.  *See id.* at 5.

A.      **The Parties' Arguments Regarding Repayment Of Post-Expiration Royalties**

In the arbitration, Alkermes disputed whether any of Acorda's royalty obligations violated *Brulotte*.  *See* Alkermes Ex. 1 at 5-10.[3, 4]  But much of the proceeding focused on the issue of remedy, and whether, even assuming the Tribunal found a *Brulotte* violation, Acorda could obtain a refund of post-expiration royalties it had paid to Alkermes without protest.  This remedial question was briefed extensively.  Alkermes's Answer to Acorda's Demand laid out in detail why refunds were not appropriate.  Alkermes Ex. 2 ¶¶ 113-21.  The parties then addressed those issues in letter briefs submitted to the Tribunal in early 2021.  *See* Alkermes Exs. 3-4.  The refund issue was again presented to the Tribunal in pre-summary judgment letters, in the parties' cross-motions for summary judgment, and in a two-hour oral argument before the Tribunal. After the Tribunal issued its summary judgment ruling, the remaining refund-related issues were addressed again in motions *in limine*, pre- and post-hearing briefs, and at closing argument.

Alkermes presented several arguments for why Acorda could only recover the royalties it had paid under protest.  First, Alkermes argued that *Brulotte* itself does not require the refund of royalties paid after patent expiration, but provides only that an offending contract be rendered "unenforceable" prospectively.  *See, e.g.*, Alkermes Ex. 5 at 15-16 (citing Order at 3, *Zila, Inc. v. Tinnell*, No. 2:00-cv-01345 (D. Nev. Apr. 22, 2004), ECF No. 172, *rev'd and remanded on other grounds*, 502 F.3d 1014 (9th Cir. 2007), and *Tessera, Inc. v. Toshiba Corp.*, 2019 WL 5395158, at *6 (N.D. Cal. Oct. 22, 2019)).  Second, Alkermes argued that Acorda was not entitled to recover post-expiration royalties because that recovery was barred by the License Agreement's

---

[3] All Alkermes exhibits are attached to the Declaration of Louis L. Lobel, filed herewith.
[4] In particular, Alkermes argued that the License Agreement contained a step-down in royalty rate that is permissible under *Brulotte*, that Alkermes's collaboration agreement with Acorda qualified under the joint-venture exception to *Brulotte*, and that the License Agreement's royalty was permissible in any event because there was no evidence that Alkermes negotiated the royalty by using patent leverage and the ongoing royalties applied to the know-how Alkermes continued to license to Acorda.  Alkermes Ex. 1 at 5-10.

"no refund" clause, providing that "[a]ll payments received by [Alkermes] from Acorda … shall be non-refundable."  *See, e.g.*, Alkermes Ex. 5 at 8-9; Acorda Ex. B § 5.8.  Third, Alkermes argued that Acorda could not recover royalties paid without protest because that recovery was precluded by the NYVPD.  *See, e.g.*, Alkermes Ex. 5 at 17-24.  That doctrine, which originated in New York common law but was later codified, "bars recovery of payments made with full knowledge of the facts, even if made under a mistake of law."  *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 740 N.Y.S.2d 396, 397 (N.Y. App. Div. 2002), *aff'd*, 790 N.E.2d 1155 (N.Y. 2003).

In response, Acorda did not argue that *Brulotte* itself requires the repayment of post-expiration royalties, whether or not made under protest.  Instead, Acorda argued that *Brulotte* did not *preclude* such a remedy under state law, and that Acorda could recover the post-expiration royalties as a form of contract damages, restitution, and/or unjust enrichment.  *See* Alkermes Ex. 6 at 21-28; Acorda Ex. D at 20-27; Acorda Ex. F at 11-14; Alkermes Ex. 7 at 23-25.  Acorda likewise *never* argued that *Brulotte* or any other principle of federal or state law preempted or otherwise prevented the Tribunal from applying the NYVPD or no-refund clause to this case.

## B.    The Summary Judgment Decision

The Tribunal issued a summary judgment decision in April 2022.[5]  As relevant here, the Tribunal addressed the parties' cross-motions on whether Acorda could be entitled to a refund of post-expiration royalties under theories of restitution or unjust enrichment if Acorda proved a *Brulotte* violation.  SJ Op. at 11-14.  The Tribunal recognized that, under New York law, "restitution damages may be awarded where a party 'renders performance under an agreement

---

[5] The Tribunal granted Alkermes's motion for summary judgment on Acorda's breach-of-contract claim.  Acorda Ex. E at 8-11 ("SJ Op.").  It also granted summary judgment on Acorda's antitrust claims, noting their "frailty" and concluding that Acorda had failed to show that Alkermes engaged in anticompetitive conduct or to present any evidence that the royalties limited consumer choice, resulted in increased prices, reduced output, or reduced quality.  *Id*. at 17-19.

that is illegal or otherwise unenforceable for reasons of public policy.'"  *Id*. at 12 (quoting *Mazzei v. Money Stove*, 308 F.R.D. 92, 106 (S.D.N.Y. 2015), *aff'd*, 829 F.3d 260 (2d Cir. 2016)). However, the Tribunal held that the no-refund clause of the License Agreement was also operative, and thus "waive[d] liability for a refund … where no protest is made."  *Id*.  Because the undisputed facts showed that "Acorda's first real objection to the royalty rate was on April 22, 2020," and its "first payment under protest was not made until July 2020," the Tribunal concluded that "if Acorda [was] successful on its *Brulotte* claim," it could "recover unjust enrichment/restitution damages" for royalties paid after July 2020.  *Id*.  But, the Tribunal held, Acorda could not recover any royalties paid prior to that date due to Acorda's lack of protest.  *Id*. at 13 ("Any potential remedy Acorda continues to have is one pursuant to a theory of unjust enrichment/restitution for payments made under protest beginning in July 2020.").

