# EXHIBIT 5

**AMERICAN ARBITRATION ASSOCIATION**
**NEW YORK, NEW YORK**

| | | |
|---|---|---|
| ACORDA THERAPEUTICS, INC., | ) | |
| | ) | |
| Claimant, | ) | |
| | ) | |
| v. | ) | Case No. 01-20-0010-8421 |
| | ) | |
| ALKERMES PLC, | ) | **CONFIDENTIAL** |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**ALKERMES'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT ON ACORDA'S CLAIMS III, IV, V, AND VIII**

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................. 1

MATERIAL UNDISPUTED FACTS ..................................................................... 3

    A.    The License Agreement and Its Negotiation History .............................. 3

    B.    Sale of Ampyra® and Generic Versions of Ampyra® ........................... 3

    C.    Acorda contacts Alkermes regarding its royalty obligations ................ 5

ARGUMENT ......................................................................................................... 7

I.    ACORDA IS NOT ENTITLED TO A REFUND OF PAYMENTS MADE UNDER ARTICLE 5 OF THE LICENSE AGREEMENT AS A MATTER OF LAW ................................................................................................................ 8

    A.    The Express Terms of the License Agreement Bar Refunds ................. 8

        1.    Article 5.9.5 is an audit provision and does not allow Acorda to challenge payments based on a legal question ........................... 9

        2.    Article 5.9.7 does not apply ................................................... 11

        3.    Article 5.8 is a limitation on damages provision for damages claims premised on the refund or other recovery of payments made under Article 5 of the License Agreement ................................ 14

    B.    *Brulotte* Does Not Permit Refunds As A Remedy ............................ 15

        1.    Refunds are not a remedy for a *Brulotte* violation .................... 15

        2.    *Brulotte* does not render the no-refund clause unenforceable ................ 16

    C.    New York's Voluntary Payment Doctrine Bars Any Refund ............................ 17

        1.    Acorda did not act under a mistake of fact ............................... 18

        2.    If Acorda operated under a mistake of law, it was not induced by Alkermes ................................................................................... 19

        3.    There was no mutual mistake of fact justifying a refund ........................ 20

        4.    Acorda did not make payments under duress ......................... 20

        5.    Acorda's payments were not made under protest until July 2020 .......... 22

II.    ACORDA HAS NO VIABLE CLAIMS FOR BREACH OF THE LICENSE AGREEMENT, THE IMPLIED COVENANT, OR UNJUST ENRICHMENT AS A MATTER OF LAW ................................................................................... 24

    A.    Acorda's claim for breach of the License Agreement fails as a matter of law ................................................................................................... 24

    B.    Acorda's claim for breach of the implied covenant of good faith and fair dealing fails as a matter of law ......................................................... 27

## TABLE OF CONTENTS
(continued)

Page

C.   Acorda's claim for unjust enrichment fails as a matter of law ............................ 28

D.   Acorda's claim for declaratory relief as to return of overpayment fails as a
matter of law .................................................................................................................. 28

CONCLUSION ............................................................................................................................ 30

## TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*159 MP Corp. v. Redbridge Bedford, LLC*,
  33 N.Y.3d 353 (2019) ...................................................................................10

*Acorda Therapeutics, Inc. v. Roxane Laboratories, Inc.*,
  2017 WL 1199767 (D. Del. Mar. 31, 2017) .................................................4

*Acorda Therapeutics, Inc. v. Roxane Laboratories, Inc.*,
  903 F.3d 1310 (Fed. Cir. 2018).......................................................................4

*Adirondack Cookie Co. Inc. v. Monaco Baking Co.*,
  871 F. Supp. 2d 86 (N.D.N.Y. 2012) ...........................................................29

*AIU N. Am., Inc. v. Caisse Franco Neerlandaise de Cautionnements*,
  72 F. Supp. 2d 350 (S.D.N.Y. 1999)...............................................................7

*Ambrose v. City of White Plains*,
  2018 WL 1635498 (S.D.N.Y. Apr. 2, 2018), *aff'd sub nom. Barr v. City of
  White Plains*, 779 F. App'x 765 (2d Cir. 2019).....................................12, 13

*Ascentium Capital, LLC v. Automotive Fleet Leasing Co.*,
  109 N.Y.S.3d 401 (App. Div. 2019).............................................................21

*Bank of N.Y. Mellon v. WMC Mortgage, LLC*,
  22 N.Y.S.3d 3 (App. Div. 2015)....................................................................10

*Beltway 7 & Props., Ltd. v. Blackrock Realty Advisers, Inc.*,
  90 N.Y.S.3d 3 (App. Div. 2018)....................................................................22

*Beltway 7 Props., Ltd. v. Blackrock Realty Advisers, Inc.*,
  2017 WL 4155222 (N.Y. Sup. Ct. Sept. 19, 2017).....................................23

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*,
  448 F.3d 573 (2d Cir. 2006)...........................................................................28

*Brulotte v. Thys. Co..*,
  379 U.S. 29 (1964)............................................................................... *passim*

*Bradley v. Adv. Tech. Servs.*,
  2007 WL 1453111 (W.D.N.C. May 17, 2007) .............................................26

*China Privatization Fund (Del), L.P. v. Galaxy Entm't Grp. Ltd.*,
  945 N.Y.S.2d 659 (App. Div. 2012) ...............................................................8

*Citicorp N. Am., Inc. v. Fifth Ave. 58/59 Acquisition Co., LLC*,
   895 N.Y.S.2d 39 (App. Div. 2010) ........................................................................18, 20

*Commercial Lubricants, LLC v. Safety-Kleen Sys., Inc.*,
   2017 WL 3432073 (E.D.N.Y. Aug. 8, 2017) ....................................................................29

*Dillon v. U-A Columbia Cablevision of Westchester Inc.*,
   740 N.Y.S.2d 396 (App. Div. 2002), *aff'd*, 790 N.E.2d 1155 (N.Y. 2003) ...........................17

*Distinctive Ventures LLC v. Cooper Advisory Servs., Inc.*,
   880 N.Y.S.2d 872 (Sup. Ct. 2009) ..................................................................................8

*DRMAK Realty LLC v. Progressive Credit Union*,
   18 N.Y.S.3d 618 (App. Div. 2015) ................................................................................22

*Eighty Eight Bleecker Co., LLC v. 88 Bleecker St. Owners, Inc.*,
   824 N.Y.S.2d 237 (App. Div. 2006) ..............................................................................18

*Eternity Glob. Master Fund v. Morgan Guar. Trust Co.*,
   375 F.3d 168 (2d Cir. 2004) .........................................................................................25

*Fesseha v. TD Waterhouse Inv. Servs., Inc.*,
   761 N.Y.S.2d 22 (App. Div. 2003) ................................................................................27

*Finnegan v. Spiegel Farms., Inc.*,
   234 Cal. App. 2d 408 (App. Ct. 1965) ...........................................................................16

*Freund v. Washington Square Press, Inc.*,
   34 N.Y.2d 379 (1974) ..................................................................................................25

*Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*,
   442 F. Supp. 3d 576 (S.D.N.Y. 2020) ............................................................................29

*Highmount Olympic Fund, LLC v. PIPE Equity Partners, LLC*,
   940 N.Y.S.2d 49 (App. Div. 2012) ................................................................................20

*IKB Deutsche Industriebank AG v. Credit Suisse Sec. (USA) LLC*,
   135 N.Y.S.3d 396 (App. Div. 2020) ..............................................................................20

*Kenneth D. Laub & Co., Inc. v. Domansky*,
   568 N.Y.S.2d 601 (1991) .............................................................................................22

*Kimble v. Marvel Entertainment, LLC*
   576 U.S. 446, 454 (2015) .............................................................................................14

*Lavin v. Town of East Greenbush*,
   843 N.Y.S.2d 484 (Sup. Ct. 2007) ................................................................................19

*Lawrence v. Cohn*,
    197 F. Supp. 2d 16 (S.D.N.Y. 2002), *aff'd*, 325 F.3d 141 (2d Cir. 2003) ...............................7

*Levenger Co. v. Feldman*,
    516 F. Supp. 2d 1272 (S.D. Fla. 2007) .................................................................................16

*Marine Midland Bank, N.A. v. Yoruk*,
    662 N.Y.S.2d 957 (App. Div. 1997) ....................................................................................27

*Murphy v. Am. Home Prods. Corp.*,
    461 N.Y.S.2d 232 (1983) ......................................................................................................27

*Nielsen Co.(U.S.), LLC v. Success Sys., Inc.*,
    112 F. Supp. 3d 83 (S.D.N.Y. 2015).....................................................................................25

*Overbay LLC v. Berkman, Henoch, Peterson, Peddy & Fenchel, P.C.*,
    128 N.Y.S.3d 56 (App. Div. 2020) ..................................................................................21, 22

*P.K. Dev., Inc. v. Elvem Dev. Corp.*,
    640 N.Y.S.2d 558 (App. Div. 1996) .....................................................................................20

*Paraco Gas Corp. v. Travelers Cas. & Sur. Co. of Am.*,
    51 F. Supp. 3d 379 (S.D.N.Y. 2014).....................................................................................29

*Picture People, Inc. v. Imaging Fin. Servs., Inc.*,
    735 F. Supp. 2d 12 (S.D.N.Y. 2010).....................................................................................26

*Realtime Data, LLC v. Melone*,
    961 N.Y.S.2d 275 (App. Div. 2013) ..................................................................................12, 13

*Roberts v. Weight Watchers Int'l, Inc.*,
    217 F.Supp.3d 742 (2d Cir. 2016) ........................................................................................15