The Tribunal also addressed the NYVPD.  Contrary to Acorda's blatant mischaracterization, the Tribunal did not "den[y] that this doctrine applied."  Acorda Br. at 7. Instead, the Tribunal acknowledged that "the NYVPD might preclude any refund remedy for payments by Acorda that were made voluntarily," but concluded that "[its] analysis [regarding the no-refund clause] renders such a refund unavailable in any event for those payments made prior to July of 2020."  SJ Op. at 12-13.  Thus, because the Tribunal had already determined that the no-refund clause barred Acorda from recovering post-expiration royalties paid without protest—the same outcome that resulted from applying the NYVPD—the Tribunal concluded that, under those circumstances, the NYVPD "does not have any implication for this Arbitration."  *Id*. at 13.

In defiance of the Tribunal's summary judgment ruling, Acorda submitted a pre-hearing brief requesting a refund of *all* royalties paid after the '938 Patent expired.  Acorda Ex. F at 2

n.1, 10-11.  In response, Alkermes requested that the Tribunal enforce its summary judgment order and preclude "any evidence or argument from Acorda seeking recovery of anything other than funds it paid under protest to Alkermes starting in July 2020."  Acorda Ex. G at 2.  After receiving the parties' competing letters, the Tribunal ruled that its summary judgment decision was "clear that Acorda's potential recovery is strictly limited to those payments made under protest as of July 2020," and that it would not "entertain evidence regarding payments made prior to July 2020."  Acorda Ex. I.  Acorda's argument (Acorda Br. at 7) that the Tribunal's summary judgment decision "did not foreclose all damages prior to July 2020" is thus once again a mischaracterization of the record.

### C.    The Arbitral Award

The Tribunal issued a reasoned Award resolving both the *Brulotte* claim and Acorda's remedy.  In the Award, the Tribunal concluded that the royalty obligations of the License Agreement following expiry of the '938 Patent violated *Brulotte* and declared the License Agreement "unenforceable."  Award at 8-17.  The Tribunal also declared the Supply Agreement unenforceable because the two agreements "operate as a single unified business agreement."  *Id.* at 17.

The Tribunal then addressed Acorda's claim for a refund of post-expiration royalties under a theory of restitution/unjust enrichment.  Award at 17-20.  The Tribunal recognized that, under the NYVPD, "payments that are 'made with full knowledge of the facts, even if made under mistake of law,' are not recoverable," *id.* at 18 (quoting *Dillon*, *supra*), and reiterated its prior conclusion that "Acorda may only recover payments it remitted after the July 2020 protest."  *Id*.  The Tribunal held that Acorda had paid the 10% royalty under the License Agreement under protest starting in July 2020, and so awarded Acorda a refund of all of those

payments, totaling $16.5 million, plus interest.  *Id.*[6]

With respect to royalties paid under the Supply Agreement, however, the Tribunal "reach[ed] the opposite conclusion."  Award at 19.  The Tribunal discussed the evidence in detail and found that the April 2020 letter "only protest[s] the royalties under the License Agreement" and "the July 2020 protest letter … explicitly only referenced the License Agreement."  *Id*. Thus, the Tribunal found it "clear that Acorda *never* formally protested the payments it made under the Supply Agreement" for the products Alkermes manufactured and delivered.  *Id.* (emphasis added).  As a result, it held that "Acorda is not entitled to recover any payments under the Supply Agreement as such recovery is barred by the NYVPD."  *Id*. at 20.  The Tribunal acknowledged its prior holding that the License Agreement and Supply Agreement "must be treated as a single agreement for purposes of the unenforceability analysis," but explained that "the same is not true here … because New York's law requires the protest to be in writing and explicit as to the rights being asserted and/or preserved."  *Id.* at 19 (citing case law).  Thus, Acorda's decision "for whatever reason … to protest only the License Agreement" precluded recovery for Supply Agreement royalties.  *Id*. at 20.[7]

Alkermes has paid the full amount owed under the Award.  Petition ¶ 40.

## ARGUMENT

Acorda's petition asks the Court to modify (and then confirm) the Award to include

---

[6] As Acorda notes, the Tribunal issued an original Award dated October 13, 2022 and a corrected Award dated November 7, 2022.  The corrected award fixed a calculation error and resulted in Acorda receiving an additional $1,595,439 in royalty refunds.