*Scavenger, Inc. v. GT Interactive Software Corp.*,
    734 N.Y.S.2d 141 (App. Div. 2001) ..............................................................................8, 14, 28

*Sud v. Sud*,
    621 N.Y.S.2d 37 (App. Div. 1995) .......................................................................................26

*Tessera, Inc. v. Toshiba Corp.*,
    2019 WL 5395158 (N.D. Cal. Oct. 22, 2019)........................................................................15

*Turner Network Sales, Inc. v. DISH Network L.L.C.*,
    413 F. Supp. 3d 329 (S.D.N.Y. 2019)................................................................................17, 19

*U.S. Philips Corp. v. Int'l Trade Comm'n*,
    424 F.3d 1179 (Fed. Cir. 2005).............................................................................................13

*VoiceAge Corp. v. RealNetworks, Inc.*,
    926 F. Supp. 2d 524 (S.D.N.Y. 2013)....................................................................20

*Wiggins v. Kopko*,
    942 N.Y.S.2d 666 (App. Div. 2012) .......................................................................9

*Wurtz v. Rawlings, LLC*,
    2016 WL 7174674 (E.D.N.Y. Nov. 17, 2016)......................................................18

*Zila v. Tinnell*, Order dated Apr. 22, 2004 (D.I. 172), Case No. 2:00-CV-1345 (D.
    Nev.) *aff'd*, 502 F.3d 1014 (9th Cir. 2007) ..........................................................15

*Zila v. Tinnell*,
    502 F.3d 1014 (9th Cir. 2007) ..............................................................16, 26, 28

**Statutes**

N.Y. C.P.L.R. § 3005...............................................................................................18

**Other Authorities**

3 Milgrim on Licensing ............................................................................................10

Farnsworth on Contracts § 7.11 (3d ed. 2004).........................................................12

Restatement (Second) of Contracts § 197 (1981) ....................................................16

## INTRODUCTION

Respondent Alkermes moves for summary judgment on all claims by Acorda that seek a refund from Alkermes, whether for purported breach of contract by Alkermes or otherwise.[1]  *See* Claims III (Declaratory Relief as to Return of Overpayment), IV (Unjust Enrichment by Retaining Overpayments), V (Breach of Amended Restated License Agreement), and VIII (Breach of Implied Covenant of Good Faith and Fair Dealing).  In each of these four claims, Acorda seeks a refund of payments it made under Article 5 of the License Agreement.  But the License Agreement is clear: "***All payments received by*** [Alkermes] from Acorda under Article 5 ***shall be non-refundable***, subject to the provisions in Article 5.9.5." Ex. A, Demand Ex. A at Art. 5.8.  Acorda cannot undo the parties' agreement and is unable to present any material facts that are in dispute on the meaning of this provision.  As the interpretation of this language is a legal issue, Alkermes is entitled to judgment as a matter of law that Acorda cannot receive a refund.

Despite the fact that the License Agreement explicitly makes payments made under Article 5 non-refundable, Acorda is asking this Panel to negate that language, find that Alkermes somehow breached a contract by complying with its plain terms, and order a refund of royalties that the contract expressly prohibits.  Acorda's requested remedy is not only contrary to the express terms of the Parties' agreement, it is impermissible under New York law.  At best, Acorda has alleged a *Brulotte* violation, but a *Brulotte* violation (even if shown) is not a basis for a breach of contract claim; it would render the clause at issue *unenforceable*, not breached.  In any event, even if the Panel ultimately finds a *Brulotte* violation, Acorda is not entitled to a refund as a matter of law for multiple independent reasons.[2]  First, the agreement expressly states that royalty payments already

---

[1] Consistent with Order #18, Alkermes has combined the arguments raised in its Letters 6 and 7 into a single motion.
[2] Acorda also seeks a refund of virtually all of its supply price payments during the same period.  The supply price is not a royalty, so *Brulotte* has no effect on it.  To the extent Acorda may argue that the supply price is really a royalty in disguise, all the arguments set out here also defeat any claim by Acorda to a refund of supply price payments.

made are non-refundable.  That contract term is controlling, and a *Brulotte* violation (even if found) would have no effect on this section of the agreement.  Second, aside from the contractual no-refund clause, relief under *Brulotte* itself is prospective only and does not provide for refunds of past payments.  Third, New York's voluntary payment doctrine precludes any refund of payments made without written protest.  The first time that Acorda raised in writing any issue regarding the payment of its royalty obligations was on April 22, 2020, and the first time Acorda submitted a purchase order to Alkermes stating it was under protest was July 8, 2020.  No refund is permissible as a matter of law prior to Acorda making a payment under protest in writing.

Putting aside that Acorda is not entitled to the remedy of a refund that it seeks, Acorda also cannot show that there is a genuine dispute of material fact to support any claim that Alkermes breached any specific provision of the License Agreement.  To this day, Acorda is unable to state what provision of the contract that Alkermes has breached.  Instead, Acorda attempts to transform Alkermes's act of abiding by the terms of the contract as written *into* a breach of that same contract. That attempt at legal alchemy is baseless.  Additionally, Acorda cannot show that there is a triable issue of fact supporting its claims for unjust enrichment or the implied covenant of good faith and fair dealing.  As a  matter of law, the express provision in the License Agreement barring refunds precludes any attempt to imply a refund obligation under the implied covenant or to assert that Alkermes is unjustly enriched by retaining the funds.

As set forth below, even viewing the facts and drawing all inferences in the light most favorable to it, Acorda cannot show that that any breach of contract occurred, or that it is entitled to a refund of (or otherwise recover) payments made prior to its written protest, as a matter of law. Alkermes therefore respectfully requests that the Panel grant summary judgment in its favor regarding Claims III, IV, V and VIII.

## MATERIAL UNDISPUTED FACTS

### A.    The License Agreement and Its Negotiation History

The following facts are not in dispute.  The Amended and Restated License Agreement (the "License Agreement") and the Supply Agreement, which are the subject of this proceeding, were negotiated by Alkermes[3] (then Elan) and Acorda starting in 2002.  Alkermes and Acorda executed the License Agreement and Supply Agreement on September 26, 2003.

In the executed License Agreement, Financial Provisions are listed under Article 5.  The agreement states that Acorda would pay Alkermes "a royalty of ten per cent (10%) of the NSP of the Product," which would be reduced to 4.25% "if, and only if, (a) [Alkermes] is not manufacturing the Product, (B) there are no Valid Claims covering the Product and (c) there is Competition . . . ."  Ex. A, Demand Ex. A at Arts. 5.6.1 & 5.6.2.  Ampyra® is a "Product" as defined in the License Agreement.  *See id.* at Art. 1.1; Demand at ¶ 16.  Alkermes continues to manufacture Ampyra®.  Demand at ¶ 19.  Article 5.8 of the License Agreement provides that "All payments received by [Alkermes] from Acorda under Article 5 shall be non-refundable, subject to the provisions of Article 5.9.5."   Article 5.9.5, in turn, states that, upon request each Party will "provide each other's independent certified accountants . . . with access . . . to such Party's books and records relating to the Product, solely for the purpose of verifying the accuracy and reasonable composition of the calculations hereunder," including "sums payable by Acorda to [Alkermes] pursuant to Article 5."  *Id.*  Article 5.8 does not recite that it is subject to any provision other than Article 5.9.5.

### B.    Sale of Ampyra® and Generic Versions of Ampyra®

---

[3] Elan Corporation, plc and its subsidiary, Elan Pharma International Limited, (together, "Elan") were the contracting parties with Acorda until September 2011, when the businesses of Alkermes, Inc. and the drug technologies business of Elan were combined under Alkermes plc.  For ease of reference, "Alkermes" will be used to refer to Elan and any Alkermes entity.

The FDA approved the New Drug Application ("NDA") of Ampyra® in 2010 (*see* Ex. B, ALKERMES_00187185 at -185-86) and Ampyra® launched soon after, with Alkermes manufacturing the Product and supplying it to Acorda, which exclusively markets and sells Ampyra® in the United States. *See* Ex. C, Acorda Therapeutics, Inc. SEC Form 10-K for the year ended December 31, 2016 ("Acorda 2016 10-K") at 2, 20. The earliest that the initial term of the License Agreement could expire was 2018 (*see* Ex. A, Demand Ex. A at Art. 12.5.1.1), but in 2016, the Parties extended the term of the License Agreement by five years—until 2023 at the earliest. *See generally* Ex. D, ALKERMES_00196197. Accordingly, the License Agreement has not terminated under Article 12.5.1. Acorda has the right to terminate the License Agreement under Article 12.5.2, but to date has elected not to do so.

On July 30, 2018, Alkermes's U.S. Patent No. 5,540,938 ("the '938 patent") expired.[4] Multiple generic versions of Ampyra® subsequently entered the market in 2018. *See, e.g.*, Demand at ¶ 18; Ex. E, ALKERMES_00006504 at -509. Acorda knew the '938 patent expired in July 2018, anticipated that generic entry would soon follow, and knew that generic entry had in fact occurred. *See, e.g.*, Ex. C, Acorda 2016 10-K at 2 (disclosing the '938 patent's 2018 expiration date); Ex. F, Cohen Dep. Tr. at 180:11-182:2 (discussing how generic entry "occupied all of [Acorda's] attention"); *Acorda Therapeutics, Inc. v. Roxane Laboratories, Inc.*, 2017 WL 1199767, at *5 (D. Del. Mar. 31, 2017) (noting the '938 patent's expiry date); *Acorda Therapeutics, Inc. v. Roxane Laboratories, Inc.*, 903 F.3d 1310, 1313 (Fed. Cir. 2018) (noting the same); Ex. G, ACOR-ALK-ARB0422180 at -180 (December 2018 Acorda document with notes on the "five generic manufacturers [that had] entered the market").