[7] Acorda now suggests that the filing of its Demand was a protest of the post-expiration royalties paid under the Supply Agreement.  Acorda Br. at 9; Petition ¶ 36.  However, Acorda never made that argument to the Tribunal (before or after the Award), nor does it actually advance that argument in its brief to this Court.  Therefore, this issue offers no basis for granting Acorda's petition.  In any event, the Tribunal's findings about Acorda's lack of protest are amply supported by the record.  Alkermes presented substantive evidence showing that Acorda never protested the 8% payment under the Supply Agreement, Acorda Ex. J ¶¶ R331-32, and Acorda submitted *no* contrary evidence.  Alkermes also thoroughly explained why Acorda's Demand could not constitute a formal protest of the 8% royalty under the Supply Agreement. *See generally* Alkermes's Ex. 8.

royalty payments it made without protest after the '938 Patent expired.  The sole theory it advances is that the Tribunal's refusal to award it such royalties was a manifest disregard of law. *E.g.*, Acorda Br. at 3.  The Court should deny the petition and confirm the Award without alteration for two independent reasons.  First, the relief Acorda requests—an order modifying the Award to include damages the Tribunal expressly excluded—is not relief authorized by any of the exclusive grounds for modification in the FAA, 9 U.S.C. § 11, which does not permit substantive review of the legal merits of an arbitral award.  Second, even if the manifest disregard standard did apply here, Acorda does not come close to satisfying the exceedingly demanding requirements for that doctrine.

## I.   Acorda Cannot Rely On The Manifest Disregard Doctrine To Modify The Award.

Acorda frames it petition as a request to "modify[]" the Award to include a category of damages that the Tribunal determined Acorda was not entitled to recover.  Petition at 1-2, 10, 17. Acorda perhaps chose to frame its petition this way to downplay the degree to which it is second-guessing the Tribunal, but this strategic decision dooms Acorda's challenge because the relief Acorda seeks is not a proper form of modification under § 11 of the FAA.  The Court can (and should) deny Acorda's petition on this ground alone.

Section 11 of the FAA lists the "exclusive grounds" for modifying an arbitration award. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008).  Under Section 11, a federal court may only "make an order modifying or correcting [an] award":

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

12

These grounds for modification do not authorize courts to alter the substance of an arbitral award, so long as the arbitrators only ruled on the issues "submitted to them."  9 U.S.C. § 11(b).  Under § 11, courts may only "'modify arbitration awards to reflect the clear intent of the arbitrator when that intent was not expressed due to error or oversight."  *Berkowitz v. Gould Paper Corp.*, 2022 WL 118232, at *4 (S.D.N.Y. Jan. 12, 2022); *see LLT Int'l Inc. v. MCI Telecomms. Corp.*, 69 F. Supp. 2d 510, 517 (S.D.N.Y. 1999) ("The word 'miscalculation,' … limits this ground to 'inadvertence or an error caused by oversight.'"); 9 U.S.C. § 11 (modification is allowed to "effect the intent" of the award).  Thus, by its terms, § 11 authorizes courts to modify arbitral awards that are "imperfect in matter of form *not* affecting the merits of the controversy," 9 U.S.C. § 11(c) (emphasis added), and therefore "does not license the district court to substitute its judgment for that of the arbitrators."  *TD Ameritrade, Inc. v. Kelley*, 2016 WL 5660399, at *3 (S.D.N.Y. Sept. 30, 2016); *see Diapulse Corp.*, 626 F.2d at 1110 (same).[8]

Acorda's petition does not purport to base its modification request on any of the exclusive grounds in § 11.  Moreover, the remedy the petition seeks—the inclusion of damages the Tribunal expressly withheld—is plainly incompatible with § 11's exclusive grounds for modification:  the petition asks the Court to reject the "clear intent of the arbitrator[s]," *Berkowitz*, 2022 WL 118232, at *4, to exclude post-expiration royalties made without protest from the damages award, and to "substitute [the Court's] judgment for that of the arbitrators," *Diapulse Corp.*, 626 F.2d at 1110.  Courts in this district have refused to allow parties to achieve this type of substantive alteration to an arbitral award under the guise of "modification."  *See Berkowitz*, 2022 WL 118232, at *2 n.5, *5 (rejecting such "gamesmanship" as "inappropriate" and concluding that "court[s] do[] not have the authority to award categories of damages through

---

[8] Indeed, the only appropriate modification was already made by the Tribunal, when it corrected the original Award to add approximately $1.6 million that it had mistakenly omitted.

a modification of the arbitration award"); *LLT Int'l Inc.*, 69 F. Supp. 2d at 517 (holding that request to modify award to include "unpaid invoices, attorneys fees and arbitration expenses" "falls outside the Court's limited power to modify under Section 11").  This Court should do the same.

Rather than invoking any of the exclusive grounds for modification under § 11, Acorda relies solely on the manifest disregard doctrine.  But that doctrine is a judicial gloss on § 10, not § 11.  *See, e.g.*, *Hall St. Assocs., L.L.C.*, 552 U.S. at 584 (holding that remedies under § 10 and § 11 are exclusive, but only discussing "manifest disregard" as a gloss on § 10); *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 94-95 (2d Cir. 2008) (concluding after *Hall Street Associates* that the manifest disregard standard existed only as a ground for vacatur under § 10), *rev'd on other grounds*, 559 U.S. 662 (2010); *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 340 (2d Cir. 2010) (stating that the Second Circuit "made clear" in *Stolt-Nielsen* that manifest disregard is "'a judicial gloss on the specific grounds for vacatur' of arbitration awards under 9 U.S.C. § 10").[9]  Indeed, it is hard to imagine how a doctrine aimed at correcting an arbitrator's willful disregard of law (*see* pp. 15-16, *infra*) could possibly be derived from the grounds for modification under § 11—which are directed toward correcting non-substantive errors in an award.  For that reason, courts in this District have held that "'[m]anifest disregard of the law,' … will simply never justify a request to modify an arbitration award, only as grounds to vacate."  *Josephthal & Co. v. Cruttenden Roth Inc.*, 177 F. Supp. 2d 232, 239 (S.D.N.Y. 2001);