---

[4] Alkermes maintains that it properly continued to charge royalties to Acorda under the License Agreement following expiry of the '938 patent, and that its doing so is fully consistent with *Brulotte*. For the purpose of this motion, Alkermes assumes *arguendo* that there has been a *Brulotte* violation, because Acorda's claims for breach and for a refund fail as a matter of law even if a *Brulotte* violation occurred.

Acorda continues to place orders for Ampyra® from Alkermes, and continues to pay its royalty and supply price obligations as prescribed in the License and Supply Agreements. *See, e.g.*, Ex. H, ALKERMES_00004483. Alkermes continues to manufacture Ampyra®, and Acorda continues to sell it in the U.S. to this day. Demand at ¶ 19; Ex. I, Teece Rpt. at ¶ 12, p. 15 fig.2. (June 11, 2021).

**C.      Acorda contacts Alkermes regarding its royalty obligations**

Following the expiration of the '938 patent, Acorda did not reach out to Alkermes to discuss its royalty or supply price obligations until December 2019. While Acorda purportedly contemplated contacting Alkermes earlier, it did not actually do so. Ex. J, Sabella Dep. Tr. at 162:20-163:11; Ex. K, Sabella Dep. Ex. 13 at -573; Ex. L, Lee Dep. Tr. at 268:1-16, 283:9-284:19. In December 2019, Acorda President and CEO, Ron Cohen, emailed Alkermes CEO, Rich Pops, "to discuss some aspects of Acorda's current arrangements with Alkermes." *See* Ex. M, ACOR-ALK-ARB0464584; *see also* Ex. N, ALKERMES_00004417. After speaking, Dr. Cohen and Mr. Pops continued to email back and forth, with the last communication in this series occurring on December 20, 2019, when Mr. Pops wrote that Alkermes did "not see a reason to change the current operational or financial arrangement," but that they "may be missing something and are always open to new ideas that could benefit both companies," and advising that Acorda could continue discussions with Jim Schoener, "who leads our business development and alliance function, who will be the best person to discuss any particulars." Ex. N, ALKERMES_00004417 at -418.

Following the December 2019 conversation and emails, Alkermes did not hear from Acorda concerning any questions about royalties until April 22, 2020, when Dr. Cohen called Mr. Pops and Acorda sent a letter to Alkermes. In that letter, Acorda asserted that "the 10% royalty rate in the agreement for U.S. sales is unenforceable" under *Brulotte* following expiry of the '938

patent.  Ex. O, ALKERMES_00000002.  It is undisputed that the April 22, 2020 letter was the *first* written notice from Acorda to Alkermes stating that Acorda believed there was a *Brulotte* violation or that Acorda believed its continuing obligation to pay royalties was improper.  *See id.*; Ex. P, Morales Dep. Tr. at 125:23-129:2; Exs. Q & R, Morales Dep. Exs. 13 & 14; *see also* Ex. S, ACOR-ALK-ARB0418981; Ex. T, ALKERMES_00212053; Ex. U, ALKERMES_00189827; Ex. V, Pops Dep. Tr. at 27:10-45:8, 49:17-57:12; Ex. F, Cohen Dep. Tr. at 177:25-193:23.  In the weeks following, representatives of Acorda and Alkermes had several communications, during which Alkermes stated that it was willing to consider reducing the royalty rate prospectively.  *See* Ex. F, Cohen Dep. Tr. at 181:14-197:15; Ex. V, Pops Dep. Tr. at 54:6-57:3; 81:10-16.  Acorda, on the other hand, insisted on receiving a refund and eliminating the royalty entirely.  Ex. F, Cohen Dep. Tr. at 196:18-197:1.  When Alkermes declined to agree to the terms Acorda proposed, Acorda "found that unsatisfactory" and walked away from negotiations, filing a demand for arbitration that same month.  *Id.*

After sending its April 2020 letter, Acorda continued to send purchase orders to Alkermes.  Acorda's April 28, 2020 and June 18, 2020 Purchase Orders, which contain both the volume and pricing for the orders, did not contain any language suggesting the payments were being made under protest.  Ex. W, ALKERMES_00004475; Ex. S, ACOR-ALK-ARB0418981 at -983.  The first purchase order containing protest language was sent on July 8, 2020.  Ex. H, ALKERMES_00004483; Ex. T, ALKERMES_00212053; Ex. P, Morales Dep. Tr. at 125:23-129:2.

Acorda has never provided Alkermes with a report from an independent certified accounting firm verifying or challenging the accuracy and reasonable composition of the calculations of any payments Acorda made to Alkermes under Article 5 relating to Ampyra® or

concluding that amounts were overpaid by Acorda, pursuant to the procedures established by Article 5.9.5.  *See* Ex. P, Morales Dep. Tr. at 162:8-163:21.  Acorda has never retained an accounting firm to audit the accuracy of any payments Acorda made to Alkermes relating to Ampyra® under Article 5, as contemplated by Article 5.9.5.  *See id.*

## ARGUMENT

Summary judgment may be granted "if the moving party can show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *AIU N. Am., Inc. v. Caisse Franco Neerlandaise de Cautionnements*, 72 F. Supp. 2d 350, 353 (S.D.N.Y. 1999) (granting defendant's motion for summary judgment on breach of contract claims).  In contract cases, "[s]ummary judgment may be granted when the provisions of a contract convey a definite and precise meaning, absent any ambiguity." *Lawrence v. Cohn*, 197 F. Supp. 2d 16, 20 (S.D.N.Y. 2002) (granting defendant's motion for summary judgment on breach of contract claim) (internal quotations and citation omitted), *aff'd*, 325 F.3d 141 (2d Cir. 2003).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *AIU N. Am*, 72 F. Supp. at 355 (internal quotations and citation omitted).

Here, the contract unambiguously bars refunds of all Article 5 payments.  The only limitation to that absolute bar arises under Article 5.9.5 and does not apply here.  There are no genuine issues as to any material fact, and thus summary judgment should be granted in Alkermes's favor on all claims requesting a refund as to payments made under Article 5 of the License Agreement.  Furthermore, Acorda's claim for breach of the License Agreement fails as a matter of law for the additional reason that Acorda is unable to state what provision of the agreements that Alkermes allegedly breaches.  Acorda's claims of unjust enrichment and breach

of the implied covenant of good faith and fair dealing also fail as a matter of law because they improperly seek to imply an obligation or create a claim that is inconsistent with the express provision in the License Agreement barring refunds.

I.      **ACORDA IS NOT ENTITLED TO A REFUND OF PAYMENTS MADE UNDER ARTICLE 5 OF THE LICENSE AGREEMENT AS A MATTER OF LAW**

   A.      **The Express Terms of the License Agreement Bar Refunds**

Article 5.8 of the License Agreement, titled "Non-Refundable Payments," states in its entirety that "***All payments received by*** [Alkermes] from Acorda under Article 5 ***shall be non-refundable***, subject to the provisions of Article 5.9.5." Ex. A, Demand Ex. A (emphasis added). Clauses such as this barring a refund are enforceable under New York law. *See, e.g.*, *Scavenger, Inc. v. GT Interactive Software Corp.*, 734 N.Y.S.2d 141, 142 (App. Div. 2001) (barring recoupment of any "payments already made since those payments are, by the plain terms of the agreement at issue, non-refundable"); *Distinctive Ventures LLC v. Cooper Advisory Servs., Inc.*, 880 N.Y.S.2d 872, 872 (Sup. Ct. 2009) ("'non-refundable' means that [Plaintiff] cannot recover…"). All payments for which Acorda seeks a refund were made under Article 5 (*see* Demand at ¶¶ 49-50, 52-53, 56-57, 78), and thus are non-refundable under the express terms of the License Agreement. That should be the end of the matter. Acorda cannot walk away from the agreement it signed stating that its Article 5 payments to Alkermes are non-refundable.

The language of the contract making all payments received by Alkermes from Acorda under Article 5 non-refundable is unambiguous, and thus no extrinsic evidence is necessary (or admissible) to interpret or understand it. *China Privatization Fund (Del), L.P. v. Galaxy Entm't Grp. Ltd.*, 945 N.Y.S.2d 659, 660 (App. Div. 2012)  (provision is unambiguous if the language used "has a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of

opinion") (citing *Greenfield v. Philles Records*, 98 N.Y.2d 562, 569 (2002)). "Where a written agreement is complete, clear and unambiguous on its face, parol evidence may not be considered to suggest an unstated or misstated intention or to otherwise create an ambiguity." *Wiggins v. Kopko*, 942 N.Y.S.2d 666, 667 (App. Div. 2012). Here, the no-refund provision is clear and unambiguous on its face—Acorda cannot receive a refund unless allowed under Article 5.9.5— and thus parol evidence should not be considered.[5]  The Panel can properly grant summary judgment against Acorda's claims for a refund now, in this posture.

1.   ***Article 5.9.5 is an audit provision and does not allow Acorda to challenge payments based on a legal question***

To be sure, the no-refund provision in Article 5.8 is "subject to the provisions of Article 5.9.5." Ex. A, Demand Ex. A. But that exception is plainly not applicable here.