---

[9] The one Second Circuit case Acorda cites to support its claim that manifest disregard applies to modification requests under § 11—*Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197 (2d Cir. 1998)—reviewed the denial of a request to vacate an award, *id*. at 198, 200, and the Court later identified § 10 as providing the "relevant statutory language" for its decision, *id*. at 201 & n.3.  Moreover, *Halligan* preceded *Hall Street Associates*—which rejected any freestanding manifest disregard doctrine—and the subsequent Second Circuit decisions recognizing that manifest disregard is a judicial gloss on § 10 of the FAA.  Acorda also cites *Arbordale Hedge Investments, Inc. v. Clinton Group Inc.*, 1999 WL 1000939 (S.D.N.Y. Nov. 4, 1999), but that decision's application of the manifest disregard doctrine as an independent ground for review of arbitral awards, *id*. at *2 n.4, was overruled by *Hall Street Associates*.  And while Acorda characterizes *Berkowitz* as applying the manifest disregard standard to a modification request, the court there applied that standard only when considering vacatur.  2022 WL 118232, at *4-5.

14

*see also Grain v. Trinity Health, Mercy Health Servs. Inc.*, 551 F.3d 374, 380 (6th Cir. 2008) ("[W]e have used the 'manifest disregard' standard only to vacate arbitration awards, not to modify them.").

The Petition does not assert any of the exclusive grounds for modification under § 11 of the FAA and the ground it does rely on is not cognizable under § 11.  The Court should deny the Petition on this basis alone.

## II.    Acorda Fails To Meet The Exceedingly High Bar For Manifest Disregard.

Even if the manifest disregard of law standard applied here, the petition must still be denied because Acorda has failed to satisfy that doctrine's exacting requirements.

A litigant challenging an arbitral award "based on alleged manifest disregard of the law bears a heavy burden, as awards are vacated on [this] ground[] … only in those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent." *Smarter Tools Inc. v. Chongqing SENCI Import & Export Trade Co.*, 57 F.4th 372, 383 (2d Cir. 2023). Thus, a court's "review under the doctrine of manifest disregard is 'severely limited,'" *Duferco Int'l Steel Trading*, 333 F.3d at 389, and "'highly deferential' to the arbitrators"—rendering "relief on such a claim … 'rare,'" *STMicroelectronics, N.V.*, 648 F.3d at 78.

A court may not interfere with an arbitral award unless three factors are satisfied.  ***First***, there must be law that is "clear, and in fact explicitly applicable to the matter before the arbitrators." *Duferco Int'l Steel Trading*, 333 F.3d at 389-90.  An arbitrator "cannot be said to disregard a law that is unclear or not clearly applicable," and so "misapplication of an ambiguous law does not constitute manifest disregard." *Id.*  The law is not "well-defined" if "the cases that establish a particular legal principle are factually distinguishable in a material respect." *Westerbeke Corp.*, 304 F.3d at 216.

***Second***, "once it is determined that the law is clear and plainly applicable," the court

must "find that the law was in fact improperly applied, leading to an erroneous outcome." *Duferco Int'l Steel Trading*, 333 F.3d at 390. "[A]n arbitrator's refusal or neglect to apply a governing legal principle 'clearly means more than error or misunderstanding with respect to the law'"; "[a] federal court cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call on the law." *Wallace*, 378 F.3d at 189-90; *see also STMicroelectronics, N.V.*, 648 F.3d at 78 (similar). Rather, the manifest disregard standard is satisfied only "in the most egregious instances of misapplication of legal principles," and so a court must enforce an arbitral award "despite [its] disagreement with it on the merits, if there is a *barely colorable justification* for the outcome reached." *Wallace*, 378 F.3d at 190 (citation omitted).

*Third*, the arbitrators "must have known of [the law's] existence, and its applicability to the problem before [them]." *Duferco Int'l Steel Trading*, 333 F.3d at 390. In "determining an arbitrator's awareness of the law," the Court "impute[s] only knowledge of governing law identified by the parties to the arbitration." *Id*. The manifest disregard standard is satisfied only if "the arbitrators understood but chose to disregard a clearly defined law or legal principle applicable to the case before them," *id*. at 385, which was "brought [to their] attention in a way that assures that [they] knew its controlling nature," *Goldman v. Architectural Iron Co.*, 306 F.3d 1214, 1216 (2d Cir. 2002); *see also STMicroelectronics, N.V.*, 648 F.3d at 78 (manifest disregard satisfied when "the panel intentionally defied the law").

Here, Acorda argues that the Tribunal manifestly disregarded federal and state law in applying the NYVPD to preclude Acorda from recovering post-expiration royalties it paid without protest. But Acorda identifies no error at all, much less a deliberate refusal to apply clearly controlling authority. Instead, Acorda relies repeatedly on arguments and case law that it

did not raise to the Tribunal, and which are inapposite in any event.