Article 5.9.5 allows the Parties to "provide each other's independent certified accountants . . . with access . . . to such Party's books and records relating to the Product, ***solely for the purpose of verifying the accuracy and reasonable composition of the calculations*** hereunder," including "sums payable by Acorda to [Alkermes] pursuant to Article 5." Ex. A, Demand Ex. A (emphasis added). In other words, Article 5.9.5 is an audit provision, allowing the Parties to verify the accuracy of calculations of payments made under Article 5. The review process as to whether there has been an overpayment is conferred to accountants, not attorneys. *See id.* ("In the event *such accounting firm concludes* that amounts were overpaid by Acorda during such period, [Alkermes] shall repay Acorda the amount of such overpayment . . . after the date of delivery of such accounting firm's written report so concluding.") (emphasis added). Nothing in the provision

---

[5] To the extent the Panel were to consider parol evidence, it further demonstrates that Article 5 payments already made are non-refundable. During negotiations in 2003, Acorda proposed allowing 50% of royalties to be refundable. Ex. X, ACOR-ALK-ARB0425981 at -6010. But Acorda's proposal was not included in the final version of the License Agreement, showing that the parties did not agree to it. Ex. A, Demand Ex. A at Art. 5.8.

suggests that it applies—or allows—a *legal* re-analysis of whether the royalty remained enforceable.

Like the no-refund provision, the audit provision of the contract is unambiguous on its face —it applies solely for the purpose of verifying the accuracy of calculations of sums payable under Article 5—and therefore "must be enforced according to the plain meaning of [its] terms." *Bank of N.Y. Mellon v. WMC Mortgage, LLC*, 22 N.Y.S.3d 3, 6 (App. Div. 2015) (internal quotations and citation omitted); *see also 159 MP Corp. v. Redbridge Bedford, LLC*, 33 N.Y.3d 353, 356 (2019*) (noting that agreements between sophisticated parties in New York are generally enforced pursuant to New York's "strong public policy favoring freedom of contract"). The plain meaning of its terms show that Article 5.9.5 does not permit Acorda to challenge whether, from a legal perspective, its obligation to pay past royalties was enforceable; any challenge is limited to auditing whether, from an accounting perspective, the components of the royalty payments— number of units, net selling price, and royalty rate—had been reasonably and accurately compiled, leading to an accurate calculation.

Although extrinsic evidence is unnecessary to interpret or understand Article 5.9.5, any such evidence would show that it is a typical audit provision, using similar language as used in common audit provisions. *See* 3 Milgrim on Licensing § 18.64 ("The typical audit provision is one that states the right of a licensor to audit books and records and which charges a licensee with the obligation to maintain its books and records in such manner as would be needed to enable confirmation of royalty reporting."). Like a typical audit provision, Article 5.9.5 provides each party with access "to books and records for the purpose of verifying such statements" (*id.* § 20.01), gives audit rights to "an accountant" but not a lawyer (*id.* § 21.01), and "provide[s] for consequences" when a discrepancy "is perceived and substantiated" (*id.* § 21.06). The typical

10

audit provision, such as that contained in Article 5.9.5, is meant to be limited to address disputes over royalties that are reported and paid pursuant to the contract terms, and is not meant to provide for expanded rights or to allow a party to dispute the legal question of whether a royalty is due in the first place.

More than three years after the expiry of the '938 patent, Acorda still has not undertaken an audit of past royalty payments. Acorda has not hired an accounting firm to verify the accuracy of the calculations of payments made, let alone delivered an accounting firm's written report concluding any amounts were overpaid by Acorda. *See* Ex. P, Morales Dep. Tr. at 162:8–163:21.[6] In other words, Acorda has done nothing that would invoke the only exception to the "no refund provision" laid out in Article 5.9.5.

The Agreement is clear: the payments Acorda already made under Article 5 are non-refundable, subject *only* to Article 5.9.5. As Acorda has not challenged "the accuracy and reasonable composition of the calculations" of "sums payable" under Article 5 or identified any overpayment of royalties as calculated, Article 5.9.5 provides no mechanism for Acorda to achieve a refund. *See* Ex. A , Demand Ex. A.

2.     ***Article 5.9.7 does not apply***

In an effort to circumvent the unambiguous language of the License Agreement, Acorda has now pointed to Article 5.9.7 as purportedly providing it a basis to receive a refund, notwithstanding Article 5.8. *See* Acorda Rule 56 Ltr. No. 4 at 2. Article 5.9.7 states:

> Notwithstanding any other provision of this Agreement, if at any time legal restrictions prevent the prompt remittance of part or all of the payments due to [Alkermes] in any country, payment shall be made through such lawful means or methods as Acorda may determine after consultation with [Alkermes]. When in any country the law or regulations

---

[6] Likewise, Acorda's damages experts conducted no audit or presented an opinion that royalty payments were incorrectly calculated. For example, Dr. Teece simply adds up all the payments and says they should be paid back as purported "contractual damages." *See* Ex. I, Teece Rpt. at ¶¶ 115-117 & p. 49 tbl. 3; Ex. Y, Teece Dep. Tr. at 63:19-65:20. Article 5.8, even in conjunction with Article 5.9.5, prohibits that result.

prohibit both the transmittal and deposit of royalties on sales in such a country, payments shall be suspended for as long as such prohibition is in effect and promptly after such prohibition ceases to be in effect, all royalties or other payments that Acorda or its Affiliates would have been obligated to transmit or deposit, but for the prohibition, shall be deposited or transmitted, as the case may be, to the extent allowable, less any transactional costs. If the royalty rate specified in this Agreement should exceed the permissible rate established in any country, the royalty rate for sales in such country shall be adjusted to the highest legally permissible or government-approved rate.

But Article 5.9.7 simply has no bearing on the refund question. Indeed, Acorda's tortured reading of the Agreement reveals the weakness of its hand.

To begin with, the no-refund provision in Article 5.8 is only "subject to the provisions of Article 5.9.5," making no mention of any other provision, including Article 5.9.7. Ex. A, Demand Ex. A. Under the canon of *inclusio unius est exclusio alterius*, the fact that Article 5.8 recites that it is subject to the provisions of 5.9.5, without listing any other provisions to which Article 5.8 would be subject, conclusively shows that Article 5.8 is *not* subject to any other provision, including Article 5.9.7. *See Ambrose v. City of White Plains*, 2018 WL 1635498, at *13 (S.D.N.Y. Apr. 2, 2018) ("The canon of construction of *inclusio unius est exclusio alterius* dictates that when contract language expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded."), *aff'd sub nom. Barr v. City of White Plains*, 779 F. App'x 765 (2d Cir. 2019); *Realtime Data, LLC v. Melone*, 961 N.Y.S.2d 275, 277-78 (App. Div. 2013) (invoking canon of *expressio unius est exclusio alterius* to conclude that contract language conditioning employee bonus "upon" sale of assets implies that bonus does not apply to distributions otherwise based); *see also* Farnsworth on Contracts § 7.11 (3d ed. 2004) ("[W]hen parties list specific items, without any more general or inclusive term, they intend to exclude unlisted items, even though they are similar to those listed. From this assumption comes the rule *expressio unius est exclusio alterius* ('the expression of one thing is the exclusion of another')."). Acorda's attempt to engraft Article

12

5.9.7 as a limitation on the no-refund provision of Article 5.8 therefore fails based on the plain terms of the agreement.

Aside from that obvious flaw in Acorda's argument, Article 5.9.7 on its face has no bearing here.  The first two sentences are about ensuring that various obstacles—"legal restrictions" or "prohibition[s]"—do not prevent royalties from getting paid.  The last sentence provides that the royalty rate "shall be adjusted" should it "exceed the permissible rate established in any country," but this provision would apply only to countries that have state control over royalty rates and dictate a highest permissible rate by statute.  The United States does not have a "highest legally permissible or government approved rate."  *See U.S. Philips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179, 1192 (Fed. Cir. 2005) (noting "the [licensor] can charge whatever maximum amount a willing licensee is able to pay to practice the technology in question").

In any event, nothing in Article 5.9.7 says anything about a refund for past payments. Article 5.9.7 states only that the royalty "shall be adjusted", with no reference to payments already made, and thus the provision on its face still does not allow for the refund remedy that Acorda seeks.  Ex. A, Demand Ex. A.  Article 5.9.7 does not even discuss the circumstances under which a royalty would have to be repaid.  In contrast, Article 5.9.5 *does* expressly reference circumstances under which "[Alkermes] shall repay Acorda"—when an overpayment is identified during an audit.  Ex. A, Demand Ex. A.  The parties' use of the term "repay" in Article 5.9.5, coupled with its absence in Article 5.9.7, further shows that 5.9.7 contains no provision for refunds.  *See Ambrose*, 2018 WL 1635498, at *13; *Melone*, 961 N.Y.S.2d at 277-78.  For this additional reason, even if Article 5.9.7 somehow limited Article 5.8 (which it plainly does not), it still cannot be read as allowing for a refund of payments made to Alkermes under Article 5.