    A.    ***Brulotte* Does Not Dictate Restitution Damages Or Any Other Backward-Looking Remedy.**

The Tribunal concluded that the payment provisions in the Agreements violated *Brulotte*'s prohibition on charging the same royalty for use of a patent after it has expired and so deemed the Agreements "unenforceable."  Award at 17.  In its petition, Acorda tries to rewrite *Brulotte* to also require Alkermes to refund all of the payments Acorda made after the '938 Patent expired—including those payments made without protest.  *E.g.*, Acorda Br. at 14-15.  The Tribunal's refusal to extend *Brulotte* in the novel way Acorda proposes was not error, much less a manifest disregard of law.  Indeed, courts have repeatedly understood *Brulotte* in the same manner as the Tribunal here, whereas Acorda fails to cite *a single case* in support of its view.

As Alkermes consistently argued to the Tribunal, *Brulotte* and its progeny do not recognize a retroactive remedy, such as a refund of royalties.  Instead, *Brulotte* and *Kimble v. Marvel Ent., LLC*, 576 U.S. 446 (2015), simply held that the offending agreements must be declared "unenforceable," without suggesting that the prevailing party was entitled to recover royalties already paid.  *See, e.g.*, *Brulotte*, 379 U.S. at 34 (holding that "an attempt to project [a patent monopoly] into another term by continuation of the licensing agreement is unenforceable"); *Kimble*, 576 U.S. at 453 (describing *Brulotte* as "making contract provisions unenforceable").  Taking these cases at their word, the few courts that have addressed this issue have refused to award a refund of post-expiration royalties.  *See Zila, Inc. v. Tinnell*, *supra*, at 3 (dismissing a claim for refund of royalties under *Brulotte* in part because "a party has no claim in restitution for performance that he has rendered … in return for a promise that is unenforceable on grounds of public policy"); *Tessera, Inc.*, 2019 WL 5395158, at *6 (concluding that *Brulotte* does not require a refund of royalties but "would only exclude [patentee's] affirmative claim for

17

unpaid royalties due after expiration of a patent.").

This limitation is not unique to *Brulotte*.  As Alkermes argued, the general rule is that courts finding a patent unenforceable—for example, for inequitable conduct—do not require a refund of royalties.  *See* Alkermes Ex. 5 at 16 (citing *Levenger Co. v. Feldman*, 516 F. Supp. 2d 1272, 1290 (S.D. Fla. 2007)).  The same principle underlies other contexts where a contract is rendered unenforceable on public policy grounds.  *See* Restatement (Second) of Contracts § 197 (1981) (courts "will [not] aid the promisor by allowing a claim in restitution for performance … rendered under the unenforceable contract" but will "simply leave both parties as it finds them").

For its part, Acorda has not cited any case law to this Court holding that *Brulotte* itself requires a refund of post-expiration royalties.  Instead, all of the decisions Acorda cites applying *Brulotte* (Acorda Br. at 13-14) merely deemed the offending agreements unenforceable without any reference to supposed refund rights.  *See Veltman v. Norton Simon, Inc.*, 425 F. Supp. 774, 775-76 (S.D.N.Y. 1977) (refusing to enforce royalty that violated *Brulotte*); *Sanford Redmond, Inc. v. Mid-Am. Dairymen, Inc.*, 1992 WL 57090, at *6-7 (S.D.N.Y. Mar. 4, 1992) (holding agreement "unenforceable"), *aff'd*, 993 F.2d 1534 (2d Cir. 1993).[10]

Acorda has thus failed to identify any authority—much less case law that is "clear, and in fact explicitly applicable"—to support its position.  *Duferco Int'l Steel Trading*, 333 F.3d at 390.  That alone dooms its ability to show that the Tribunal manifestly disregarded the law.  The Award, moreover, rests on ample authority that far eclipses the "barely colorable" threshold.  That, too, dooms the petition.  *Id.* at 391.

### B.   Acorda Identifies No Manifest Disregard In The Tribunal's Decision To Apply The NYVPD To Limit Acorda's Recovery.

Because *Brulotte* does not itself support (much less require) a refund of post-expiration

---

[10] *Leesona Corp. v. Varta Batteries, Inc.*, 522 F. Supp. 1304, 1342 (S.D.N.Y. 1981), which Acorda also cites, found no *Brulotte* violation.

royalties, Acorda resorts to entirely new arguments never presented during the arbitration proceedings in an effort to churn up a theory for how the Tribunal manifestly disregarded the law.  Notably, Acorda does not argue that the Tribunal misapplied the NYVPD on its own terms, nor does Acorda argue that any of the Tribunal's factual determinations (such as its finding that Acorda never protested the payments owed under the Supply Agreement, p. 11, *supra*) were wrong.[11]  Instead, Acorda contends that the Tribunal's application of the NYVPD was a manifest disregard of law because the NYVPD is (a) preempted by federal patent law; (b) displaced by New York restitution law; and (c) inconsistent with New York policy against the enforcement of illegal contracts.  Acorda Br. at 17-23.  These arguments—two of which were never even presented to the Tribunal—are meritless.  They certainly fall far short of showing a manifest disregard of law.