Assuming *arguendo* that the 10% royalty rate violates *Brulotte* following expiry of the

'938 patent and that Article 5.9.7 could be read to apply if a *Brulotte* violation were found, Article 5.9.7 still would not provide Acorda with the remedy it seeks.  Article 5.9.7 provides that, if any adjustment to the royalty rate is legally required, "the royalty rate for sales in such country shall be adjusted to the highest legally permissible or government approved rate."  Ex. A, Demand Ex. A.  Thus, as with the severability clause in Article 12.4, the 10% royalty would be automatically "adjusted to the highest legally permissible or government approved rate," not declared unenforceable.  *Id.* at Art. 5.9.7.  The Supreme Court in *Kimble v. Marvel Entertainment, LLC*, was clear that a step-down from 5% (for a combined patent and trade secret license) to 4% (for the trade secret alone) suffices to comply with *Brulotte*. *See* 576 U.S. 446, 454 (2015).  Therefore, even under Acorda's incorrect reading of Article 5.9.7, applying the 5:4 ratio sanctioned by *Kimble*, the royalty here would automatically be adjusted to the highest legally permissible rate, which here would be no less than 8%, for all payments moving forward.  But again, as Article 5.9.7 provides that royalty "shall be adjusted," it still would not provide Acorda the remedy of a refund of payments already made.

3.   *Article 5.8 is a limitation on damages provision for damages claims premised on the refund or other recovery of payments made under Article 5 of the License Agreement*

Acorda has argued that the "The So-Called 'No-Refundable Payments' Provision is Actually *Not* A Contractual Limitation On Damages." Acorda Rule 56 Ltr. No. 4 at 2.  That argument gives Acorda no help here.  As discussed, all the payments that Acorda seeks to recover from Alkermes were made under Article 5.  And Article 5.8 states that **"[a]ll payments received by [Alkermes] from Acorda *under Article 5* shall be non-refundable** . . . ."  Ex. A, Demand Ex. A (emphasis added).  Courts have repeatedly barred recoupment of payments made under contracts with similar no-refund provisions, whether the plaintiff characterized them as a refund, contract damages, or something else.  *See*, *e.g.*, *Scavenger*, 734 N.Y.S.2d at 142 ("The motion court

14

properly ruled that defendant cannot, on its counterclaim for breach of contract, recoup any part of the guaranteed payments already made since those payments are, by the plain terms of the agreement at issue, non-refundable."); *Roberts v. Weight Watchers Int'l, Inc.*, 217 F.Supp.3d 742, 754-55 (2d Cir. 2016) (finding plaintiff's interpretation of contract as permitting pursuit of money damages would "render meaningless" the contract's limitations on refunds).  The contractual limitation barring refunds to payments made under Article 5 is enforceable, and thus Acorda is not entitled to recover any of the payments it has made under Article 5.

### B.      *Brulotte* Does Not Permit Refunds As A Remedy

While the terms of the License Agreement itself are dispositive, *Brulotte* itself also provides Acorda no right to a refund, even assuming *arguendo* that a *Brulotte* violation occurred. First, refunds are not a remedy for a *Brulotte* violation.  Second, *Brulotte* would render only the royalty obligation itself unenforceable and have no effect on the remaining provisions of the License Agreement. Thus, those other provisions, including the no-refund clause of Article 5.8, would remain in force, even if the royalty were not.

#### 1.      *Refunds are not a remedy for a Brulotte violation*

Relief for patent misuse under *Brulotte* is forward-looking: it prevents enforcement of the royalty obligation going forward, but courts have not applied *Brulotte* retroactively to mandate the return of payments already made.  *See, e.g.*, *Zila v. Tinnell*, Order dated Apr. 22, 2004 (D.I. 172), Case No. 2:00-CV-1345 (D. Nev.), at 3 (dismissing a claim for refund of royalties under *Brulotte* in part because "a party has no claim in restitution for performance that he has rendered . . . in return for a promise that is unenforceable on grounds of public policy"), *aff'd*, 502 F.3d 1014, 1027 n.11 (9th Cir. 2007); *Tessera, Inc. v. Toshiba Corp.*, 2019 WL 5395158, at *6 (N.D. Cal. Oct. 22, 2019) (determining that *Brulotte* does not support an order to refund royalties already paid but instead "would only exclude [patentee's] affirmative claim for unpaid royalties due after

15

expiration of a patent").[7]  Similarly, courts finding a patent unenforceable for inequitable conduct

likewise do not require a refund of royalties already paid.  *See, e.g.*, *Levenger Co. v. Feldman*, 516

F. Supp. 2d 1272, 1290 (S.D. Fla. 2007).  These cases are consistent with the Restatement (Second)

of Contracts, which states that if court holds a contract term unenforceable on public policy

grounds, "[n]either will it aid the promisor by allowing a claim in restitution for performance that

he has rendered under the unenforceable contract.  It will simply leave both parties as it finds them,

even though this may result in one of them retaining a benefit that he has received as a result of

the transaction."  Restatement (Second) of Contracts § 197 (1981).  Cases addressing *Brulotte*

violations thus are consistent with how the law generally handles unenforceability: an obligation

cannot be enforced going forward, but the party that paid under the unenforceable provision has

no right to recover its past payments.  Acorda therefore would get no entitlement under the law to

return of its prior royalty payments just from showing a *Brulotte* violation.

## 2. ***Brulotte* does not render the no-refund clause unenforceable**

Showing a *Brulotte* violation likewise would not entitle Acorda to a refund under the terms

of the License Agreement.  While a *Brulotte* violation would render the *royalty obligation*

unenforceable, it would not do the same to the no-refund provision.  *See, e.g.*, *Zila v. Tinnell*, 502

F.3d 1014, 1023 (9th Cir. 2007) ("*Brulotte* does not render an entire contract void").  Indeed, the

License Agreement itself mandates that result.  Under the severability clause of Article 12.4 of the

License Agreement, "If any provision in th[e] Agreement . . . is deemed to be, or becomes invalid,

illegal, void or unenforceable . . . the validity, legality, and enforceability of the remaining

provisions of this Agreement shall not be impaired or affected in any way."  Ex. A, Demand Ex.

---

[7] To date, the only case that Acorda has cited going the other way is *Finnegan v. Spiegel Farms., Inc.*, 234 Cal. App. 2d 408, 412 (App. Ct. 1965).  That case, decided by a California state court in 1965, is an outlier, applying non-governing law, and cannot overcome the weight of authority, all more recent, going the other way.

A.  Thus, even if Acorda were ultimately to prevail in showing a *Brulotte* violation and the royalty provision became unenforceable, the remaining provisions (including Article 5.8) would not be impaired or affected in any way.  For this reason as well, even assuming *arguendo* a *Brulotte* violation provides no basis for refunding royalties that Acorda has already paid under Article 5.

### C.   New York's Voluntary Payment Doctrine Bars Any Refund

As the License Agreement expressly makes all payments made under Article 5 non-refundable, Acorda's claims requesting a refund fail regardless of whether they are barred by New York's voluntary payment doctrine.  Nevertheless, assuming that the voluntary payment doctrine applies, it provides an independent reason why Alkermes is entitled to judgment as a matter of law as to Acorda's claims demanding a refund of payments already made.

New York's voluntary payment doctrine "bars recovery of payments made with full knowledge of the facts, even if made under a mistake of law." *Dillon v. U-A Columbia Cablevision of Westchester Inc.*, 740 N.Y.S.2d 396, 397 (App. Div. 2002) (affirming motion to dismiss because the voluntary payment doctrine precluded recovery of payments made with full knowledge of the facts), *aff'd*, 790 N.E.2d 1155 (N.Y. 2003).  New York modified the common law rule in C.P.L.R. section 3005 "to afford some relief where a party has acted pursuant to a mistake of law," but the statute "does not require all mistakes of law to be treated as mistakes of fact."  *Dillon*, 740 N.Y.S.2d at 397.  Even after the statute was enacted, New York courts have denied recovery of payments made based on mistakes of law, including when, as here, the "mistake" is merely a misunderstanding of the applicable law.  *See*, *e.g.*, *Turner Network Sales, Inc. v. DISH Network L.L.C.*, 413 F. Supp. 3d 329, 340-41 (S.D.N.Y. 2019) ("Where, as here, a sophisticated party has for years remitted voluntary payments pursuant to an understanding of its legal obligations (and there is no indication that such understanding was fraudulently induced), courts have consistently held that such party's 'lack of diligence in determining what its contractual rights were' precludes

recoupment of the voluntarily remitted funds.") (quoting *Gimbel Brothers, Inc. v. Brook Shopping Ctrs., Inc.*, 499 N.Y.S.2d 435, 439 (App. Div. 1986)); *Wurtz v. Rawlings Co., LLC*, 2016 WL 7174674 (E.D.N.Y. Nov. 17, 2016) (granting defendant's motion for summary judgment barring recovery of payments made under voluntary payments doctrine); *see also* N.Y. C.P.L.R. § 3005 ("[CPLR 3005] does not permit a mere misreading of the law by any party to cancel an agreement. . . . As long as the mistake has not been induced by the other party's misrepresentation . . . resort to CPLR 3005 may be misplaced."). A party's lack of diligence in understanding its legal rights warrants application of the voluntary payments doctrine and prohibits recovery of payments made. *Citicorp N. Am., Inc. v. Fifth Ave. 58/59 Acquisition Co., LLC*, 895 N.Y.S.2d 39, 39 (App. Div. 2010) ("Making such payments without any effort to learn what their legal obligations were demonstrated a clear lack of diligence on plaintiffs' part" barring recovery under the voluntary payment doctrine); *Eighty Eight Bleecker Co., LLC v. 88 Bleecker St. Owners, Inc.*, 824 N.Y.S.2d 237, 239 (App. Div. 2006) (granting summary judgment for defendants under the voluntary payments doctrine given Plaintiffs' "'marked lack of diligence in determining what its contractual rights were' demonstrates the payments were voluntary") (quoting *Gimbel*, 499 N.YS.2d at 439).