### 1.   Acorda's New Preemption Argument Does Not Show A Manifest Disregard Of Law.

Acorda first contends that the Tribunal's application of the NYVPD in the context of a *Brulotte* violation "provide[s] 'patent-like protection to the subject matter of the expired patent.'"  Acorda Br. at 19.  This new preemption argument fails right out of the gate because Acorda never presented it to the Tribunal.  *See Duferco Int'l Steel Trading*, 333 F.3d at 390 (arbitrators "must have known of [the law's] existence" and a court "impute[s] only knowledge of governing law identified by the parties to the arbitration.").  In its arbitration briefing, Acorda relied exclusively on state law, arguing that it could recover post-expiration royalties made without protest under New York law.  *See* Alkermes Ex. 6 at 4, 21-28; Acorda Ex. D at 17-20.  Acorda then argued that, as a matter of state law, recovery would be consistent with the License Agreement's no-refund provision and the NYVPD.  *See* Alkermes Ex. 6 at 26-28; Acorda Ex. D

---

[11] Nor could it have:  "[T]he Second Circuit does not recognize manifest disregard of the evidence as proper ground for vacating"—much less, modifying—"an arbitrator's award."  *Wallace*, 378 F.3d at 193.

at 20-27.  Not once did Acorda advance the very different federal-law argument that it now makes to this Court—*i.e.*, that the NYVPD was preempted by federal patent law.  Indeed, Acorda never even cited *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141 (1989), to the Tribunal—the primary decision it relies on for this preemption argument.  The Tribunal's application of the NYVPD cannot possibly have been a manifest disregard of law because Acorda never presented the Tribunal with the legal argument it now inexplicably suggests the Tribunal ignored.  *See Wallace*, 378 F.3d at 197 (finding no manifest disregard of law of punitive damages when "the Panel had no argument before it to the effect that punitive damages could not be awarded").

In any event, Acorda fails to show any error in the Tribunal's application of the NYVPD.  Acorda hinges its new preemption argument on *Bonito Boats*, which addressed whether a Florida law prohibiting the use of certain technology to copy unpatented boat hulls was preempted by federal patent law.  489 U.S. at 144-45.  The Court held that it was preempted because the law "substantially interfere[d] with" the public's ability to utilize "an unpatented utilitarian or design concept," thereby creating "patent-like protection [for] intellectual creations which would otherwise remain unprotected as a matter of federal law."  *Id*. at 156-57.  The Court made clear, however, that not every state law that touches upon "the subject matter of the federal patent laws … impermissibly interfere[s] with the federal patent scheme."  *Id*. at 165 (discussing state unfair competition and trade secret laws as examples).  The Florida law crossed the line because it "endow[ed] the original boat hull manufacturer with rights against the world, similar in scope and operation to the rights accorded a federal patentee."  *Id*. at 158.

*Bonito Boats* is nothing like this case.  The Tribunal's application of the NYVPD did not "endow[]" the subject-matter of the '938 Patent with "rights against the world" or "substantially

interfere with" the public's ability to utilize the extended-release formulation.  489 U.S. at 156-57, 158.  In fact, the exact opposite is true:  the Tribunal held that the Agreements were unenforceable, thus prohibiting Alkermes from recovering future royalties for a subject that no longer enjoys patent protection.  Award at 17.  And once the '938 Patent expired, it posed no barrier to the public freely utilizing the extended-release formulation like any other unpatented subject—which is exactly what happened.  *See* SJ Op. at 17 (noting that "after the expiration of the '938 Patent, generics began entering the market").  *Bonito Boats* does not suggest that state-law limits on backward looking remedies for a *Brulotte* violation somehow create ongoing "patent-like protection[s]" under state law.  489 U.S. at 156-57.  As explained above, *Brulotte* itself does not require or even support providing refunds for post-expiration royalty payments.  A state policy that merely limits when refunds are available thus cannot possibly conflict with federal patent law, and it is exceptionally misleading for Acorda to characterize the Tribunal's decision as somehow "validat[ing] Alkermes's collection of royalties after the patent expired." Acorda Br. at 18.  A limit on retrospective recovery is not remotely equivalent to validation or enforcement.  If it were otherwise, states would be disabled from even applying a limitations period or laches to limit recovery, which is absurd.  Unsurprisingly then, Acorda does not put forward a single decision that embraces its federal preemption theory.[12]

At an absolute minimum, Acorda has not shown that the Tribunal violated a pre-existing rule of preemption law that is "clear, and in fact explicitly applicable to the matter before the arbitrators."  *Duferco Int'l Steel Trading*, 333 F.3d at 390.  As the preceding discussion shows,

---

[12] The other cases Acorda cites (Acorda Br. at 17-18) simply recognize the rule articulated in *Bonito Boats*, but none of those cases addresses a situation remotely comparable to this one.  *See, e.g., Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225 (1964) (unfair competition law); *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234 (1964) (same); *Capri Sun GMBH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 185-87 (S.D.N.Y. 2022) (granting summary judgment on state dilution claim premised on theory that competitor's product copied the plaintiff's unpatented product); *Medisim Ltd. v. BestMed LLC*, 959 F. Supp. 2d 396, 420 (S.D.N.Y. 2013) (overturning jury verdict awarding unjust enrichment for invalid patent), *aff'd in part, vacated in part, remanded by* 758 F.3d 1352 (Fed. Cir. 2014).

*Bonito Boats* says nothing about state-law limits on retrospective remedies.  Where, as here, the relevant cases "are factually distinguishable in a material respect," "then that principle is not 'well-defined, explicit, and clearly applicable.'"  *Westerbeke Corp*., 304 F.3d at 216.