1.    ***Acorda did not act under a mistake of fact***

The record precludes any argument by Acorda that it operated under a mistake of fact. Acorda knew the '938 patent had expired in 2018, and it knew that generic entry occurred. *See supra* pp. 4-5. Acorda also has presented no evidence that it made any mistake in calculating the payments it made to Alkermes. To the contrary, Acorda even implemented a system to double-check that calculations were consistent with the Parties' agreements before any payments were made. Ex. P, Morales Dep. Tr. at 26:13-37:19.

Where the calculations of the amounts which a party paid are not in dispute, but rather there is a dispute as to whether such payments were required or permitted by law, courts have

found that such alleged overpayments do "not constitute a mistake of fact." *Lavin v. Town of East Greenbush*, 843 N.Y.S.2d 484, 491 (Sup. Ct. 2007) (granting summary judgment precluding recovery under the voluntary payment doctrine where defendant alleged it overpaid plaintiff believing that it was obligated to pay plaintiff higher compensation than was actually required under a governing statute).  Under such circumstances, the party is "not permitted to recoup such payments under the voluntary payment doctrine." *Id.*  Courts routinely grant summary judgment under the voluntary payment doctrine in such circumstances.  *See, e.g., id.*; *Turner*, 413 F. Supp. 3d at 337-41 (granting summary judgment on basis of voluntary payment doctrine where a party was responsible for calculating and remitting license fees and did so voluntarily for years).  As Acorda did not operate under a mistake of fact, it cannot avoid New York's voluntary payment doctrine on this basis.

2.      ***If Acorda operated under a mistake of law, it was not induced by Alkermes***

Even crediting Acorda's facts, any "mistake" (if one exists) was purely legal.  Acorda failed to investigate any legal rights to challenge the royalty provision until the spring of 2020, and Acorda seemingly did not become aware of the *Brulotte* doctrine until then.  *See* Ex. U, ALKERMES_00189827; Ex. O, ALKERMES_00000002; Ex. F, Cohen Dep. Tr. at 177:25-193:23; Ex. V, Pops Dep. Tr. at 27:10-45:8, 49:17-57:12.

Given that Acorda had knowledge of the '938 patent's expiration in 2018 well ahead of time, any mistake of law by Acorda during the following years demonstrated at best a marked lack of diligence in failing to recognize that the royalty payments had (purportedly) become unenforceable under *Brulotte*.  Acorda has not presented, and could not present, any facts purporting to show that Alkermes induced Acorda into misunderstanding the law of patent misuse or not conducting its own legal due diligence.  Thus, New York law provides no refund remedy to Acorda in such circumstances.  *See Turner*, 413 F. Supp. 3d at 340-41.

If, alternatively, Acorda did know about *Brulotte* sooner, then its failure to act with diligence independently defeats its claim for any refund. *See Citicorp*, 895 N.Y.S.2d 39, 39-40 (dismissing complaint under voluntary payment doctrine where "highly sophisticated entities" showed lack of diligence) (internal quotations and citation omitted).

### 3.    *There was no mutual mistake of fact justifying a refund*

Acorda cannot show that there was a mutual mistake by both Acorda and Alkermes justifying a refund.  Any such showing would require proof of a mutual mistake of fact. *VoiceAge Corp. v. RealNetworks, Inc.*, 926 F. Supp. 2d 524, 531 (S.D.N.Y. 2013) ("A mistake allowing for reformation must be a mutual mistake of fact, and not a mistake as to the legal consequences of the bargain struck").  However, the mutual mistake doctrine "may not be invoked by [Acorda] to avoid the consequences of its own negligence." *P.K. Dev., Inc. v. Elvem Dev. Corp.*, 640 N.Y.S.2d 558, 560 (App. Div. 1996).  Acorda cannot show a mutual mistake of fact.

Acorda also has claimed that "if the Panel decides to create a new royalty for Elan Know-How . . . then there would be a mutual mistake of fact as to the value of the Elan Know-How." Acorda Opp. to Alk. Ltr. No. 7 at 3.  This argument fails too.  Such a mistake, even if true (which Alkermes disputes), would not constitute the type of mutual mistake that would justify restitution, because "where there is a mutual mistake as to valuation, as opposed to the subject of the parties' exchange, recission or restitution is not warranted." *See Highmount Olympic Fund, LLC v. PIPE Equity Partners, LLC*, 940 N.Y.S.2d 49, 50 (App. Div. 2012); *see also IKB Deutsche Industriebank AG v. Credit Suisse Sec. (USA) LLC*, 135 N.Y.S.3d 396, 398  (App. Div. 2020) (finding mistakes as to valuation are not mutual mistakes warranting recission).

### 4.    *Acorda did not make payments under duress*

Acorda also cannot avoid the voluntary payment doctrine by arguing "economic duress" based on the possibility that Alkermes "could stop supplying AMPYRA®" if Acorda did not pay

its royalty obligations.  *See* Acorda Opp. to Alk. Ltr. No. 7 at 2-3.  Such facts, even if true, would

not amount to duress blocking application of the doctrine.  "The existence of economic duress is

demonstrated by proof that one party to a contract has threatened to breach the agreement by

withholding performance unless the other party agrees to some further demand."  *Overbay LLC v.*

*Berkman, Henoch, Peterson, Peddy & Fenchel, P.C.*, 128 N.Y.S.3d 56, 58 (App. Div. 2020)

(internal quotations and citation omitted).  But the element of a "further demand" required to show

duress is far more than simply saying that if the other party fails to perform its obligations under a

contract, you will not, either.  "To demonstrate duress, the aggrieved party must demonstrate that

'threats of an unlawful act compelled his or her performance of an act which he or she had the

legal right to abstain from performing' and that the threat was 'such as to deprive the party of the

exercise of free will.'"  *Ascentium Capital, LLC v. Automotive Fleet Leasing Co.*, 109 N.Y.S.3d

401, 403 (App. Div. 2019) (quoting *Polito v. Polito*, 886 N.Y.S.2d 867, 867-68 (App. Div. 1986)).

Acorda has no competent evidence creating a triable issue under that standard.

First, any possible argument by Acorda suggesting improper coercion from the possibility

that Alkermes might stop supplying Ampyra® if Acorda did not fully pay the amounts set out in

the contracts would provide no basis to avoid the voluntary payment doctrine.  Such facts, even if

true, do not amount to duress blocking application of the doctrine, as the assertion by a party of its

rights under a contract does not constitute duress or coercion as a matter of law.  *See Overbay*, 128

N.Y.S.3d at 58.  Second, there is no evidence that Alkermes ever made threats to withhold supply

of Ampyra®, let alone made threats that would "deprive [Acorda] of the exercise of free will."

*Ascentium*, 109 N.Y.S.3d at 403.  Therefore, even assuming Acorda could show that it was

privately concerned about Alkermes's response if Acorda decided not to pay the royalties (*see* Ex.

L, Lee Dep. Tr. at 211:20-212:11 (testifying Acorda was concerned about being accused of breach

of contract)), those facts would fail to show economic duress.  Third, to the extent Acorda suggests that there was some sort of power imbalance between the parties during contract negotiations, such facts (even if credited) also would fail to show duress as a matter of law.  *See Overbay*, 128 N.Y.S.3d at 58; *Kenneth D. Laub & Co., Inc. v. Domansky*, 568 N.Y.S.2d 601, 602 (1991) ("That plaintiff knew defendant was in financial straits when demanding commission amounts to no more than mere hard bargaining tactics.").

Moreover, Acorda's failure to act in a timely matter constitutes a separate reason its duress argument fails. The record shows that Acorda failed to lodge any protest at the time of performance or to invoke duress until more than two years after its fear allegedly formed (and even then only after Alkermes invoked the voluntary payment doctrine).  On those indisputable facts, Acorda cannot show economic duress.  *See Beltway 7 & Props., Ltd. v. Blackrock Realty Advisers, Inc.*, 90 N.Y.S.3d 3, 10 (App. Div. 2018) (finding no duress because plaintiff waited "nearly two years to invoke duress" and "then only after defendant invoked the voluntary payment doctrine"); *DRMAK Realty LLC v. Progressive Credit Union*, 18 N.Y.S.3d 618, 622 (App. Div. 2015) (affirming dismissal of claims under the voluntary payment doctrine in part because plaintiff failed to protest or reserve rights at time of payment).  For all these reasons, the voluntary payment doctrine applies.

### 5.   *Acorda's payments were not made under protest until July 2020*

Acorda claims it paid Alkermes "involuntarily" since the '938 patent expired, but this assertion is belied by the facts, yet even if true, cannot change the fact that Acorda failed to make any payments under protest until July 2020.   "There is a presumption that payments are voluntary." *Overbay,* 128 N.Y.S.3d at 58 (citing 82 NY Jur 2d, Payment and Tender § 82).  "Additionally, in order for a protest of payment to be characterized as appropriate, it must be in writing and made at the time of payment." *Id.* (citing *Neuner v Newburgh City School Dist.*, 459 N.Y.S.2d 874, 875

(App. Div. 1983)); *see also Beltway 7 Props., Ltd. v. Blackrock Realty Advisers, Inc.*, 2017 WL 4155222, at *4 (N.Y. Sup. Ct. Sept. 19, 2017) ("Not just any form of protest is sufficient to overcome the voluntary payment doctrine," as the protest "must be in writing and must have been made at the time of payment.") (internal quotations and citation omitted).