### 2.    The Tribunal Did Not Manifestly Disregard State Restitution Law By Applying The NYVPD.

Acorda next suggests (in a single sentence) that the Tribunal's application of the NYVPD disregarded New York law of restitution.  *See* Acorda Br. at 14 & n.4.  Once again, Acorda shows no error, much less a manifest disregard of law.

Acorda identifies no case so much as hinting at the possibility that state restitution law displaces the NYVPD.  In fact, neither of the two cases it cites—*Mazzei*, 308 F.R.D. 92 and *Norman v. Salomon Smith Barney Inc.*, 350 F. Supp. 2d 382, 389 (S.D.N.Y. 2004)—addresses the NYVPD at all, much less suggests that it cannot be applied to bar restitution.  That should come as no surprise, because the entire point of the NYVPD is to bar recovery that otherwise might be owed, including recovery under a theory of restitution.  *See, e.g.*, *Dillon*, 740 N.Y.S.2d at 397-98 (affirming dismissal of complaint seeking, *inter alia*, restitution).  After all, restitution is not a mandatory remedy; instead, under New York law "[t]he determination whether to award restitution is within the discretion of the trial court."  *Gaisi v. Gaisi*, 968 N.Y.S.2d 902, 902-03 (N.Y. App. Div. 2013); *see Dinizio & Cook, Inc. v. Duck Creek Marina at Three Mile Harbor, Ltd.*, 821 N.Y.S.2d 649, 650 (N.Y. App. Div. 2006) (same).  Even the federal case law Acorda cites acknowledges that "[t]he decision whether to award restitution damages lies within the discretion of the trial court."  *Mazzei*, 308 F.R.D. at 105 (citation omitted).

Unable to challenge any legal aspect of the Tribunal's ruling, Acorda resorts to a baseless attack on the integrity of the three distinguished former judges on the arbitration panel.  Acorda accuses the Tribunal of having "predetermined" to limit Acorda's recovery.  Acorda Br. at 16.

But not only does Acorda fail to support that serious charge, it relies on a blatant distortion of the record, asserting that the Tribunal "squarely rejected" Alkermes's NYVPD defense in its summary judgment opinion but then "resurrected" the doctrine after the hearing. *Id.* As explained above, that argument mischaracterizes the record to a stunning degree. *See* p. 9, *supra*. The Tribunal did not ever "squarely reject[]" the applicability of the NYVPD defense here. Rather, the Tribunal merely relied on an alternative ground at summary judgment, concluding that the License Agreement's "no-refund" clause barred Acorda's recovery of royalties it paid without protest. SJ Op. at 11-13. Application of the NYVPD supports the same outcome, and the Tribunal's decision to invoke that ground in the Award does not remotely suggest that it manifestly disregarded the law.

### 3. The Tribunal's Application Of The NYVPD Did Not Manifestly Disregard Any State Policy Against Enforcing Illegal Contracts.

Finally, Acorda argues that the Tribunal's application of the NYVPD manifestly disregarded a New York policy prohibiting courts from enforcing illegal contracts. Acorda Br. at 19-23. Once again, Acorda has failed to show any error by the Tribunal and certainly has not established a manifest disregard of the law.

First, as with Acorda's preemption argument, this argument fails because Acorda never presented it to the Tribunal. That omission, by definition, precludes Acorda from showing a manifest disregard of law. *See* pp. 16, 19-20, *supra*.[13]

Second, Acorda's argument once again conflates distinct legal issues and

---

[13] Acorda insinuates that it made this argument in its letter to the Tribunal contesting Alkermes's effort to enforce the summary judgment decision. *See* Acorda Br. at 7 (citing Acorda Ex. H). But that letter simply recognized that the Tribunal had not resolved the *Brulotte* issue in its summary judgment decision, and then states that the Tribunal had "not yet heard … the public policy prohibiting the enforcement of unlawful and illegal contracts," and that "the Panel will need to make a further decision of whether or not it can allow the unlawful payments made after patent expiry to stand in violation of public policy." Acorda Ex. H at 2-3. That cursory language (citing no case law) does not fairly present the argument Acorda now makes, and certainly did not bring the argument "to the arbitrator[s'] attention in a way that assures that the arbitrator[s] knew its [supposedly] controlling nature." *Goldman*, 306 F.3d at 1216.

mischaracterizes the Award.  The Tribunal did not disregard (manifestly or otherwise) a New York policy against enforcing illegal contracts because the Tribunal *did not enforce* the License Agreement or the Supply Agreement.  To the contrary, the Tribunal deemed both Agreements *"unenforceable."*  Award at 17 (emphasis added).  As noted above, the mere limitation of retrospective remedies is not equivalent to *enforcing* an invalid agreement.  *See* pp. 20-21, *supra*. Acorda's effort (Acorda Br. at 23) to twist the refusal to grant a remedy into the rubric of "enforcement" by arguing that Alkermes retained royalties "through [the] arbitration award" is pure wordplay.

Thus, although Acorda spills considerable ink string-citing case law mentioning the policy against enforcing illegal contracts, none of the cases is relevant to its argument.  Rather, each of them—whether involving a judicial decision[14] or review of an arbitral decision[15]— simply refused to enforce the illegal contract, while "leav[ing] the parties where they are[.]" *Spivak*, 211 N.E.2d at 331.[16]  Acorda has thus not identified any error by the Tribunal.