Here, discovery confirmed that the earliest written document that could conceivably be considered a protest was sent by Acorda in April 2020. Ex. O, ALKERMES_00000002; Ex. P, Morales Dep. Tr. at 125:23-129:2; Exs. Q & R, Morales Dep. Exs. 13 & 14; *see also* Ex. S, ACOR-ALK-ARB0418981; Ex. T, ALKERMES_00212053; Ex. U, ALKERMES_00189827; Ex. V, Pops Dep. Tr. at 27:10-45:8, 49:17-57:12; Ex. F, Cohen Dep. Tr. at 177:25-193:23. The earliest Acorda made a actual written protest on an order at the time of payment was July 8, 2020. Ex. P, Morales Dep. Tr. at 125:23-129:2; Ex. Q & R, Morales Dep. Exs. 13 & 14; *see also* Ex. S, ACOR-ALK-ARB0418981; Ex. T, ALKERMES_00212053. Thus, the first payment that Acorda made that could be considered "involuntary" to overcome the voluntary payment doctrine took place in July 2020.[8] To the extent Acorda may try to present evidence suggesting that it secretly made payments involuntarily prior to July 2020, such evidence would not create a genuine dispute of *material* fact, because only protests made in writing are legally operative. Acorda's failure to make such payments under a proper protest or even to raise any issue regarding royalty payments at all precludes Acorda from avoiding the voluntary payments doctrine on this basis.

To the extent Acorda argues that it is entitled to a refund of payments actually made "under protest"—a concept not contained in the License Agreement—the first such payment was made on July 8, 2020. As a result, even if the protest concept applies here, it provides no basis for a

---

[8] Even after Acorda sent its letter in April 2020, Acorda made two subsequent payments to Alkermes prior to July 2020 that do not state that they were made under protest. Ex. W, ALKERMES_00004475; Ex. S, ACOR-ALK-ARB0418981; Ex. P, Morales Dep. Tr. at 125:23-129:2.

refund of payments made under Article 5 prior to July 2020.

## II. ACORDA HAS NO VIABLE CLAIMS FOR BREACH OF THE LICENSE AGREEMENT, THE IMPLIED COVENANT, OR UNJUST ENRICHMENT AS A MATTER OF LAW

As discussed above, Acorda is not entitled to the remedy it seeks of a refund of payments already made.  Acorda's claim for breach of the License Agreement fails for the additional reason that Acorda has been unable to state a claim as to what provision Alkermes has actually breached.  For a breach of contract claim to exist, there must be an assertion that a specific contract provision was actually breached, but there is no record evidence that could show any breach by Alkermes.  Acorda's claim for breach of the implied covenant of good faith and fair dealing also fails.  A party cannot invoke the covenant to imply an obligation that is inconsistent with the express terms of an agreement, but that is exactly what Acorda tries to do.  Acorda points to Alkermes's retaining Acorda's royalty payments (what Acorda calls overpayments) to imply a breach, but the License Agreement states that the payments are non-refundable, so Alkermes's conduct in not refunding them cannot violate the implied covenant as a matter of law.  Acorda's claims for unjust enrichment and declaratory relief fail for similar reasons.  Because the express provisions of the License Agreement make the payment non-refundable, Acorda's claim that Alkermes was unjustly enriched by not providing a refund fails as a matter of law, and Acorda cannot obtain declaratory relief that Alkermes must provide a refund of payments that the express contract terms state to be non-refundable.

### A. Acorda's claim for breach of the License Agreement fails as a matter of law

Acorda's claim for breach of the License Agreement is premised on the idea that Alkermes breached the License Agreement by retaining royalty payments, despite the provision in the License Agreement making those payments non-refundable.  Acorda's argument is nonsensical.  Under New York law, to sustain a claim of breach of contract, the plaintiff must prove: (1) the

24

existence of an enforceable contract; (2) adequate performance of the contract by the plaintiff; (3) the defendant's breach of the contract; and (4) damages resulting from the breach. *See Eternity Glob. Master Fund v. Morgan Guar. Trust Co.*, 375 F.3d 168, 177 (2d Cir. 2004); *Nielsen Co.(U.S.), LLC v. Success Sys., Inc.*, 112 F. Supp. 3d 83, 97 (S.D.N.Y. 2015). Acorda has offered and can offer no evidence that Alkermes breached any provision of the License Agreement by not returning Acorda's (non-refundable) payments, making summary judgment appropriate.

A party must state a cognizable claim for breach of contract in order to be entitled to contractual damages. *Freund v. Washington Square Press, Inc.*, 34 N.Y.2d 379, 382 (1974) (damages for breach of contract are awarded "to compensate for injury caused by [a] breach"). Because Acorda cannot present a viable claim for breach of contract on the undisputed facts, it is not entitled to recover contractual damages as a matter of law.

Acorda originally argued that "[b]y retaining and refusing to return the substantial excess of royalty payments, Alkermes has breached Articles 5.6 and 5.9.5. of the License Agreement." Demand at ¶ 57. As already discussed, this argument fails as Alkermes has not breached either Article 5.6 or 5.9.5. First, the "excess" royalty payments of which Acorda complains are expressly required by Articles 5.6.1 and 5.6.2 of the License Agreement, which state that Acorda "shall additionally pay to [Alkermes] a royalty of ten per cent (10%) of the NSP of the Product" as long as Alkermes is "manufacturing the Product." Ex. A, Demand Ex. A. It is undisputed that Alkermes continues to manufacture the Product, and that the royalties Acorda paid amounted to 10% of NSP. Thus, there is no "excess." Second, even if there were a factual basis for finding "excess" payments (and there is none), Alkermes still did not breach the contract because, as discussed, Article 5.8 makes all payments by Acorda under Article 5 non-refundable. The only payments that Alkermes purportedly is "retaining and refusing to return" are payments received from Acorda

under Article 5, and as discussed above, Article 5.9.5 provides no basis for a refund in these circumstances. *See supra* pp. 9-11. Alkermes cannot have breached any provision by not returning payments from Acorda that Article 5.8 expressly makes non-refundable. *See Picture People, Inc. v. Imaging Fin. Servs., Inc.*, 735 F. Supp. 2d 12, 20 (S.D.N.Y. 2010) (dismissing breach of contract claim for failure to return surcharge payments as "nothing in [the agreements] required [defendant] to return any part of [defendant's] surcharge payments"); *Sud v. Sud*, 621 N.Y.S.2d 37, 38 (App. Div. 1995) (dismissing breach of contract claim where plaintiff failed to identify "specific provisions of the contract upon which liability is predicated") (citation omitted).

The result is no different even if Acorda were able, *arguendo*, to show a *Brulotte* violation. *Brulotte* renders a royalty obligation unenforceable. *See Zila*, 502 F.3d at 1023. That is not the same thing as saying that a licensor who collected royalties before the *Brulotte* violation was declared breached the contract. *See, e.g.*, *Bradley v. Adv. Tech. Servs.*, 2007 WL 1453111, at *3 (W.D.N.C. May 17, 2007) ("[A] breach of contract is materially different from a claim that such contract is void and unenforceable as contrary to public policy."). And, as noted, *Brulotte* operates only prospectively. *See supra* pp. 15-17. Thus, *Brulotte* gives Acorda no basis for a breach of contract claim.

As Acorda cannot show a genuine dispute of fact that Alkermes breached any provision of the License Agreement by collecting and not returning Acorda's past royalty payments, Acorda's claim for breach of the License Agreement fails as a matter of law.[9]

---

[9] Notably, neither of Acorda's economic experts could explain during depositions what clauses of the License Agreement they believed Alkermes had breached. Ex. Z, Malackowski Dep. Tr. at 45:11-46:6 ("Q. What breach of contract are you talking about? A. The imposition of the royalty burden and what has been described as an unreasonable or monopolistic contract cost – supply cost. Q. Okay. What contract provision does that breach? A. You know, I – *perhaps breach of contract isn't the right legal term* . . . ." (emphasis added)); Ex. Y, Teece Dep. Tr. at 64:8-65:10 ("Q. As you understand it, what's the breach of contract on which you were assessing contractual damages? A. I'm not a lawyer but the breach would essentially be what's tantamount on the one hand to patent misuse . . . ."). That Acorda's experts have added up payments made and labelled them "contractual damages" does not make them so.

**B.**     **Acorda's claim for breach of the implied covenant of good faith and fair dealing fails as a matter of law**

Acorda also cannot show a triable issue related to its claim alleging breach of the implied covenant of good faith and fair dealing.  Acorda's claim is premised on the idea that Alkermes breached the implied covenant by not refunding royalty payments, but the License Agreement expressly makes such payments non-refundable.  While a covenant of good faith and fair dealing is implied in every contract in New York, the covenant only applies "in aid and furtherance of other terms of the agreement of the parties.  No obligation can be implied, however, which would be inconsistent with other terms of the contractual relationship."  *Murphy v. Am. Home Prods. Corp.*, 461 N.Y.S.2d 232, 237 (1983); *see also Fesseha v. TD Waterhouse Inv. Servs., Inc.*, 761 N.Y.S.2d 22, 23 (App. Div. 2003) (the covenant "cannot be construed so broadly as effectively to nullify other express terms of a contract, or to create independent contractual rights"); *Marine Midland Bank, N.A. v. Yoruk*, 662 N.Y.S.2d 957, 959 (App. Div. 1997) ("it is well settled that an obligation may not be implied that 'would be inconsistent with other terms of the contractual relationship'") (internal citation omitted).