\*     \*     \*

The issues raised by Acorda's petition were the subject of an extensive, time-consuming, and expensive arbitration overseen by three distinguished retired judges.  For Acorda to ask this Court to overturn the Tribunal's considered judgment under the guise of "modification" is a misuse of the judicial process.  The Court does not have authority to "modify" the substance of

---

[14] *Szerdahelyi v. Harris*, 490 N.E.2d 517, 518-19 (N.Y. 1986); *Bonilla v. Rotter*, 829 N.Y.S.2d 52, 53 (N.Y. App. Div. 2007); *Surgical Design Corp. v. Correa*, 736 N.Y.S.2d 392, 393 (N.Y. App. Div. 2002); *Spivak v. Sachs*, 211 N.E.2d 329, 329-30 (N.Y. 1965).

[15] *In re Crosstown Operating Corp.*, 595 N.Y.S.2d 445, 445 (N.Y. App. Div. 1993); *Durst v. Abrash*, 253 N.Y.S.2d 351, 355-56 (N.Y. App. Div. 1964); *Jackson Purchase Rural Elec. Co. Coop. Ass'n v. Loc. Union 816, Int'l Brotherhood of Elec. Workers*, 646 F.2d 264, 266, 268 (6th Cir. 1981); *Botany Indus., Inc. v. N.Y. Joint Bd., Amalgamated Clothing Workers of Am.*, 375 F. Supp. 485, 499 (S.D.N.Y. 1974), *judgment vacated sub nom. N.Y. Joint Bd., Amalgamated Clothing Workers of Am.*, 506 F.2d 1246 (2d Cir. 1974).

[16] Two of Acorda's cases address the general rule against enforcing illegal contracts only in passing.  *See Schlessinger v. Valspar Corp.*, 686 F.3d 81, 85-88 (2d Cir. 2012); *Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*, 2022 WL 3536128, at \*6 (S.D.N.Y. Aug. 17, 2022).

the Award, and Acorda does not come close to satisfying the manifest disregard standard either.

Indeed, the handful of cases that Acorda cites in which arbitral decisions were vacated under a manifest disregard standard only underscores how inappropriate it is for Acorda to invoke that standard here.  This is not a case in which the Tribunal "expressly disregarded" controlling precedent in favor of out-of-jurisdiction authority, *N.Y. Tel. Co. v. Commc'ns Workers of Am. Local 1100*, 256 F.3d 89, 91-92 (2d Cir. 2011), refused to apply "well-defined and explicit" state law, *Hardy v. Walsh Manning Sec., L.L.C.*, 341 F.3d 126, 130 (2d Cir. 2003), or ignored the law entirely in order to simply "impose its own view of sound policy," *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 & n.3 (2010).  Rather, the Tribunal carefully evaluated the factual record and legal arguments presented by the parties and delivered a thorough written decision, agreeing with Acorda in some respects but concluding that it had no right under New York law to a refund of the amounts paid voluntarily without protest.  Despite its rhetoric, Acorda has not put forward a *single* on-point decision that supports its "full refund" position, even as it strains to invent new lines of argument that it never presented to the Tribunal.  It is thus a considerable understatement to conclude that this is not one of the "exceedingly rare" cases involving an "egregious impropriety on the part of the arbitrator" that can satisfy the manifest disregard standard.  *Smarter Tools Inc.*, 57 F.4th at 383.  Indeed, the only impropriety here is on the part of Acorda, which has required Alkermes and this Court to expend resources responding to a legally unsupported petition that brazenly mischaracterizes the record.[17]

## CONCLUSION

The Court should deny the petition, reject any modification, and confirm the Award.

---

[17] Acorda concludes its petition with a request for the "costs of this proceeding."  Petition at 18.  In fact, it would be appropriate to order Acorda to pay costs to Alkermes.  Alkermes promptly complied with the Award by paying the full amount awarded by the Tribunal.  *See* p. 11, *supra*.  Yet Alkermes has now been required to expend additional time and resources to defend against Acorda's meritless and procedurally improper attack on the Award.

Respectfully submitted,                    *s/ Brian T. Burgess*
                                           Brian T. Burgess
                                           GOODWIN PROCTER LLP
                                           1900 N Street, NW
                                           Washington, DC 20036
                                           (202) 346-4000
                                           BBurgess@goodwinlaw.com

                                           Christopher T. Holding *(pro hac vice forthcoming)*
                                           Louis L. Lobel *(pro hac vice)*
                                           GOODWIN PROCTER LLP
                                           100 Northern Avenue
                                           Boston, MA 02210
                                           (617) 570-1947
                                           (617) 570-8276
                                           CHolding@goodwinlaw.com
                                           LLobel@goodwinlaw.com

                                           Jeffrey A. Simes
                                           GOODWIN PROCTER LLP
                                           The New York Times Building
                                           620 Eighth Avenue
                                           New York, NY 10018
                                           (212) 813-8879
                                           JSimes@goodwinlaw.com

                                           David Hille
                                           WHITE & CASE LLP
                                           1221 Avenue of the Americas
                                           New York, NY 10020-1095
                                           (212) 819-8200
                                           dhille@whitecase.com

                                           *Attorneys for Respondent Alkermes PLC*

Dated:  February 8, 2023