Acorda's implied-covenant claim runs directly afoul of this law.  Acorda claims that Alkermes breached the implied covenant by "retaining and improperly refusing to return to Acorda" payments made under the License Agreement.  However, as already discussed, Articles 5.6.1 and 5.6.2 expressly require Acorda to pay the precise royalties which Acorda alleges Alkermes has wrongfully retained, Article 5.8 of the License Agreement makes all payments received by Alkermes non-refundable, Article 5.9.5 does not give Acorda a right to refund based on a *Brulotte* violation, and neither does Article 5.9.7.  Acorda's implied-covenant claim therefore fails as a matter of law because it improperly implies an obligation to refund royalty payments that is inconsistent with the express terms of the License Agreement making such payments non-

27

refundable.

**C.     Acorda's claim for unjust enrichment fails as a matter of law**

The same problem dooms Acorda's unjust enrichment claim.  A claim for unjust enrichment is "untenable" where a dispute is "governed by an express contract." *Scavenger*, 734 N.Y.S.2d at 142; *see also Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (citing NY cases and holding a party cannot recover under a theory of unjust enrichment where there is a valid and enforceable contract governing the same subject matter).  Here, Acorda's unjust enrichment claim is premised on Alkermes "retaining" alleged overpayments of royalties, but Article 5.8 of the License Agreement makes those payments non-refundable.  Acorda's claim for unjust enrichment is therefore untenable as the express provision in the valid and enforceable License Agreement barring Acorda's right to refunds precludes any unjust enrichment claim based on Alkermes not refunding royalty payments. Even if the royalty provision is ultimately found unenforceable under *Brulotte*, Article 5.8 barring refunds will remain intact.  *See Zila*, 502 F.3d at 1023 ("*Brulotte* renders unenforceable only that portion of a license agreement that demands royalty payments beyond the expiration of the patent for which the royalties are paid."); *see also* Ex. A, Demand Ex. A at Art. 12.4 ("If any provision in th[e] Agreement . . . is deemed to be, or becomes invalid, illegal, void or unenforceable . . . the validity, legality, and enforceability of the remaining provisions of this Agreement shall not be impaired or affected in any way.").  Accordingly, Acorda's claim for unjust enrichment also fails as a matter of law.

**D.     Acorda's claim for declaratory relief as to return of overpayment fails as a matter of law**

So, too, Acorda's claim for declaratory relief as to return of an alleged overpayment fails. First, claims for declaratory relief must be denied where a claim is contrary to the unambiguous

28

meaning of the agreement.  *Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*, 442 F. Supp. 3d 576, 592 (S.D.N.Y. 2020) (denying request for declaratory relief where the unambiguous meaning of the contracts at issue were contrary to plaintiff's claim); *Paraco Gas Corp. v. Travelers Cas. & Sur. Co. of Am.*, 51 F. Supp. 3d 379, 389 (S.D.N.Y. 2014) (dismissing request for declaratory judgment contrary to the plain language of the agreement and noting that courts may not "construe the language in such a way as would distort the contract's apparent meaning" or "write into the contract conditions the parties did not insert" (internal quotations and citation omitted)).  For all the reasons previously discussed, the declaration Acorda seeks would be contrary to the unambiguous meaning of the License Agreement, and neither *Brulotte* nor the voluntary payment doctrine change that result.  Thus, Acorda's requested declaratory relief must be denied.

Furthermore, "there is no basis for declaratory relief where only past acts are involved." *Commercial Lubricants, LLC v. Safety-Kleen Sys., Inc.*, 2017 WL 3432073, at *17 (E.D.N.Y. Aug. 8, 2017) (granting motion for summary judgment and dismissing claim for declaratory relief regarding payments due under a contract) (internal quotations and citation omitted); *see also Adirondack Cookie Co. Inc. v. Monaco Baking Co.*, 871 F. Supp. 2d 86, 94 (N.D.N.Y. 2012) ("[D]eclaratory relief is intended to operate prospectively. There is no basis for declaratory relief where only past acts are involved." (internal quotations and citation omitted)).  In fact, "courts routinely dismiss requests for declaratory judgment when the parties' rights will be adjudicated through a breach of contract claim in the same action." *Safety-Kleen Sys.*, 2017 WL 3432073, at *17 (collecting cases).  "[W]here the court [is] already analyzing the parties' rights under various agreements, a declaratory judgment on the same issue[s] would be superfluous."  *Id.* (internal quotations and citation omitted).  As Acorda is seeking declaratory relief as to past payments and

the Panel is already analyzing the Parties' rights under the License Agreement, Acorda's claim for declaratory relief fails as a matter of law for this reason as well.

## **CONCLUSION**

On the undisputed facts, Acorda is not entitled to a refund of payments it made under the License Agreement prior to making a written protest as a matter of law.   Acorda also has no viable claim for breach of the License Agreement, breach of the implied covenant of good faith and fair dealing, unjust enrichment, or declaratory relief as a matter of law.   Accordingly, Alkermes respectfully requests that the Panel grant summary judgment in its favor on Claims III, IV, V and VIII.

Dated:  October 15, 2021

Respectfully submitted,

By:  /s/ *Christopher T. Holding*
Christopher T. Holding
Nicholas K. Mitrokostas
Louis Lobel
Andrew S. McDonough
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel.: (617) 570-1000
Fax: (617) 523-1231
cholding@goodwinlaw.com
nmitrikostas@goodwinlaw.com
llobel@goodwinlaw.com
amcdonough@goodwinlaw.com

*Attorneys for Respondent*

**APPENDIX TO ALKERMES'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON ACORDA'S CLAIMS III, IV, V, AND VIII**

| Exhibit | Citation | Description |
|---------|----------|-------------|
| A | Demand Ex. A | Excerpted Amended and Restated License Agreement executed on September 26, 2003 that was attached as Exhibit A to the Demand. |
| B | ALKERMES_00187185 | Excerpted article, "Launching Ampyra: The Long Road to Approval" by Mary Jo Laffler published on November 1, 2010. |
| C | Acorda Therapeutics, Inc. SEC Form 10-K for the year ended December 31, 2016 | Excerpted version of Acorda's 2016 10-K. Bates stamped  ALKERMES_00005460. |
| D | ALKERMES_00196197 | Letter Agreement between Acorda and Alkermes executed on September 1, 2016 titled "Notice of Extension of the Amended and Restated License Agreement dated September 26, 2003, as amended." |
| E | ALKERMES_00006504 | Excerpted Alkermes Therapeutics, Inc. Q3 2018 Earnings Call Transcript, dated October 31, 2018. |
| F | Cohen Dep. Tr. | Excerpted deposition transcript of Acorda's President & Chief Executive Officer, Dr. Ron Cohen, taken on April 29, 2021. |
| G | ACOR-ALK-ARB0422180 | Excerpted version of a document titled "Acorda Therapeutics, Inc. Commercial Quarterly Update, December 2018." |
| H | ALKERMES_00004483 | Invoice of Acorda's purchase order of Ampyra®, dated July 8, 2020. |
| I | Teece Rpt. (June 11, 2021). | Excerpted opening expert report of Professor David J. Teece for Acorda executed on June 11, 2021. |
| J | Sabella Dep. Tr. | Excerpted deposition transcript of Acorda's Chief Operating Officer, Lauren Sabella, taken on April 21, 2021. |
| K | Sabella Dep. Ex. 13 | Excerpted version of an Acorda PowerPoint, titled, "Loss of Exclusivity Readiness," updated on September 20, 2017. |
| L | Lee Dep. Tr. | Excerpted deposition transcript of Acorda's Senior Vice President, Soon Hyouk Lee, taken on April 23, 2021. |

| M | ACOR-ALK-ARB0464584 | Email from Dr. Cohen to Alkermes's Chief Executive Officer, Richard F. Pops, on December 13, 2019. |
|---|---|---|
| N | ALKERMES_00004417 | Email chain ending in email from Mr. Pops to Alkermes personnel including Jim Schoener, Blair Jackson, and David Gaffin, dated December 20, 2019. |
| O | ALKERMES_00000002 | Letter from Dr. Cohen to Mr. Pops, dated April 22, 2020. |
| P | Morales Dep. Tr. | Excerpted deposition transcript of, Acorda's Vice President of Finance and Controller, Robert D. Morales, taken on April 26, 2021. |
| Q | Morales Dep. Ex. 13 | Invoice of Acorda's purchase order of Ampyra®, dated July 8, 2020. Bates stamped ALKERMES_00004483. |
| R | Morales Dep. Ex. 14 | Invoice of Acorda's purchase order of Ampyra®, dated April 28, 2020. Bates stamped ALKERMES_00004475. |
| S | ACOR-ALK-ARB0418981 | Invoice of Acorda's purchase order of Ampyra®, dated June 18, 2020. |
| T | ALKERMES_00212053 | Email chain ending in email from Alkermes's Sean Feeney to Alkermes's Gayle Bainbridge on July 9, 2020. |
| U | ALKERMES_00189827 | Email from Mr. Pops to Alkermes personnel including Blair Jackson, Mike Landine, and Jim Schoener on April 23, 2020. |
| V | Pops Dep. Tr. | Excerpted deposition transcript of Alkermes's Chief Executive Officer, Richard Pops, taken on May 4, 2021. |
| W | ALKERMES_00004475 | Invoice of Acorda's purchase order of Ampyra®, dated April 28, 2020. |
| X | ACOR-ALK-ARB0425981 | Excerpted version of draft Amended and Restated License Agreement, dated August 24, 2003. |
| Y | Teece Dep. Tr. | Excerpted deposition transcript of Acorda's expert Professor David Teece, taken on July 27, 2021. |
| Z | Malackowski  Dep. Tr | Excerpted deposition transcript of Acorda's expert James E. Malackowski, taken on July 28, 2021. |